# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br><br>      Plaintiff,<br><br>      v.<br><br>PayPal, Inc.<br>2211 North First Street<br>San Jose, California 95131<br><br>and<br><br>Bill Me Later, Inc.<br>9690 Deereco Road<br>Suite 705<br>Timonium, MD 21093<br>Baltimore County<br><br>      Defendants. | Civil Action No. 1:15-cv-01426<br><br>**COMPLAINT** |

The Consumer Financial Protection Bureau (Bureau) brings this action against PayPal, Inc. (PayPal) and Bill Me Later, Inc. (BML).  The Bureau brings this action under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and alleges as follows.

## Introduction

1.      Defendants offer a product known as PayPal Credit that allows consumers to pay for purchases online and in certain stores. PayPal Credit operates like other forms of credit in that consumers make purchases using it as a form of payment and then repay the debt over time. As with credit cards and other forms of credit, consumers using PayPal Credit may incur

interest, late fees, or other charges. Consumers often enroll in PayPal Credit while purchasing a good or service online or while creating a PayPal account.

2.      In many instances, however, Defendants have enrolled consumers in PayPal Credit without their knowledge or consent, caused consumers to pay for purchases with PayPal Credit even where the consumers have expressly indicated that they wish to use a different payment method, failed to process consumers' payments promptly or at all, failed to honor and apply promotional offers they have advertised, and engaged in other violations of consumer-financial laws related to billing and deferred interest.

3.      The Bureau brings this suit to secure relief for injured consumers, to stop Defendants' unlawful conduct, and to obtain a penalty against them.

## Jurisdiction and Venue

4.      This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5.      Venue is proper because Defendants reside and transact business in this district. 28 U.S.C. § 1391(b), (c); 12 U.S.C. § 5564(f).

## Parties

6.      The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products and services under "Federal consumer financial laws," including the CFPA. *See* 12 U.S.C. §§ 5491(a); *see also id.* § 5481(14). The Bureau is authorized to initiate civil actions in federal district court, by its own

attorneys, to address violations of "Federal consumer financial law." *See* 12 U.S.C. § 5564(a)-(b).

7.      PayPal is a Delaware corporation that is headquartered in San Jose, California; it is a wholly-owned subsidiary of eBay, Inc. (eBay). In January 2015, eBay incorporated PayPal Holdings, Inc. (PayPal Holdings), which will ultimately become a separate publicly traded company and the parent of PayPal, Inc. At all times material to this Complaint, PayPal, through its wholly-owned subsidiary BML, transacted business in this District and nationwide, and engaged in extending consumer credit and servicing loans. PayPal is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(i).

8.      BML is a Delaware corporation that is headquartered in Timonium, Maryland; it is a wholly-owned subsidiary of PayPal. At all times material to this Complaint, BML transacted business in this District and nationwide, and engaged in extending consumer credit and servicing loans. BML is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(i).

## Factual Background

9.      PayPal provides an online-payments system that enables consumers to make digital payments and money transfers through a PayPal Wallet with linked bank, credit-card, and PayPal-held funds.

10.      From 2008 and through the present, Defendants have marketed a line of credit once called Bill Me Later, and now called PayPal Credit, that is offered to consumers making purchases from eBay and thousands of online merchants. Defendants handle consumer interactions with PayPal Credit, operate its electronic platform, and receive payments

3

associated with the consumers' lines of credit. Bill Me Later and PayPal Credit are referred to collectively as PayPal Credit in this Complaint.

### Consumer Enrollment in PayPal Credit

11.     Typically, Defendants offer PayPal Credit both through advertisements on eBay and online retailers' websites as well as during the checkout process for ecommerce and mobile transactions.

12.     Defendants introduce consumers to PayPal Credit through advertisement banners that often include promotional offers like the following:



13.     Consumers who click on the "Shop Now" or "Apply Now" buttons are directed to a landing page or an application page.

14.     During the checkout process on eBay and other online retailers, Defendants again offer consumers the option to pay for purchases through PayPal Credit and advertise the product with promotional banners like the following:



15.     On the application page, Defendants ask consumers to submit their date of birth and the last four digits of their Social Security number, as well as to confirm their email address, billing address, and phone number.

16.     Until recently, the application page included the following statement, or one materially similar: "Thanks for choosing Bill Me Later©, a PayPal Service. You're just a few clicks away from $5 back on this purchase and more time to pay! We'll need a little more information for verification purposes."

17.     As of September 2014, the application page made the following statement: "Apply for PayPal Credit. You're applying for a line of credit you can use to pay for future purchases when you shop with PayPal. Subject to credit approval."

18.     To proceed with the transaction, consumers who open a PayPal Credit account through PayPal's website, eBay, or select merchants must check a box in the middle of the

application page stating that they "agree to have the terms and conditions presented electronically."

19.     Defendants disclose the "Terms and Conditions" via hyperlinks and a text box on the application page that is located at the bottom of the screen and requires consumers to scroll through multiple pages to review information about the pricing of the product, Defendants' privacy policy, an Agreement to Arbitrate, and an E-Sign Consent.

20.     Consumers then have the option to cancel the transaction, or to continue with it by clicking on a button that until recently read "Agree and Continue" and as of September 2014 reads "Agree and Apply." Clicking this button also constitutes a consumer's agreement to Defendants' terms and conditions.

21.     Defendants process applications by checking the consumer's credit report and taking steps to verify the consumer's identity.

22.     If the application is approved, a confirmation screen notifies the consumer that (1) an email will be sent when the PayPal Credit statement is ready and (2) PayPal Credit will be added to the consumer's PayPal account for future purchases.

23.     The consumer has the option to click a box that states "I want PayPal Credit to be my preferred payment method when it's available for a purchase. (You can edit this preference on paypal.com at any time.)."

24.     The consumer must then click a "Continue" button to finalize the purchase.

**Defendants Enroll Consumers Without Consent**

25.     Defendants often enroll consumers in PayPal Credit without their consent. For example, Defendants automatically enrolled certain consumers in PayPal Credit when the

6

consumers signed up for a regular PayPal account. Other consumers were enrolled in PayPal Credit despite canceling the application process or closing out of the application window before completing the enrollment process. Many consumers were enrolled in PayPal Credit without knowing how or why they were enrolled and discovered their accounts only after finding a credit-report inquiry or receiving welcome emails, billing statements, or debt-collection calls for amounts past due, including late fees and interest.

26.     Consumers enrolled in PayPal Credit without their knowledge or consent often incurred late fees and interest charges because they did not make payments on the accounts that they did not know existed, often believing that the debts incurred were paid through another payment method available in their PayPal Wallets. Many of these consumers learned of their PayPal Credit accounts for the first time when they received billing statements with accrued late fees and interest charges, or when they received debt-collection calls.

**Defendants Cause Consumers to Use PayPal Credit Without Consent**

27.     After a consumer opens a PayPal Credit account, the consumer has the option to use it to make payments through PayPal and with merchants that accept PayPal Credit.

28.     In many instances, Defendants automatically set or preselect the default payment method for all purchases made through a consumer's PayPal Wallet to PayPal Credit, causing consumers to use PayPal Credit even when intending to use another method of payment such as a linked credit card or checking account.

29.     In other instances, consumers were not able to select another payment method. For example, some consumers affirmatively selected another payment method after realizing

that PayPal Credit was set as the payment method for a transaction, only to have the payment method switched back to PayPal Credit during the checkout process.

30.     Often consumers do not discover that PayPal Credit was used as the method of payment until late fees and interest have accrued and the consumer receives debt-collection calls. This is in part because many consumers do not realize that PayPal Credit automatically enrolls consumers in electronic billing at the time of their enrollment and, in many cases, electronic billing statement notices go into spam email folders. Because many consumers do not know they are enrolled in electronic billing, they do not know to look for electronic statements.

31.     Consumers whose payments were processed through PayPal Credit without their consent often incurred late fees and interest charges because they did not know that payments were owed to PayPal Credit.

### Defendants Failed to Honor Promotional Offers

32.     To entice consumers to use PayPal Credit, Defendants and merchants often advertised promotional offers such as $5 or $10 back on a purchase or no interest for six or twelve months.

33.     In many instances, Defendants did not honor these promotional offers after consumers completed transactions through PayPal Credit.

### Defendants Deferred-Interest Practices

34.     Where consumers used PayPal Credit for multiple transactions, they frequently received deferred-interest offers applicable to those transactions. The deferred-interest periods for the transactions would expire on different dates, depending on the date of the initial

transaction. Consumers thus could have multiple deferred-interest balances as well as a balance for standard purchases for the same account.

35. Defendants did not provide consumers with adequate information to allow them to understand how Defendants applied payments to various balances and how much consumers needed to pay to avoid deferred interest. Many consumers with multiple deferred-interest promotional balances did not understand how the Defendants allocated payments. Numerous consumers believed they made a payment large enough to pay off purchases with expiring promotions, but the Defendants allocated payments in a way that resulted in the consumer incurring deferred interest.

36. Before early 2013, Defendants' practice was to apply payments in excess of the minimum payment proportionally to all deferred-interest promotional balances with the same rate, most of which were 19.99%, regardless of expiration date, unless a promotion was expiring within two billing cycles, in which case excess payments would be applied to that promotion.

37. Defendants represented that consumers could contact Defendants' customer-service representatives if they wanted more information about the product, including payment allocation and how much they would need to pay to avoid interest.

38. Additionally, Defendants represented that consumers could contact Defendants' customer-service representatives to request that payments be allocated to specific balances in a way different than Defendants' default method for allocating payments. Notwithstanding this representation, many consumers could not reach a customer-service agent at all, or Defendants

ignored such re-allocation requests, or allocated payments differently than consumers requested.

39. In the first quarter of 2013, Defendants implemented a new payment-allocation hierarchy and began applying payments in excess of the minimum amount due to deferred-interest promotions in order of expiration date. Also, if a consumer had a balance on any deferred-interest promotions expiring in the following two billing cycles, Defendants began allocating even minimum payments to promotional balances before revolving balances. Defendants updated their billing statements to include the payment amount needed to avoid interest charges in a Payment Summary box located at the top of the billing statement.

### Defendants' Payment-Processing and Billing Dispute Practices

40. Defendants do not always process or timely process payments, causing consumers to incur late fees and interest charges. For example, numerous consumers have reported that Defendants have lost payment checks or taken more than a week to process checks.

41. Although Defendants provide and promote an online platform for consumers to make payments toward their PayPal Credit accounts, in numerous instances, consumers have been unable to make payments online due to system errors. Even when Defendants' systems do not allow consumers to make payments, Defendants often charge late fees and interest.

42. Defendants often mishandle billing disputes, including disputes about not receiving refunds from merchants, double billing for purchases, billing errors, honoring advertised promotions, unauthorized charges, and identity theft. For example, in many

instances, Defendants fail to acknowledge consumers' complaints about billing errors and fail to provide consumers with explanations for rejecting consumers' complaints about errors.

43.    Defendants often charge late fees and assess interest on balances with disputes pending even when the disputes concern Defendants' own practices, including failing to reverse a charge associated with double billing through PayPal Credit or failing to process a refund requested by a merchant for returned merchandise.

44.    Defendants often fail to notify consumers about the outcome of disputes.

## Count I
### (Unfair Acts or Practices related to the Enrollment of Consumers in PayPal Credit)

45.    The Bureau realleges and incorporates by reference paragraphs 1-44.

46.    An act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

47.    In numerous instances, Defendants enrolled consumers in PayPal Credit without the consumers' consent or authorization.

48.    Enrolling consumers in a line of credit without their consent or authorization causes and is likely to cause substantial injury because (a) as part of the enrollment process Defendants place an inquiry with at least one credit-reporting agency, and such an inquiry affects consumers' credit scores and creditworthiness, and (b) consumers are likely to fail to make payments on a credit account that they do not know exists, and therefore are likely to incur late fees and interest.

11

49.     This injury is not reasonably avoidable by consumers because these consumers do not choose or intend to enroll in PayPal Credit.

50.     This injury is not outweighed by countervailing benefits to consumers or to competition because unauthorized and unwanted lines of consumer credit do not benefit consumers or competition.

51.     Therefore, Defendants engaged in unfair acts or practices in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

### Count II
### (Unfair Acts or Practices related to Defendants' Use of PayPal Credit as a Payment Method)

52.     The Bureau realleges and incorporates by reference paragraphs 1-44.

53.     An act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

54.     In numerous instances, Defendants processed payments through PayPal Credit without consumers' consent or authorization. For example, in many instances, consumers who attempted to select a different payment method for a transaction nevertheless had their PayPal Credit accounts billed for the transaction.

55.     Processing payments through a line of credit without consumers' consent or authorization causes and is likely to cause substantial injury because consumers who do not know that a debt was incurred on a credit account are likely to fail to make payments to the account, and are therefore likely to incur late fees and interest. Further, consumers who do not realize that they have been enrolled in electronic billing and do not view their billing

statements often do not realize that a payment is owed to PayPal Credit until late fees and interest have accrued.

56.    This injury is not reasonably avoidable by consumers because these consumers do not choose to use PayPal Credit.

57.    This injury is not outweighed by countervailing benefits to consumers or to competition because neither consumers nor competition benefit from charges processed through a line of credit, or associated fees and interest incurred, without consumer consent or authorization.

58.    Therefore, Defendants engaged in unfair acts or practices in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

### Count III
### (Unfair Acts or Practices Related to Payments)

59.    The Bureau realleges and incorporates by reference paragraphs 1-44.

60.    An act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

61.    In numerous instances, Defendants failed to accept, process, or timely post consumers' payments made toward their PayPal Credit accounts, including by:

    a.  failing to take reasonable steps necessary to maintain the online platform it provided for consumers to make payments; and

    b.  failing to take steps necessary to assure that they could process and post, or timely process and post, consumers' payments.

62.    These acts and practices caused substantial injury to consumers because Defendants treated consumers' payments as late, or as not having been made, and assessed late fees and finance charges.

63.    This injury was not avoidable by consumers because consumers could not control whether Defendants' online platform functioned or whether Defendants processed or timely processed payments.

64.    The injury is not outweighed by countervailing benefits to consumers or to competition.

65.    Therefore, Defendants engaged in unfair acts or practices in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

## Count IV
### (Deceptive Advertising)

66.    The Bureau realleges and incorporates by reference paragraphs 1-44.

67.    In numerous instances, Defendants represented, directly or indirectly, expressly or by implication, that consumers would receive the benefit of promotional offers such as $5 or $10 back on a purchase, or no interest for six or twelve months.

68.    In fact, in numerous instances, Defendants did not provide consumers with the benefits promised in the promotional offers. These representations were false or misleading.

69.    Therefore, Defendants engaged in deceptive acts or practices in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

## Count V
### (Abusive Deferred-Interest Acts or Practices)

70.    The Bureau realleges and incorporates by reference paragraphs 1-44.

71.    An act or practice is abusive under the CFPA if it "takes unreasonable advantage of . . . the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service." 12 U.S.C. § 5531(d)(2)(B).

72.    Before 2013, Defendants provided little information to consumers about how it allocated payments to and among standard and multiple deferred-interest balances. Nor did Defendants explain that PayPal Credit's practice was to apply amounts in excess of the minimum payment proportionally to most, or all, promotional balances.

73.    Defendants purported to allow consumers to control the allocation of payments by requesting that their payments be allocated to specific balances, but consumers seeking to make such requests often could not reach a customer-service representative. When consumers contacted Defendants' customer-service department for more information about the Defendants' payment-allocation methods or the amount they needed to pay to avoid interest, consumers were often given misinformation. When consumers made specific allocation requests, Defendants often ignored such requests or allocated payments differently than consumers requested.

74.    As a result, consumers could not clearly understand how payments were applied to deferred-interest promotions and Defendants allocated payments in a way that consumers would not have chosen. Thus, consumers could not protect their interests in selecting and using Defendants' product.

75.    Therefore, Defendants engaged in abusive acts or practices in violation of the CFPA, 12 U.S.C. § 5531(d)(2)(B).

15

## Count VI
### (Unfair Billing Dispute Practices)

76. The Bureau realleges and incorporates by reference paragraphs 1-44.

77. An act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

78. In numerous instances, Defendants failed to adequately address billing disputes, including disputes about crediting payments, processing refunds, honoring advertised promotions, unauthorized charges, and double billing.

79. Defendants did not address or timely address billing disputes because they did not have adequate personnel or systems to handle the volume of disputes based on the number of transactions processed through PayPal Credit.

80. As a result of Defendants' failure to adequately address billing disputes, consumers often incurred late fees and interest charges. Defendants also failed to notify consumers when disputes were resolved and, if applicable, when payments would be due, causing consumers to miss unexpected payments and incur late fees and interest charges.

81. These acts and practices caused substantial injury to consumers who paid money as a result of billing errors that were not resolved and late fees and interest charged while disputes were pending.

82. This injury was not avoidable by consumers because consumers could not control whether or how Defendants handled billing disputes, including charging fees and interest while disputes were pending.

16

83.     The injury is not outweighed by countervailing benefits to consumers or to competition because neither consumers nor competition benefit from failing to address billing disputes and charging additional fees and interest on potential billing errors

84.     Therefore, Defendants engaged in unfair acts or practices in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).


**PRAYER FOR RELIEF**

Wherefore, the Bureau requests that the Court:

1. permanently enjoin Defendants from committing future violations of the CFPA or any provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

2. award damages or other monetary relief against Defendants;

3. order Defendants to pay restitution to consumers harmed by their unlawful conduct;

4. order disgorgement of ill-gotten revenues against Defendants;

5. impose civil money penalties against Defendants;

6. order Defendants to pay the Bureau's costs and fees incurred in connection with prosecuting this action; and

7. award additional relief as the Court may determine to be just and proper.

Dated: May 19, 2015              Respectfully submitted,

Anthony Alexis (DC Bar #384545)
*Enforcement Director*

Jeffrey Paul Ehrlich (FL Bar #51561)
*Deputy Enforcement Director*

John C. Wells (DC Bar # 491292)
*Assistant Litigation Deputy*


\_\_\_/s/_____
KRISTINA D. BETTS (AZ Bar # 024859)
*Enforcement Attorney*
1700 G Street NW
Washington, DC 20552
Telephone: (312) 610-8962
Facsimile: (202) 435-7329
E-mail: kristina.betts@cfpb.gov

\_\_\_/s/_____
CARMEN L. CHRISTOPHER (CA Bar # 231508)
(signed by Kristina D. Betts  with permission of Carmen Christopher)
*Enforcement Attorney*
1700 G Street NW
Washington, DC 20552
Telephone: (312) 610-8961
Facsimile: (202) 435-7329
E-mail: carmen.christopher@cfpb.gov

*Attorneys for Plaintiff Consumer Financial Protection Bureau*

18