# EXHIBIT 15

**Meeting Between Staff of the Federal Reserve Board and Representatives of
The Clearing House
December 10, 2020**

**Participants**:  Justyna Bolter, Jess Cheng, Alex Cordero, Lacy Douglas, Elena Falcettoni, Susan Foley, Mark Manuszak, Stephanie Martin, Zach Proom, Larkin Turman, Matthew West, and Krzysztof Wozniak (Federal Reserve Board)

Philip Keitel and Rob Hunter (The Clearing House); Matthew Kane (JPMorgan Chase Bank, N.A.); Kelvin Chen and Jana Roemmich (Capital One); Duncan Douglass (Alston & Bird)

**Summary**:  Representatives from The Clearing House met with Federal Reserve Board staff to discuss their concerns about the small issuer exemption in Regulation II as it relates to partnerships between financial technology firms and banks.

Attachment

October 23, 2020

***VIA EMAIL***

Matthew J. Eichner
matthew.j.eichner@frb.gov
Director — Division of Reserve Bank Operations and Payment Systems
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue NW
Washington, D.C. 20551

>        Re:      Regulation II Circumvention & Recommended Actions

Dear Mr. Eichner:

The Clearing House Association, L.L.C.[1] ("The Clearing House") respectfully submits to the Board of Governors of the Federal Reserve System (the "Board") the following observations for the Board's consideration in exercising its rulemaking authority pursuant to the debit interchange fee restrictions prescribed by the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), as contained in Section 920 to the Electronic Fund Transfer Act ("EFTA"), and implemented through Federal Reserve Board Regulation II ("Regulation II").[2]

## I.      Introduction

Much has changed since the Board issued Regulation II in 2011.[3] Debit card transactions have continued to grow at a rapid pace,[4] and, as a result of the swift rise of the financial technology ("fintech") industry, large fintech companies increasingly are partnering with small financial institutions, and leveraging those small financial institutions to issue debit and prepaid cards in connection with the fintech companies' financial services programs.[5] The Clearing House believes that certain fintech companies are

---

[1] The Clearing House Association L.L.C. is a nonpartisan organization that engages in research, analysis, advocacy and litigation focused on financial regulation that supports a safe, sound, and competitive banking system. Its affiliate, The Clearing House Payments Company L.L.C., owns and operates core payments system infrastructure in the United States.

[2] Section 1075 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203, 124 Stat. 1376 (2010)) amends the Electronic Fund Transfer Act (15 U.S.C. 1693 *et seq.*) to add Section 920 to EFTA. Section 920(a)(2) of EFTA, codified at 15 U.S.C. 1693o-2, requires debit interchange transaction fees to be an amount that is "reasonable and proportional to the cost incurred by the issuer with respect to the transaction." Section 920 is implemented through Regulation II (12 C.F.R. Part 235).

[3] "Debit Cards Interchange Fees and Routing," 76 Fed. Reg. 43,478 (July 20, 2011).

[4] Core noncash payments (including debit card payments) grew faster between 2015 and 2018 than from 2012 to 2015, and debit cards were used nearly twice as much as credit cards in 2018 (*see* Federal Reserve System, *The 2019 Federal Reserve Payments Study*, p. 1 (available at: https://www.federalreserve.gov/newsevents/press releases/files/2019-payments-study-20191219.pdf (accessed Sept. 4, 2020)).

[5] *See, for example,* information about the PayPal Cash Mastercard debit card (available at: https://www.paypal.com/us/webapps/mpp/credit-line-and-card-services#:~:text=The%20PayPal%20Prepaid%20Mastercard%20is,representative%20of%20The%20Bancorp%20Ban

selecting small financial institutions as card issuers and structuring their card issuing programs to inappropriately utilize the small issuer exemption to avoid the interchange fee limitations under EFTA and Regulation II.[6] The interchange fee limitations, which are implemented through Section 235.3 of Regulation II, do not apply to issuers that, together with their affiliates, have assets of less than $10 billion as of the end of the previous calendar year.[7] Large fintech companies, including those with well over $10 billion in assets, are engaging issuers whose assets qualify them for the small issuer exemption to: (a) serve as BIN sponsors[8] for the fintech company's financial services programs, issuing debit and prepaid cards in reliance on the small issuer exemption to avoid applicability of the interchange fee limitation to the fintech company's card services offerings, and (b) hold only a small portion of funds that are accessible through the debit and prepaid cards issued by the financial institutions under the theory that a nominal amount of funds being held by the BIN sponsor bank satisfies the fund holding requirement predicate to small issuer exemption eligibility.[9]

Under such arrangements, the fintech company manages the funds held by the BIN sponsor issuer and regularly moves funds from fintech company accounts at other financial institutions to one or more accounts at the small issuer to maintain a positive balance in the BIN sponsor issuer accounts. Such positive balance, however, is far less than the total amount of funds accessible by the debit and prepaid cards that the BIN sponsor issues for the fintech company. Such arrangements evade the interchange fee limitations of EFTA and Regulation II and create an uneven regulatory playing field that unfairly disadvantages large financial institution debit and prepaid card issuers that are ineligible for the small issuer exemption (both directly and through relationships with small financial institutions) relative to similarly-sized non-bank competitors.

The Board should adopt Frequently Asked Questions ("FAQs") and revisions to the official commentary to Regulation II that close gaps in the availability of the small issuer exemption between fintech companies and financial institutions.

---

k.&text=Card%20may%20be%20used%20everywhere%20Mastercard%20is%20accepted.,-(c)2019%20PayPal (accessed Sept. 4, 2020)) (noting that The Bancorp Bank is the issuer of the PayPal Cash Mastercard); and information about the Robinhood Debit Card (available at: https://robinhood.com/us/en/support/articles/robinhood-debit-card/ (accessed Sept. 4, 2020)) (noting that Sutton Bank is the issuer of the Robinhood Debit Card). Partnerships between under-$10B financial institutions (institutions that qualify for the small issuer exemption) and large fintech companies result in certain small issuers ranking among the top ten debit card issuers (by transaction volume) (The Bancorp Bank is reported to have assets of $6,223,857,000 as of June 30, 2020 (*see* https://www.ibanknet.com/scripts/callreports/getbank.aspx?ibnid=usa_2858960 (accessed Oct. 2, 2020)); and is ranked as the 8th largest debt card issuer by transaction volume (*see* The Nilson Report, April 2020 (noting that The Bancorp Bank had a purchase volume of approximately $62.9 billion in 2019, which was a 29.7 percent increase from the prior year)).

[6] Section 920(a)(2) of EFTA requires the amount of any interchange fee that an issuer of debit cards receives or charges to be reasonable and proportional to the cost incurred by the issuer with respect to the transaction. Section 235.3 of Reg. II gives effect to section 920(a)(2) of EFTA.

[7] Section 235.5 of Reg. II exempts "small issuers" from Section 235.3 ("small issuer" is defined as an issuer that "together with its affiliates[] has assets of less than $10 billion as of the end of the calendar year preceding the date of the electronic debit transaction.").

[8] A "BIN sponsor" is a bank that provides access to a payment network through licensure of its Bank Identification Number, or "BIN."

[9] *See* Section 235(a)(1)(i) of Reg. II ("small issuers" are exempt from the rule if they (i) hold the account that is debited; and (ii) the issuer, together with its affiliates, has assets of less than $10 billion.).

**II.    The Board should clarify that: (i) a card issuer does not "hold" the account to be debited by a debit or prepaid card it issues unless the issuer holds <u>all</u> of the funds accessible by the debit or prepaid card; and (ii) when a card issuer does not hold <u>all</u> of the funds underlying the debit and prepaid cards it issues for a program, such debit and prepaid card program constitutes decoupled debit for which the small issuer exemption is unavailable.**

In the official commentary to Section 2(k) of Regulation II, the Board provides that, "[f]or purposes of determining whether an issuer is exempted under § 235.5(a) [the small issuer exemption] . . . the term issuer is limited to the entity that holds the account being debited."[10] Although critical to the availability of the small issuer exemption, the Board provided little guidance clarifying what qualifies as "holding" the account. Large fintech companies partnering with small financial institutions as debit and prepaid card issuers regularly take advantage of this ambiguity, placing only a small fraction of the funds accessible through the issued cards on deposit with the issuer. The Board already recognizes that "some funds-loading arrangements may warrant additional supervisory scrutiny" and The Clearing House does not believe the Board intended that a debit or prepaid card issuer that holds only a portion of the funds that may be accessed through the cards it issues under a program would be eligible for the small issuer exemption with respect to that program.[11]

The Clearing House further believes that this type of card program is a decoupled debit arrangement for which the small issuer exemption is unavailable. The official commentary to Section 2(f) of Regulation II already provides that debit cards issued by small issuers as part of a decoupled debit card program are categorically ineligible for the small issuer exemption.[12] Presently, the Board describes "decoupled debit cards" as "debit cards issued by an entity other than the financial institution holding the cardholder's account. In a decoupled debit arrangement, transactions that are authorized by the card issuer settle against the cardholder's account held by an entity other than the issuer, generally via a subsequent ACH debit to that account."[13] In its official commentary regarding the definition of "Issuer" under Regulation II, the Board also provides that, "[a]n issuer of a decoupled debit card is not exempt under § 235.5(a) [the small issuer exemption] even if, together with its affiliates, it has assets of less than $10 billion, because it is not the entity holding the account to be debited."[14]

Although the description of "decoupled debit cards" and their programs included in the current commentary to Regulation II only expressly limits availability of the small issuer exemption where the small issuer does not hold the cardholder's account, The Clearing House believes the Board should clarify that the same reasoning applies where the issuer does hold a cardholder account but where that account holds less than all of the funds accessible through use of the applicable debit and prepaid cards. This clarification will avoid the types of circumvention efforts that exist in the marketplace today, such as where (i) the small issuers holds a cardholder account that has a zero balance at the time electronic debit

---

[10] 12 C.F.R. Appendix A to Part 235 - Official Board Commentary on Regulation II, at § 235.2(k).

[11] *See* Board of Governors of the Federal Reserve System, Frequently Asked Questions About Regulation II, at Section 235.5(c) (noting that an example of a funds-loading arrangement that warrants additional scrutiny is where prepaid cards are linked to an issuer's customers' transaction accounts such that funds may be swept from the transaction accounts to the prepaid accounts as needed to cover transactions.).

[12] *Id*. at § 235.2(f).

[13] *Id*.

[14] *Id*. at § 235.2(k).

transactions are conducted, (ii) the small issuer holds a cardholder account that has a nominal balance at the time electronic debit transactions are conducted and such balance is far less than the total balance accessible through the card, or (iii) the small issuer otherwise holds less than all of the cardholder funds accessible through the card such that use of the card may regularly overdraw funds in the cardholder account in a manner inconsistent with incidental overdraft coverage that may be offered by the issuer.

Accordingly, The Clearing House encourages the Board to issue a new FAQ clarifying that an issuer does not "hold the account being debited" by a debit or prepaid card unless it holds all of the funds associated with and accessible by use of the debit or prepaid card. The FAQ should further clarify that arrangements where an issuer does not hold all of the funds accessible by the cards issued in connection with a program is a decoupled debit card program and, therefore, is ineligible for the small issuer exemption.

III.    **Even if a financial institution holds all of the funds accessible by the debit or prepaid cards it issues, the Board should prohibit a financial institution from qualifying as a small issuer with respect to any debit or prepaid card program for which: (i) the financial institution issues debit or prepaid cards as the BIN sponsor for a third party, (ii) the third party has the authority to direct the issuer to move funds into or out of the issuer's cardholder account associated with the cards (other than to direct the issuer to settle transactions with a card network), and (iii) the combined assets of the issuer and the third party are equal to or greater than $10 billion.**

The official commentary to Section 5(a) of Regulation II provides that, "[a]n issuer would qualify for the small-issuer exemption if its total worldwide banking and nonbanking assets, including assets of affiliates, other than trust assets under management, are less than $10 billion."[15] This asset size test applies only to the card issuer and does not encompass the assets of a non-bank third party on whose behalf the issuer may issue debit or prepaid cards. "Affiliate" is defined under the regulation "as any company that controls, is controlled by, or is under common control with another company."[16] As such, a small bank issuer would typically not be an affiliate of a large fintech partner on whose behalf it issues debit or prepaid cards even though the fintech entity exercises substantial control with respect to those debit and prepaid cards and the underlying funds.

The Clearing House recommends that the Board issue a new FAQ or amend its official commentary to Section 5(a) of Regulation II (which describes the small issuer exemption) to establish that such exemption will not be available to an otherwise qualifying financial institution with respect to any program for which (i) the financial institution issues debit or prepaid cards as the BIN sponsor for a third party, (ii) the third party has the authority to direct the issuer to move funds into or out of the issuer's cardholder account associated with the cards (other than to direct the issuer to settle transactions with a card network), and (iii) the combined assets of the issuer and the third party are equal to or greater than $10 billion. The Clearing House believes such an approach would be consistent with the fact finding/surveying done by the Board in contemplation of the rule that was published in 2011 in so much as the Board

---

[15] 12 C.F.R. Appendix A to Part 235 - Official Board Commentary on Regulation II, at "5(a) Exemption for Small Issuers."

[16] 12 C.F.R. § 235.2(c).

appears to have sought to understand the relationships between entities that establish issuing arrangements through that process. [17]

**IV.    The Board should clarify that financial institutions may be deemed to engage in circumvention or evasion of the interchange fee limitations where they knowingly assist a third party in establishing a debit or prepaid card issuing program that engages multiple small issuers to avoid applicability of Regulation II's interchange fee limitations.**

Currently, the official commentary to Section 6(a) of Regulation II provides that the general prohibition in Section 236.6 against circumvention or evasion of the interchange fee limitation does not apply to exempt issuers. [18]   However, The Clearing House does not believe the Board intended this blanket exclusion to apply to a situation where an exempt small issuer knowingly participates in a scheme designed to evade applicability of Regulation II's interchange fee limitations to a larger debit or prepaid card program.

The Clearing House recommends that the Board issue a new FAQ or amend the official commentary to Section 6(a) to establish that a small issuer that knowingly participates in a scheme that is designed to circumvent or evade the applicability of the interchange fee limitation, including by participating as one of several small issuers in a third party's financial services program that was structured to avoid the interchange fee limitations, may be found liable for circumvention or evasion.

**V.    Requiring issuers to hold all of the funds associated with and accessible by use of debit or prepaid card also ensures that the funds underlying debit and prepaid card programs are held by depository institutions that are subject to bank regulation, oversight, and examination.**

Requiring the card issuer to hold all of the funds its cardholders can access through use of the cards it issues subjects those funds to bank regulation, oversight, and examination. It would prevent large fintech companies from holding such funds without the supervisory requirements of banks and the limitations that would typically protect the funds if held by the depository institution that provides debit or prepaid card access to them. The holding of funds by non-depository institutions for which a depository institution is liable to payment card networks also poses a risk to the safety and soundness of debit- and prepaid-card-based payment systems, particularly for a card issuer that is a small financial institution. A small financial institution may be unable to honor its settlement obligations to payment card networks if

---

[17] *See* "Debit Cards Interchange Fees and Routing," *supra* note 3, at p. 43,479 (noting that the Board has surveyed bank holding companies and other financial institutions that, together with their affiliates, offered debit products); *see also* 77 FR 43394 (Aug. 3, 2012)(One commenter specifically expressed concern about a covered issuer being able to contract with a small issuer for issuance of the card and having the small issuer receive and pass back the higher interchange fees. The Board noted that, "as a matter of law, agents are held to the same restrictions with respect to the agency relationships as their principals . . . [f]or example, if an issuer uses a third-party processor to authorize, clear, or settle transactions on its behalf, the third-party processor may not receive interchange fees in excess of the issuer's permissible amount.").

[18] 12 C.F.R § 235.6(a) States that "[n]o person shall circumvent or evade the interchange transaction fee restrictions in §§ 235.3 and 235.4"; and 12 C.F.R. Appendix A to Part 235 - Official Board Commentary on Regulation II states, at § 235.6 "*No applicability to exempt issuers or electronic debit transactions.* The prohibition against circumventing or evading the interchange transaction fee restrictions or against net compensation does not apply to issuers or electronic debit transactions that qualify for an exemption under § 235.5 from the interchange transaction fee restrictions."

the actual card spend exceeds the funds held in the cardholder account and the institution is unable to recover the excess amount from its fintech partner.



Partnerships between large fintech companies and small banks that evade the interchange fee limitations of EFTA and Regulation II create an uneven regulatory playing field that unfairly disadvantages banks with assets of equivalent size as large fintech companies that offer debit and prepaid cards directly to the public through small-bank issuers. A small issuer holding only a portion of cardholder funds accessible by the cards it issues under a program is a form of decoupled debit that allows outsized fintech companies to control funds that should be held by the card issuer and that if held by the card issuer would properly be considered when determining that issuer's asset size under Regulation II. Moreover, competition among small banks for fintech partner business, and concentrations of fintech business at a handful of small, card-issuing banks can generate risks that regulators must consider and closely monitor. For these reasons, the Board should adopt FAQs and revisions to the official commentary to Regulation II that close gaps in the availability of the small issuer exemption between fintech companies and financial institutions.

Thank you for your consideration and review of these observations. If you have any questions or wish to discuss the comments of The Clearing House, please do not hesitate to contact us.


Respectfully submitted,

/s/
Philip Keitel
Associate General Counsel & Vice President
The Clearing House Association L.L.C.