**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone:     (310) 405-7190
Email: jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HUEI-TING KANG and ARTHUR FLORES,<br><br>      Plaintiffs,<br><br> v.<br><br>PAYPAL HOLDINGS, INC., et al.,<br><br>   Defendants. | CASE NO.:  3:21-cv-06468-CRB<br><br>**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>The Hon. Charles R. Breyer<br><br>Date: July 8, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 6 – 17th Floor |

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................................... iii

SUMMARY OF ARGUMENT ...................................................................................................... viii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 1

RELEVANT LEGAL STANDARDS ............................................................................................. 3

ARGUMENT ................................................................................................................................... 3

    A. Defendants' Misrepresentations Are Actionable ................................................................ 3

    B. The Complaint Raises a Strong Inference of Scienter ....................................................... 8

    C. The Complaint Adequately Alleges Loss Causation ......................................................... 13

    D. The Complaint Also States a Cause of Action for Scheme Liability ............................... 14

    E. The Complaint Adequately Pleads Control Person Liability ............................................ 15

CONCLUSION ................................................................................................................................ 15

PROOF OF SERVICE BY ELECTRONIC POSTING .................................................................. 18

**Cases**

*Azar v. Yelp, Inc.,*
No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769 (N.D. Cal. Nov. 27, 2018) ............ 9

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008) .............................................................................................. 11

*Bos. Ret. Sys. v. Uber Techs., Inc.,*
No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020) ............... x, 4

*Buttonwood Tree Value Partners, LP v. Sweeney,*
No. SACV1000537CJCMLGX, 2012 U.S. Dist. LEXIS 183438
(C.D. Cal. Dec. 10, 2012) ................................................................................................... 12

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.,*
137 S.Ct. 2042 (2017) ......................................................................................................... 15

*China Agritech, Inc. v. Resh,*
138 S. Ct. 1800 (2018) ........................................................................................................ 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
856 F.3d 605 (9th Cir. 2017) ............................................................................................ x, xi

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ............................................................................................................ 14

*ESG Capital Partners, LP v. Stratos,*
828 F.3d 1023 (9th Cir. 2016) .............................................................................................. 8

*Evanston Police Pension Fund v. McKesson Corp.,*
411 F. Supp. 3d 580 (N.D. Cal. 2019) ........................................................... xiii, xiv, 5, 12, 14

*Fecht v. Price Co.,*
70 F.3d 1078 (9th Cir. 1995) ................................................................................................. 3

*Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.,*
No. 19-CV-01372-LHK, 2021 U.S. Dist. LEXIS 160215
(N.D. Cal. Aug. 24, 2021) .................................................................................................. x, 4

*Goldberg v. Rome McGuigan, P.C.,*
No. CV 20-9958-JFW(SKX), 2021 U.S. Dist. LEXIS 80984
(C.D. Cal. Mar. 4, 2021) ..................................................................................................... 15

*Hayden v. Portola Pharms., Inc.*,
No. 20-CV-00367-VC, 2021 U.S. Dist. LEXIS 150136
(N.D. Cal. Aug. 10, 2021)............................................................................................. 11

*In re Alphabet Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .............................................................................. 6, 10, 15

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012) ......................................................................... 7

*In re Amgen Sec. Litig.*,
No. CV 07-2536 (PSG) (PLAx),
2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014)........................................... 13

*In re Apollo Grp., Inc. Sec. Litig.*,
No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010).......................14

*In re BioMarin Pharm. Inc. Sec. Litig.*,
No. 3:20-CV-06719-WHO, 2022 U.S. Dist. LEXIS 9445
(N.D. Cal. Jan. 6, 2022) ......................................................................................... 11, 12

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ...................................................................................... 13

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ......................................................................................... 9

*In re Facebook Inc. Secs. Litig.,*
477 F. Supp. 3d 980 (N.D. Cal. 2020) ........................................................................... 6

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 13

*In re Guilford Mills, Inc. Sec. Litig.*,
No. 98 Civ. 7739(CLB), 1999 U.S. Dist. LEXIS 21690 (S.D.N.Y. July 21, 1999) ............. 12

*In re Quality Sys.*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................xiii, 10

*In re Questcor Sec. Litig.*,
No. SA CV 12-01623 DMG, 2013 U.S. Dist. LEXIS 142865
(C.D. Cal. Oct. 1, 2013) ........................................................................................ 10, 11

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) ....................................................................... 12

iv

*In re STEC Inc. Sec. Litig.*,
    No. SACV 09-1304 JVS (MLGx), 2011 U.S. Dist. LEXIS 75093
    (C.D. Cal. June 17, 2011) ...................................................................................xiii, 9

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) .......................................................................................... x

*In re Zillow Grp., Inc. Sec. Litig.*,
    No. C17-1387-JCC, 2019 U.S. Dist. LEXIS 67197 (W.D. Wash. Apr. 19, 2019)............... 10

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).................................................................................xiii, 10, 11

*Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*,
    620 F.3d 137 (2d Cir. 2010)......................................................................................xi

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .....................................................................xi, 3, 4, 12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) .................................................................................xi, 7

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ..........................................................................xiv, 14

*Lomingkit v. Apollo Educ. Grp. Inc.*,
    No. CV-16-00689-PHX-JAT, 2017 U.S. Dist. LEXIS 22374
    (D. Ariz. Feb. 16, 2017)................................................................................................ 7

*Lorenzo v. SEC.*,
    139 S.Ct. 1094 (2019)................................................................................................ 15

*Maiman v. Talbott*,
    No. SACV 09-0012AG(ANX), 2010 U.S. Dist. LEXIS 142712
    (C.D. Cal. Aug. 9, 2010)............................................................................................ 12

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ..................................................................................... 11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)........................................................................................................ 3

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)..................................................................................xi, 7

*Miss. Pub. Emples. Ret. Sys. v. Bos. Sci. Corp.*,
  523 F.3d 75 (1st Cir. 2008) ................................................................................ 12

*Neborsky v. Valley Forge Composite Techs., Inc.*,
  No. 13-CV-2307-MMA (BGS), 2014 U.S. Dist. LEXIS 104681
  (S.D. Cal. July 29, 2014) ............................................................................... xii, 7

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ............................................................................. 12

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ................................................................................ 9

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ........................................................................... 12

*Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
  No. 19-CV-3354 (VM), 2020 U.S. Dist. LEXIS 106589 (S.D.N.Y. June 17, 2020) ........ 9, 10

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ........................................................... xii, 8, 9, 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................... 7

*Owens v. Kaiser Health Foundation Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ............................................................................. 15

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. 3:19-cv-04744-WHA, 2020 U.S. Dist. LEXIS 88788 (N.D. Cal. May 20, 2020) ........ 7, 8

*Reese* v. *Malone*,
  747 F.3d 557 (9th Cir. 2014) ....................................................... x, xi, xiii, 4, 7

*Reidinger v. Zendesk, Inc.*,
  No. 19-cv-06968-CRB, 2021 U.S. Dist. LEXIS 39066 (N.D. Cal. Mar. 2, 2021) ................. xi

*S. Ferry LP v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ............................................................................... 8

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................ 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................ 3, 8, 10

*Veal v. LendingClub Corporation*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................................................... 6

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................... 15

**Statutes**

15 U.S.C. § 78t(a) .................................................................................................................. 15

15 U.S.C. § 78u- 4(b)(1)(B) ..................................................................................................... 3

Private Securities Litigation Reform Act ........................................................................... x, xi

## SUMMARY OF ARGUMENT

Lead Plaintiffs Huei-Ting Kang and Arthur Flores ("Plaintiffs") adequately plead in their Amended Class Action Complaint ("Complaint")[1] that Defendants[2] lied to investors about violating numerous federal statutes, regulations and a Consent Order entered in May 2015 following an investigation into PayPal Credit by the Consumer Financial Protection Bureau ("CFPB") (hereafter the "Consent Order"). The Consent Order required PayPal to ensure that neither the Company nor any of the merchants that utilized its products made misrepresentations about *any* promotional offer associated with deferred interest, and prohibited the enrollment of customers in PayPal Credit without their consent. ¶¶42, 73. There is no dispute in this case that predatory for-profit schools using PayPal Credit misled customers about deferred promotions throughout the Class Period. ¶¶76-84. Federal regulations, the Consent Order and the Compliance Plan submitted to the CFPB required Defendants to ensure that *merchants*, such as these schools, did not mislead students about deferred interest promotions. ¶¶41-43, 79-81, 155. Numerous Confidential Witnesses ("CW[s]") state that PayPal's internal policies required it to vet merchants, police its promotions, and ensure that merchants provided products and services that complied with the Consent Order. ¶¶54-61, 156. Senior Company executives directly told investors that the Company assumed the responsibility to ensure that *merchants* complied with the law. ¶161.

Throughout the Class Period, Defendants failed to disclose the misleading deferred interest promotions, some of which were disseminated for five years, ¶¶68-70, and PayPal's

---

[1] References to "¶__" are to the Complaint. Internal quotation marks and citations are omitted throughout this Opposition and emphases are added unless otherwise noted.

[2] Defendants are PayPal Holdings, Inc. ("PayPal" or the "Company"), its Chief Executive Officer ("CEO") Daniel H. Schulman ("Schulman"), Chief Financial Officer ("CFO") John Rainey ("Rainey"), head of Global Credit Doug Bland ("Bland"), and Director of Communications Joseph Gallo ("Gallo"). Schulman, Rainey, Bland, and Gallo are the "Individual Defendants." Plaintiffs cite to Defendants' Supporting Memorandum of Points and Authorities in support of their Motion to Dismiss as "Defs.' Br. __" and refer to it as "the Motion."

resulting noncompliance with the Consent Order and multiple federal statutes and regulations. Nor did Defendants disclose that the Company continued to enroll customers in PayPal Credit without their consent more than a year after the Consent Order was entered, as a CW with personal knowledge confirms. ¶¶73-74. Instead, Defendants explicitly linked the Company's improved compliance with an increase in customer satisfaction, ¶105, claimed to "work to ensure compliance with the Consent Order," ¶¶109, 114, 117, 119, 122-24, 127-31, 135, and 140, and repeatedly touted that PayPal's "world class" compliance regime was superior to competitors and perfectly aligned with the interests of regulators. ¶¶115, 120, 125, 133, 142. On July 17, 2020, the Student Borrower Protection Center ("SBPC") released a report and on August 21, 2020 sent letters to Schulman and the CFPB that put Defendants on notice of more than one hundred misleading promotions related to deferred interest. ¶62 ("SBPC Report" and "SBPC Letters," respectively). In response, Defendants launched a targeted media campaign to misleadingly distance the Company from these misleading promotions. The Company's spokesman, Defendant Gallo, continued to misrepresent that PayPal "adheres to all state and federal regulations to ensure clear, easy to understand information about products." ¶136. Defendant Bland, the head of Global Credit, made a similar misrepresentation after the SBPC Report and Letters were released. ¶144.

Throughout the Class Period, PayPal also engaged in a shadow banking scheme to reap fees in excess of the Federal Reserve's regulations by using a small financial institution, The Bancorp, Inc. ("Bancorp"), as a conduit to claim an exemption. On its face, the regulation does not allow an entity that holds most of the customers' funds to claim the exemption, as PayPal's debit card user agreements admit, and to the extent that any small amount was held at Bancorp to maintain the façade, Defendants are still not entitled to the excessive fees. ¶¶96-101. Despite these obvious violations of federal law, PayPal told investors that any reduction in revenues from such fees in the United States or regulatory challenges to the fees collected were merely remote possibilities. ¶¶111, 114, 117, 124, 127, 131, 141.

For the reasons fully explained in Plaintiffs' brief and the reasons identified herewith, the Complaint exceeds the pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), and Defendants' Motion is without merit.

**Falsity:** In *Reese v. Malone*, the Ninth Circuit held that statements of legal compliance are actionable if a plaintiff describes specific violations of law that existed at the time the statements were made. 747 F.3d 557, 570 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017). In particular, the Circuit considered violations of a Corrective Action Order issued by a federal agency before any charges were brought to sustain the complaint's falsity and scienter allegations. *Id.* at 578-79. Other courts in the District have repeatedly sustained securities fraud claims predicated on illegal conduct regardless of whether the defendant was subject to any regulatory investigations, enforcement actions or criminal charges. *See, e.g.*, *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, No. 19-CV-01372-LHK, 2021 U.S. Dist. LEXIS 160215, at *60-63 (N.D. Cal. Aug. 24, 2021); *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724, at *22-25 (N.D. Cal. Aug. 7, 2020).

The Court should reject Defendants' attempt to pluck certain words and phrases from their statements to investors to minimize their misleading impact. *Compare* Defs.' Br. at v-vi *with In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (reversing dismissal and warning against crediting "selective quotation and mischaracterization" by a defendant). Defendants disregard that Schulman explicitly linked improved compliance with customer satisfaction, ¶105, the Company repeatedly and specifically misled investors about compliance with the ***Consent Order***, ¶¶109, 114, 117, 119, 122-24, 127-31, 135, and 140, and Gallo continued to affirmatively misrepresent that the Company followed all laws to ensure transparency even after the SBPC Letters were released, ¶136. These misrepresentations cannot be mischaracterized as puffery, and even Defendants' loosely optimistic statements have been upheld as actionable by the Ninth Circuit. *Compare* ¶142 (touting "world class" compliance) *with Reese*, 747 F.3d at 577

(holding that misrepresentations about a "world class" monitoring program were actionable). Even assuming that any part of Defendants' statements constituted an opinion, Defendants remain liable because they failed to disclose information that undermined their statements. *Compare* Defs.' Br. at vi (misstating that subjective falsity is required) *with Align Tech*, 856 F.3d at 616 (holding that subjective falsity is not required to be liable for an opinion statement, and the omission of facts that undermine a statement is actionable).

The Court should also reject Defendants' attempt to disclaim liability based on boilerplate warnings about unidentified regulatory investigations and remote possibilities of noncompliance in the abstract. Defendants do not invoke the PSLRA's safe harbor, and such vague language cannot immunize their fraud. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947-48 (9th Cir. 2005) (holding that the bespeaks caution doctrine only applies to forward-looking statements); *Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010) (holding that a defendant cannot hide behind purported disclosures when misrepresentations of current fact or omissions of existing fact are alleged). Defendants' reliance on the Court's decision in *Reidinger v. Zendesk, Inc.*, No. 19-cv-06968-CRB, 2021 U.S. Dist. LEXIS 39066, at *9 (N.D. Cal. Mar. 2, 2021) is misplaced. The challenged statements there were all forward-looking. *Id.* That Defendants did not guarantee compliance is also beside the point. *See Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (reversing dismissal when the district court accepted the same mischaracterization of the complaint, and holding that warning investors that there was no guarantee of compliance does not allow a defendant to conceal existing violations of the law).

With respect to the interchange fees, Defendants' claim that their statements "only describe the regulations" is false. Defs.' Br. at vi. Defendants told investors that regulatory challenges could reduce the fees collected in the United States and described the possibility of such challenges as remote. ¶¶111, 114, 117, 124, 127, 131, 141. *But see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018) (telling investors that data "***might change***"

is misleading when the defendant knows or recklessly disregards that the data was "***likely to change***"). By speaking on these topics, Defendants affirmatively created a duty to disclose that the shadow banking scheme violated federal regulations. *See Neborsky v. Valley Forge Composite Techs., Inc.*, No. 13-CV-2307-MMA (BGS), 2014 U.S. Dist. LEXIS 104681, at *16-18 (S.D. Cal. July 29, 2014) (positive statements about the source of revenue imposed a duty to disclose illegal exportation scheme).

Ignoring Gallo's affirmative misrepresentation that the Company continued to comply with all laws, Defendants contend that they should be excused because some of the misleading promotions were taken down after the SBPC Letters were released. Defs.' Br. at vii. This misses the point. Numerous misleading promotions were disseminated for years during the Class Period, and the failure to remove, at least, 8, ***not 4***, misleading promotions as of the date the Complaint was filed despite being told where to find them and falsely assuring investors that they would be removed, exposes the falsity of Defendants' statements regarding PayPal's "world class" compliance regime. ¶88.

**Scienter**: The Motion fails to address straightforward facts that support a strong inference of scienter at this stage. The Consent Order required Defendants to prepare a Compliance Plan to prevent misleading promotions, arm themselves with specific knowledge to report on the status of compliance to the Board of Directors, and take immediate, corrective steps to prevent the Company from failing to comply with the law. ¶¶154-57. Defendants' attempt to now disclaim knowledge of the violations in their papers strongly suggests that they lied to both investors and the CFPB and submitted a deficient Compliance Plan, which constitute independent breaches of the Consent Order rendering the Class Period statements misleading when made. ¶157. Either way, liability must attach. The critical importance of the products and services involved, and false assurances to remove the misleading promotions bolster an inference of fraud. In *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484-85 (9th Cir. 2019), the Ninth Circuit reversed dismissal where the district court disregarded similar facts. Defendants also

ignore that Schulman was informed about the problem by the SBPC no later than August 2020, that the Company sent representatives to meet with the SBPC, and dispatched Gallo to engage in a misleading media campaign. *See In re STEC Inc. Sec. Litig.,* No. SACV 09-1304 JVS (MLGx), 2011 U.S. Dist. LEXIS 75093, at *31-33 (C.D. Cal. June 17, 2011) (inferring scienter from letters exchanged with the SEC that put defendants on notice that their representations were false). Defendants also ignore that Gallo's false assurances and the representations of other executives that PayPal ensured merchants' compliance with the law enhances an inference of scienter. *See Reese*, 747 F.3d at 572 (holding that defendant "addressed corrosion rate data specifically, rendering it unlikely that she was not aware of it or the concerning aspects of the company's findings").

A true holistic analysis cannot ignore the massive windfall Defendants earned through disproportionate insider sales during the Class Period. ¶¶166-68. Defendants disregard that the Court does not entertain affirmative defenses based on trading plans at the pleadings stage, and the Company's decision to buy back stock does not undermine the Individual Defendants' personal motive to reap benefits from the fraud. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 n.3 (N.D. Cal. 2019).

Contrary to Defendants' demands, Plaintiffs are not required to plead any internal reports or details about meetings where admissions of guilt were heard, and the CWs are not required to talk to or hear from any Defendant to be credited. *Compare* Defs.' Br. at vii *with Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 268-69 (3d Cir. 2009) (emphasizing that the law does not require a plaintiff to produce documents or rely on witnesses to plead scienter), and *In re Quality Sys.*, 865 F.3d 1130, 1138-39 (9th Cir. 2017) (crediting numerous accounts from lower-level employees who had no interaction with the defendants).

**Loss Causation:** Defendants' arguments concerning this element cannot be taken seriously at this stage. Defendants disregard both Ninth Circuit precedent and the Court's prior decisions. The Complaint adequately pleads loss causation pursuant to the Court's decision in

*McKesson*, 411 F. Supp. 3d at 604 and the Ninth Circuit's holding in *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1210-11 (9th Cir. 2016). The SBPC Letters' release was followed by a less than 1% decline in the Company's stock price because of Defendants' continued misrepresentations. ¶148. This minimal decline was followed by a multi-day decline of over 10% in the Company's stock price immediately upon the announcement of the CFPB and SEC investigations. ¶¶151-53. These facts are sufficient to plead loss causation pursuant to *Lloyd* and *McKesson*. Defendants' factual contentions concerning when the Clearing House Association's ("CHA") letter became public are both beyond the pleadings and incorrect. The CHA's website states that the comment was submitted on October 26, 2020. *See* Declaration of Brian P. O'Connell in Support of Plaintiffs' Response to Defendants' Request for Judicial Notice, Ex. A. ("O'Connell Decl.")

Lead Plaintiffs hereby oppose Defendants' Motion to Dismiss the Complaint and state:

**INTRODUCTION**

During the Class Period, Defendants materially misled investors about compliance with the law, including the Consent Order, and the issuance of debit cards in violation of "Regulation II," which caps the amount of interchange fees that a financial entity can earn from debit card transactions. While Defendants repeatedly made misleading statements about compliance (¶¶105-47), Defendants were violating the Consent Order, enrolling customers in PayPal Credit without their knowledge or consent, misrepresenting the terms and conditions of deferred interest promotions, and enabling merchants who offered PayPal Credit to mislead customers. ¶¶8-9, 74-75. Defendants also violated Regulation II by using a smaller bank, Bancorp, as a conduit to evade the regulatory cap on interchange fees. ¶¶96-101. The Complaint sufficiently pleads that Defendants materially misled investors, raises a strong inference of scienter, and alleges loss causation. As such, Defendants' motion to dismiss should be denied in full.

**STATEMENT OF FACTS**

PayPal is a digital payments company that enables consumers and merchants to send and receive payments. ¶34. Two of its seven core products are PayPal Credit and Venmo. ¶35. PayPal Credit is a consumer credit program that gives the account holder the ability to pay for purchases over time. *Id.* Venmo is a payments service that enables consumers to make and share payments. ¶37. In 2018, Venmo released a physical debit card. *Id.* Venmo is the fastest growing of PayPal's core products, and generated nearly $1 billion in revenue in 2021, of which nearly 30% was derived from interchange fees from the Venmo debit card. *Id.*

On May 19, 2015, the CFPB filed a complaint and the Consent Order was entered against PayPal for a litany of violations of the Consumer Financial Protection Act. According to the CFPB, PayPal deceptively advertised promotional benefits, misled customers about deferred interest, enrolled customers in PayPal Credit without their consent, engaged in illegal billing practices, and mishandled customer disputes. ¶38. The Consent Order enjoined and restrained Defendants from misrepresenting the terms and conditions of ***any*** deferred interest promotion and

required them to ensure that all merchants offering PayPal Credit honored the promotion exactly as advertised even if that is not what was intended. ¶¶7, 11, 70. The Consent Order also required Defendants and the Company's Board of Directors to institute a comprehensive plan to ensure compliance with the order and report to the CFPB that such compliance had been achieved. ¶40.

PayPal violated the Consent Order throughout the Class Period, enabling for-profit, largely-unaccredited schools to deceptively market PayPal Credit's terms to students for educational programs. ¶54. On July 17, 2020, the SBPC released a report and on August 21, 2020 sent letters to Schulman and the CFPB, explaining how these schools, which are ineligible for federal student loans, would use PayPal Credit as a method of payment for tuition. ¶62. PayPal Credit charged these students interest at more than four times the most expensive student loans and used misleading promotions to advertise the loans. ¶¶63, 65. These promotions, which advertised PayPal Credit's core product and service—the free interest for six months loan—failed to disclose that not paying off the entire balance within six months would result in retroactive interest charges from the date of purchase, and that all unpaid interest would be added to the total principal. ¶¶62, 64. PayPal immediately launched a media campaign distancing itself from the underlying misconduct by claiming that PayPal had "no direct relationship" with predatory for-profit schools and publicly committed to remove the misleading promotions, but it failed to actually do so, and, at least, 8 of them remained online as of January 2022. ¶¶10-11, 85-88. Additionally, during the Class Period, PayPal issued debit cards, including the Venmo debit card, using Bancorp as a conduit. Splitting the interchange fees with Bancorp, a small issuer exempt from Regulation II, allowed PayPal to earn an average of $0.44 per debit transaction—twice the amount earned by banks that comply with Regulation II. PayPal kept the overwhelming majority of the interchange fees for itself even though Bancorp does not hold the customers' funds. *See* ¶¶93-101.

Throughout the Class Period, Defendants repeatedly made false and misleading statements to investors concerning PayPal's compliance with the Consent Order, Regulation II

2

and other laws, but failed to disclose that the Company violated the Consent Order and Regulation II for over five years and continues to do so. ¶¶105-47.

On October 23, 2020, the CHA submitted a public comment to the Federal Reserve, describing PayPal's violations of Regulation II, triggering a nearly 3% drop in the Company's stock value. ¶¶99, 149-50. Then, on July 29, 2021, Bloomberg News reported that PayPal faced probes from both the CFPB and the SEC, causing the price of the Company's common stock to decline by over 10.2%. ¶¶151-53.

### RELEVANT LEGAL STANDARDS

On a motion to dismiss, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A plaintiff "need only allege enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011). The Court's analysis is confined to the Complaint and any materials that are the proper subject of judicial notice or incorporation by reference. *Khoja*, 899 F.3d at 998. It is improper to judicially notice disputed facts or assume the truth of documents incorporated into a complaint "if such assumptions only serve to dispute" the complaint's allegations. *Id.* at 1002-03.

### ARGUMENT

**A.      Defendants' Misrepresentations Are Actionable.**

"[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact," and "only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds [could] not differ are these issues appropriately resolved as a matter of law." *Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995). The Complaint adequately pleads falsity because it "specif[ies] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). A statement is misleading where it "affirmatively create[s] an impression of a state of affairs that differ[s] in a material way from the one that

actually exist[s]." *Reese*, 747 F.3d at 570. Omitting material facts that render a statement misleading is actionable. *Khoja*, 899 F.3d at 1008-09.

The Ninth Circuit has held that statements of legal compliance are actionable if a plaintiff describes specific violations of law that existed at the time the statements were made. *Reese*, 747 F.3d at 578. Courts in this District have repeatedly sustained securities fraud claims predicated on illegal conduct regardless of whether the defendant was subject to any regulatory investigations, enforcement actions or criminal charges. *See, e.g.*, *Corcept Therapeutics Inc.*, 2021 U.S. Dist. LEXIS 160215, at *60-63 (ruling that statements of compliance were materially misleading when made because defendants engaged in an illegal off-label marketing scheme despite lack of any regulatory action); *Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *22-25 (statements implying that company had turned the corner found to be misleading when defendants paid bribes to avoid fines despite the absence of formal charges).

Without qualification, the Consent Order prohibits Defendants from making misrepresentations about *any* promotional offer associated with deferred interest or any benefit that a consumer receives from using PayPal Credit. ¶42. It also requires Defendants to ensure that merchants honor such promotions exactly as advertised even if that is not what the advertisement intended, and prohibits them from enrolling customers in PayPal Credit without their consent. ¶¶7, 11, 42, 70, 73. CW1, the Head of Compliance for U.S. Credit and U.S. Operations during the Class Period, confirms that the CFPB, and the 2015 Consent Order, was particularly concerned about the impact of misleading deferred interest promotions, and that the focus was to make sure that consumers understood what the payment rules were. ¶6. These well-pled facts are inconsistent with Defendants' oft-repeated yet baseless claim that the Consent Order "appear[s] to concern different conduct." Defs.' Br. at 12; *see also Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1146 (N.D. Cal. 2017) (ruling that CW accounts reliably bolstered the conclusion that defendants made false and misleading statements regardless of whether they supported scienter allegations).

Defendants' statements were tethered to the Company's bottom line. On April 27, 2016, Schulman touted compliance as a competitive advantage, and specifically pointed to an increase of over 70% in the Net Promoter Score (which tracks whether customers recommend using the product) in March 2016 as an example of how improved compliance positively impacted customer satisfaction. ¶105. Telling investors that the score increased because of strong compliance required Defendants to also disclose violations of law, including noncompliance with the Consent Order. *See, e.g.*, *McKesson*, 411 F. Supp. 3d at 599 (ruling that touting price increases as a positive development obligated defendants to disclose that the profits were generated because of illegal collusion in the market). Instead, Defendants repeatedly told investors that they were then "work[ing] to ensure compliance with the Consent Order" (¶¶109, 114, 117, 119, 122-24, 127-31, 135, and 140) while "focus[ing] on being compliant with any and all regulatory environments out there" (¶115), touted the Company's "world-class" compliance regime as a competitive advantage perfectly aligned with the interests of regulators (¶¶115, 120, 125, 133, 142), and affirmatively misrepresented that the Company was "transparent[]" about PayPal Credit's offerings (¶144) and "*adhere[d] to all state and federal regulations to ensure clear, easy to understand information about our products*" (¶136) even after the SBPC Letters put Defendants on notice that these statements were materially misleading when made.

The Complaint meticulously describes the underlying violations of law predicated on Defendants' enablement of misleading deferred interest promotions offered by predatory for-profit schools—facts that Defendants carefully avoid discussing in their Motion. Defendants do not dispute that PayPal's own internal polices required it to remove merchants that did not comply with the Consent Order (¶56), the Company used a tracking tool to address whether there was a compliance-related issue with any merchant (¶60), or that despite such close contact and vetting procedures, PayPal continued to allow predatory schools to offer deferred interest schemes in violation of its own policies (¶61). Defendants do not dispute that over 150 misleading deferred interest promotions offering PayPal Credit were identified by the SBPC or that some of them were promoted throughout the entire Class Period. ¶¶67-70. That federal courts have already

found such lending schemes to be illegal is also not in dispute. ¶72. Pursuant to Regulation Z, Defendants – *not just creditors or merchants* – were required to ensure that deferred interest promotions prominently contained the phrase "if paid in full" in close proximity to any advertisement. ¶79. Even after the SBPC Report was released and Gallo stated that the Company would remove all misleading promotions, at least 8, *not 4*, misleading promotions remained online in violation of Regulation Z when the Complaint was filed. ¶88. According to CW11, between June 2016 and October 2016, which was more than a year after the Consent Order was entered, one or two out of every five or seven calls involved customers who were enrolled in PayPal Credit without their consent. ¶74. Even after the SBPC Report and Letters were released, Defendants carried on a misleading media campaign that falsely deflected responsibility from the Company. ¶136. These facts are sufficient to plead that Defendants violated the Consent Order, rendering their statements about compliance materially misleading when made.

With respect to the interchange fees, Defendants cannot dispute that PayPal is not exempt from Regulation II because its own user agreements for debit cards state that Bancorp *does not hold* customers' funds (¶97), or that any small amount of funds held at Bancorp in connection with a decoupled debit card arrangement does not entitle PayPal to the exemption. ¶¶99-100. Still, Defendants told investors that any potential decrease in interchange fees in the United States or regulatory challenges to the fees collected were remote. ¶¶111, 114, 117, 124, 127, 131, 141. *But see In re Alphabet Sec. Litig.*, 1 F.4th 687, 702-03 (9th Cir. 2021) (omitting existing security vulnerabilities rendered materially misleading risk warnings about harms that may follow from detecting and disclosing security vulnerabilities, including public concerns about privacy and regulatory scrutiny).

Defendants' reliance on *In re Facebook Inc. Secs. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020) and *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785 (N.D. Cal. 2019) is misplaced. In those cases, statements were dismissed as puffery or an attempt to impose a duty to disclose that the company *might* not be compliant with the law. Reading these decisions to excuse illegal misconduct in the absence of charges or regulatory actions without limitation is illogical and

inconsistent with Ninth Circuit precedent. *See, e.g.*, *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-JAT, 2017 U.S. Dist. LEXIS 22374, at \*51-53 (D. Ariz. Feb. 16, 2017) (observing that imposing such an extreme requirement would allow companies to buy out securities lawsuits given that most investigations settle without formal adjudication). Nor can affirmative misrepresentations that the Company adheres to all laws (¶136), or is then "work[ing]" to ensure compliance with the Consent Order when it is not (¶¶109, 114, 117, 119, 122-24, 127-31, 135, and 140), be mischaracterized as puffery. Even Defendants' loosely optimistic statements about a "world class" compliance program are actionable. *See Reese*, 747 F.3d at 577. In addition, Defendants' decision to make positive statements about compliance imposed a duty on them to disclose violations of the Consent Order and the details about the shadow banking scheme. *See, e.g.*, *Neborsky*, 2014 U.S. Dist. LEXIS 104681, at \*16-18 (positive statements about the source of revenue imposed a duty to disclose illegal exportation scheme); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1049-50, 1066-70 (C.D. Cal. 2012) (similar). It is also of no moment that Defendants did not "guarantee" perfect compliance. *See JinkoSolar Holdings Co.*, 761 F.3d at 251 (holding that warning investors that there was no guarantee of compliance does not allow a defendant to conceal existing violations of the law). Nor can boilerplate warnings about unidentified investigations or potential noncompliance immunize Defendants' fraud. *See Livid Holdings Ltd.*, 416 F.3d at 947-48 (holding that the bespeaks caution doctrine only applies to forward-looking statements).

Tying compliance with customer satisfaction and making affirmative misrepresentations about adherence to all laws defeats Defendants' argument that their statements are inactionable opinions. ¶¶105, 136. *See Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 3:19-cv-04744-WHA, 2020 U.S. Dist. LEXIS 88788, at \*21 (N.D. Cal. May 20, 2020) ("plaintiff's complaint does not premise its misrepresentation theory on forward-looking opinions, but rather on then-presently known facts."). *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund* is clear that existing things are facts, not opinions, and Defendants' statements about PayPal's compliance program misrepresented its *existing* noncompliance, not potential future

investigations or problems. 575 U.S. 175, 183 (2015).[3]

**B.      The Complaint Raises a Strong Inference of Scienter.**

Facts that suggest deliberate recklessness are sufficient to plead scienter. *S. Ferry LP v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). In assessing whether the Complaint pleads a strong inference of scienter, the Court is required to examine the facts collectively. *Tellabs*, 551 U.S. at 322-23. Ties break in favor of the Plaintiffs at this stage. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1033 (9th Cir. 2016). The Ninth Circuit has rejected any categorical approach towards this element, and the inquiry instead is based on a practical and common-sense perspective. *Killinger*, 542 F.3d at 784.

In this case, the critical importance of the products involved (¶¶3-4, 35-37, 153)[4], as well as the individual responsibilities imposed by the Consent Order (¶¶154-57), raise a strong inference of scienter. In *LifeLock*, 780 F. App'x at 484-85, the Ninth Circuit held that obligations imposed by a consent decree combined with the importance of the product at issue and a defendant's false assurances to fix the problem were sufficient to plead scienter. All three factors are present here and Defendants avoid addressing each one of them. The Complaint describes in detail how the Consent Order required Defendants to prepare a Compliance Plan to prevent misleading promotions, arm themselves with specific knowledge to report on the status of

---

[3] Defendants' argument that Gallo's statements to the press were opinions (Defs.' Br. at 10) ignores his misrepresentation that PayPal "adheres to all state and federal regulations" to ensure transparency. It is also belied by the fact that several misleading promotions remain on the internet today. ¶¶136-37. Defendants further misstate the standard for pleading actionable opinion statements. Subjective falsity is not required, and Gallo's statements did not fairly align with the information in his possession at the time. *Granite Constr.*, 2020 U.S. Dist. LEXIS 88788, at *21.

[4] Indeed, Defendants' violations of Regulation II put at risk nearly 30% of the revenue generated by Venmo, the fastest growing of PayPal's core products (*see e.g.*, ¶¶4, 153). CW3, who directly reported to Defendant Bland, further stated that PayPal Credit is one of the Company's most important divisions that produces extremely high margins. ¶36.  Further, CW3 stated that the importance of PayPal Credit to PayPal's bottom line has increased in the last few years because of intense competition in the industry over Buy Now, Pay Later purchase options. *Id*.  The Senior Vice President of Global Credit at PayPal has confirmed that deferred interest "is a big chunk" of PayPal Credit and has admitted that more than half of the business volume for that product is related to deferred interest. *Id.*

8

compliance to the Board of Directors, and take immediate, corrective steps to prevent the Company from failing to comply with the law. ¶¶154-57. The Motion, in fact, attempts to disclaim knowledge of any illicit practices at the Company, which further raises a strong inference that Defendants submitted a deficient Compliance Plan and falsely reported to the CFPB that the Company was compliant with the Consent Order when it was not. ¶157. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 311-12 (2d Cir. 2000) (engaging in illegal conduct or failing to check easily accessible information raises an inference of scienter); *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 478-79 (9th Cir. 2015) (reversing dismissal because defendants "turned a blind eye" and "failed to take significant action or heighten oversight."). As in *Lifelock*, Gallo also made false assurances to remove the misleading promotions, but many of them remain online as the Complaint indisputably demonstrates. ¶¶136-39, 162-63; *see also Azar v. Yelp,* No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769, at *48 (N.D. Cal. Nov. 27, 2018) ("In the securities context, an actor is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.").[5]

Even more critically in this case, Schulman personally received a letter from the SBPC detailing the chronic failures in PayPal's compliance regime and the Company sent employees to meet with the SBPC as CW2 confirms. ¶158. *See In re STEC Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 75093, at *31-33 (inferring scienter from letters exchanged with the SEC that put defendants on notice that their representations were false); *Oklahoma Police Pension Fund and Ret. Sys. v. Teligent, Inc.*, 19-CV-3354 (VM), 2020 U.S. Dist. LEXIS 106589, at *56 (S.D.N.Y.

---

[5] The Court should disregard Defendants' conclusory claim that meeting with the SBPC demonstrates that the Company took the letters "very seriously" and quickly began "taking action." Defs.' Br. at 12. First, the Court should not speculate about Defendants' motives in meeting with the SBPC. Second, the inference Defendants urge the Court to accept is false. PayPal failed to remove all the misleading promotions that the SBPC identified as of January 2022. ¶¶137, 163-64. It is at least equally cogent and compelling to infer that Gallo's statements to the media were an attempt to manage public relations and control the decline in the Company's stock price.

June 17, 2020) (finding scienter where CEO received a letter from the FDA regarding concerns about studies and his direct reports participated in the FDA inspections).[6]

In addition, Defendants' own statements bridge any perceived gaps between their knowledge or reckless disregard of the truth and the information pled. Schulman repeatedly told investors that he had "heavily" invested time and resources to compliance because "[w]ithout it, you can't do other things." ¶160. Other senior executives at PayPal not only assured investors of the Company's own attempt at compliance, but affirmatively stated that the Company ensured that merchants also comply with the law – facts that the Motion ignores because they expose Defendants' narrative as fatally flawed. *See, e.g.*, ¶161 (PayPal's Chief Operating Officer stated that the Company "tak[es] care of" any regulatory changes that impact merchants); *id.* (General Manager of Braintree claimed that exceeding all expectations on compliance allows PayPal to help merchants comply with the law); *id.* (President of Small Business touts that PayPal helps marketplaces assess risks "with all of the careful compliance and underwriting requirements.").

These specific statements on compliance bolster a strong inference of scienter. *See In re Zillow Grp., Inc. Sec. Litig.*, No. C17-1387-JCC, 2019 U.S. Dist. LEXIS 67197, at *57-58 (W.D. Wash. Apr. 19, 2019) (statements displaying familiarity with how a marketing program was structured raised an inference that the speakers knew the program violated the law); *In re Questcor Sec. Litig.*, No. SA CV 12-01623 DMG, 2013 U.S. Dist. LEXIS 142865, at *59 (C.D.

---

[6] The Complaint additionally specifies that senior leaders at PayPal were deeply involved in responding to and addressing the impact of the Consent Order, including analyzing models that flagged high-risk merchants. ¶156. CW12 states that these models should have flagged predatory for-profit educational institutions. *Id.* Defendants' claim that the Court should disregard accounts from CWs who did not talk to or hear from them is without merit. Not one CW is required, let alone one that provides an admission of guilt. *See, e.g.*, *Alphabet*, 1 F.4th at 707 (reversing dismissal and holding that an absence of insider trading or CW accounts does not defeat scienter); *LifeLock*, 780 F. App'x at 484 n.5 (crediting hearsay account from CW who had no contact with the individual defendants to find scienter); *Quality Sys.*, 865 F.3d at 1138-39 (crediting numerous accounts from lower-level employees who had no interaction with defendants). Nor are Plaintiffs required to plead any "internal data or reports" or provide smoking gun evidence of meetings where violations were discussed. *See, e.g.*, *Avaya, Inc.*, 564 F.3d at 268-69 (emphasizing that *Tellabs* does not require a plaintiff to produce documents or rely on witnesses to plead scienter).

Cal. Oct. 1, 2013) (inferring scienter when defendants discussed insurance reimbursement in conference calls and told investors that they were "monitoring [insurance reimbursements] closely."). Even assuming *arguendo* Defendants had no knowledge of the violations (and the Complaint more than adequately alleges they did), this does not defeat scienter if what they did know made obvious the risk that their statements were misleading. *Avaya*, 564 F.3d at 270; *see also Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.").

Defendants' decision to engage in a shadow banking scheme in violation of Regulation II is also a fact so prominent that it "would be absurd to suggest" that they were unaware of it. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008). Defendants do not contest that federal and state regulatory scrutiny over the issue has been intense for over a decade (as their own SEC filings acknowledge), that Visa is currently under investigation by the DOJ, or that Bancorp – their conduit – was subpoenaed by the SEC nearly a year before PayPal faced a probe itself. ¶165. These allegations suffice to plead scienter particularly when the Company has already reaped hundreds of millions of dollars in illicit fees per year and could reap billions of dollars a year in the future if the scheme continues. ¶37. *See Hayden v. Portola Pharms., Inc.*, No. 20-CV-00367-VC, 2021 U.S. Dist. LEXIS 150136, at *17-19 (N.D. Cal. Aug. 10, 2021) (inferring scienter based on percentage of revenues derived from product and defendant's own statements concerning the product's importance to the company).

The Complaint also pleads Class Period stock sales by Schulman and Rainey to support an inference of scienter. Defendants' claim that the Complaint does not plead their prior trading history is false. Defs.' Br. at 13-14. The Complaint pleads that Schulman and Rainey **did not** sell stock before the Class Period and collectively reaped almost $168 million from insider sales during the Class Period. ¶166. These disproportionate sales support scienter. *See In re BioMarin Pharm. Inc. Sec. Litig.*, No. 3:20-CV-06719-WHO, 2022 U.S. Dist. LEXIS 9445, at *39-40 (N.D. Cal. Jan. 6, 2022) (sustaining complaint where, like here, a defendant did not sell any stock before

the Class Period yet reaped a windfall during the Class Period). Defendants also disregard that the sales pled in the Complaint do not include those used to meet tax obligations, ¶167 n.24, and that the Court does not consider trading plans at the pleading stage. *McKesson*, 411 F. Supp. 3d at 605 n.3. Defendants' request to indulge in this affirmative defense here is particularly inappropriate as none of the Form 4s they submit show when the plans were adopted or whether they were amended during the Class Period. *See Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 92 (1st Cir. 2008) (disregarding trading plans because, like here, the defendants moved to dismiss without presenting evidence of when the trading plans went into effect).

Schulman's and Rainey's deliberate decision to sell stock after the SBPC Report and Letters put them on notice of illegal conduct (¶¶167-68) further enhances an inference of scienter. *See BioMarin*, 2022 U.S. Dist. LEXIS 9445, at *40 (rejecting defense based on trading plans and ruling that decision to sell stock after concealing negative information but before disclosure of the alleged fraud were "discretionary choices" that enhanced an inference of scienter). Defendants' conclusory claim that "the correct analysis concerns only the number of *shares*, not *proceeds*" contradicts Ninth Circuit precedent. Insider sales that are dramatically out of line with prior trading activity are suspicious. *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003). Timing of the sales or the percentage of shares sold are not dispositive. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (deeming massive dollar amount reaped suspicious even if it was only 2.1% of the insider's total stock holdings).[7]

---

[7] Defendants' stock **purchases** (*see* Defs.' Br. at 13) are irrelevant at this stage, and analyzing them requires the Court to inappropriately reach outside the pleadings. *See Khoja*, 899 F.3d at 998; *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1168–69 (C.D. Cal. 2003) (rejecting argument that stock purchases during the class period negated scienter); *Maiman v. Talbott*, No. SACV 09-0012AG(ANX), 2010 U.S. Dist. LEXIS 142712, at *18-19 (C.D. Cal. Aug. 9, 2010) (same); *Buttonwood Tree Value Partners, LP v. Sweeney*, No. SACV1000537CJCMLGX, 2012 U.S. Dist. LEXIS 183438, at *5 (C.D. Cal. Dec. 10, 2012) (same). Likewise, PayPal's stock repurchases (*see* Defs.' Br. at 14) are beyond the pleadings, and entirely irrelevant. Companies buy back stock for any number of reasons, and thus, that PayPal did so here does not refute scienter. *See, e.g.*, *In re Guilford Mills, Inc. Sec. Litig.*, No. 98 Civ. 7739(CLB), 1999 U.S. Dist. LEXIS 21690, at *13-14 (S.D.N.Y. July 21, 1999).

For all of these reasons, the Complaint pleads a strong inference of scienter. Defendants have failed to present a *more* compelling inference of innocence to support dismissal at this stage.

### C. The Complaint Adequately Alleges Loss Causation.

Under the liberal notice pleading standard, the element of loss causation is met if a corrective disclosure reveals new facts that render some aspect of Defendants' prior statements false or misleading. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). A disclosure is deemed corrective even where some information was previously public if it brings to light new implications of the previously disclosed information that investors were not aware of. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008). "A plaintiff may also establish loss causation by alleging that the defendant's misrepresentations concealed a risk that materialized and played some part in diminishing the value of the security." *In re Amgen, Inc. Sec. Litig.*, No. CV 07-2536 (PSG) (PLAx), 2014 U.S. Dist. LEXIS 183034, at *70 (C.D. Cal. Aug. 4, 2014). The Complaint easily meets these tests. Market participants attributed the decline in the stock price to the news of the investigations. ¶152. In fact, Defendants do not challenge the materialization of risks theory, and the Motion should be denied for this failure alone.

As to the corrective disclosure theory, Defendants concede that the Complaint alleges three price declines and identifies the related corrective disclosures. Defs.' Br. at 14-15. First, on August 21, 2020, after the SBPC Report and the SBPC Letters to Schulman and the CFPB became public, Defendants' false statements concerning compliance with all laws and no direct relationship with predatory schools successfully blunted the negative impact on the Company's stock price, resulting in a less than 1% drop. ¶148. Next, on October 23, 2020, the CHA submitted a public comment to the Federal Reserve describing how fintech companies violated or circumvented Regulation II, triggering a nearly 3% drop. ¶¶149-50. Then, on July 29, 2021, the revelation by Bloomberg News that PayPal faced probes by both the CFPB and the SEC caused the Company's stock to decline by over 10.2% over the next three days. ¶¶151-53. Thus, the Complaint provides Defendants with "some indication of the loss and the causal connection that the plaintiff has in mind" – which is all that the law requires at this stage of the litigation. *See*

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

Defendants' argument that an investigation alone cannot establish loss causation as a matter of law disregards Ninth Circuit precedent and the Court's prior decisions. In *Lloyd*, 811 F.3d at 1210-11, the Ninth Circuit held that a significant decline in a company's stock price upon the announcement of an investigation followed by a subsequent smaller decline upon a confirmatory disclosure was sufficient to demonstrate that investors perceived the first decline as a revelation of fraud. In *McKesson*, the Court ruled that the order in which such disclosures occur does not matter, so long as the facts pled suggest that investors understood the announcement of an investigation as a disclosure of the alleged fraud. 411 F. Supp. 3d at 604. Here, the small declines in PayPal's stock price caused by Defendants' false and contradictory statements following the SBPC Letters' release and the CHA's October 23, 2020 letter sent to the Federal Reserve were followed by a far more significant, multi-day decline in price after the announcement of the SEC and CFPB investigations. These facts suffice to plead loss causation pursuant to *Lloyd* and *McKesson*.

Defendants' remaining arguments lack merit. The CHA's website states that the letter was submitted to the Federal Reserve on "October 23, 2020." *See* O'Connell Decl., Ex. A. Nor does any partial disclosure of the misconduct through the SBPC Letters' release defeat loss causation. *See In re Apollo Grp., Inc. Sec. Litig.*, No. 08-16971, 2010 U.S. App. LEXIS 14478, at *2 (9th Cir. June 23, 2010) (holding that a jury could find that analyst reports following news articles about the same subject were corrective disclosures that provided additional or more authoritative fraud-related information). Defendants' mischaracterization of the CHA letter as a mere advocacy piece is also a red herring, as it must be understood in the context of the other two alleged corrective disclosures pursuant to both *Lloyd* and *McKesson*.

### D.    The Complaint Also States a Cause of Action for Scheme Liability.

The Complaint states a claim for scheme liability. ¶¶188-96. Plaintiffs' scheme liability claim is premised on the underlying deceptive practices and course of conduct that existed throughout the Class Period. These include enabling misleading promotions of PayPal Credit that

14

persist to this day, launching a media campaign to cover up the Company's violations, and engaging in a shadow banking scheme in violation of Regulation II to reap unreasonable and disproportionate interchange fees. ¶191. The Motion fails to target these specific allegations.

Defendants argue that the scheme alleged in the Complaint consists of the same false statements "to deceive[] the investing public" (¶189) that form the basis for Count I, and that both Counts require Plaintiffs to plead the same elements. Defs.' Br. at 6 n.6. They are wrong. Plaintiffs' scheme liability count is based on Defendants' underlying misleading **conduct**, which misled investors about the Company's business operations in the same way that their statements did. While deceptive conduct is a key element in both claims, scheme liability does not require Plaintiffs to plead misstatements, and any overlap between the claims does not transform them into duplicative claims. *Alphabet*, 1 F.4th at 709 (*citing Lorenzo v. SEC*, 139 S. Ct. 1094, 1101-02 (2019)).

### E. The Complaint Adequately Pleads Control Person Liability.

Since the Complaint adequately alleges a primary violation of § 10(b) and Rule 10b-5 and the Individual Defendants controlled PayPal, Plaintiffs' control person claims should be sustained. *See* 15 U.S.C. § 78t(a). [8]

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion, or grant leave to replead should the Court find any part of the Complaint wanting in any respect. *See* Fed. R. Civ. P. 15; *Owens v. Kaiser Health Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

---

[8] Defendants argue that claims relating to transactions in PayPal securities before August 20, 2016 are time-barred under the statute of repose. Nonsense. The statute of repose begins to run on the date of Defendants' last culpable act. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804, n.1 (2018); *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017); *Goldberg v. Rome McGuigan, P.C.*, No. CV 20-9958-JFW(SKX), 2021 U.S. Dist. LEXIS 80984, at \*16-19 (C.D. Cal. Mar. 4, 2021). Each of Defendants' misrepresentations is within the five-year time limit.

Dated: June 2, 2022

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Omar Jafri*

Joshua B. Silverman (admitted *pro hac vice*)
Omar Jafri (admitted *pro hac vice*)
Brian P. O'Connell (SBN 314318)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
      ojafri@pomlaw.com
      boconnell@pomlaw.com

-and-

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

-and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

-and-

**LABATON SUCHAROW LLP**

Michael P. Canty (admitted *pro hac vice*)
Thomas G. Hoffman, Jr. (admitted *pro hac vice*)
David J. Schwartz (admitted *pro hac vice*)
Charles J. Stiene (admitted *pro hac vice*)
140 Broadway

16

New York, NY 10005
Telephone: (212) 907-0744
Facsimile: (212) 883-7544
E-mail: mcanty@labaton.com
        thoffman@labaton.com
        dschwartz@labaton.com
        cstiene@labaton.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

-and-

**THE ROSEN LAW FIRM, P.A.**

Jacob Goldberg
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
E-mail: jgoldberg@rosenlegal.com
        lheifetz@rosenlegal.com

-and-

**ROCHE FREEDMAN LLP**

Ivy Ngo
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (786) 924-2900
Email: ingo@rochefreedman.com

*Additional Counsel for Lead Plaintiffs*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On June 2, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2, 2022 in Chicago, Illinois.

*/s/ Omar Jafri*
Omar Jafri