Melinda Haag (State Bar No. 132612)
mhaag@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (628) 432-5100
Facsimile: (202) 204-7383

Daniel J. Kramer (admitted *pro hac vice*)
dkramer@paulweiss.com
Audra J. Soloway (admitted *pro hac vice*)
asoloway@paulweiss.com
Geoffrey R. Chepiga (admitted *pro hac vice*)
gchepiga@paulweiss.com
Daniel S. Sinnreich (admitted *pro hac vice*)
dsinnreich@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
*PayPal Holdings, Inc., et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| HUEI-TING KANG and ARTHUR FLORES,<br><br>Plaintiffs,<br><br>- against -<br><br>PAYPAL HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 3:21-cv-06468-CRB<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**<br><br>The Honorable Charles R. Breyer<br><br>Date: August 5, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 6 – 17th Floor |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .................................................................................................................1

I.      PLAINTIFFS FAIL TO ALLEGE MISLEADING STATEMENTS................................1

        A.      Purported Misstatements Concerning PayPal Credit and the
                Consent Order ...........................................................................................1

        B.      Purported Misstatements Concerning PayPal Debit Cards....................................5

II.     PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF
        SCIENTER ...................................................................................................5

III.    PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION......................................................9

IV.     PLAINTIFFS FAIL TO ALLEGE SCHEME LIABILITY CLAIMS ............................10

V.      PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 20(a) ........................10

CONCLUSION...............................................................................................................10

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE
NO.: 3:21-CV-06468-CRB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F. Supp. 2d 1043 (C.D. Cal. 2012) .................................................................................3

*In re Apollo Grp., Inc. Sec. Litig.*,
   2010 WL 5927988 (9th Cir. June 23, 2010) .........................................................................10

*Applestein* v. *Medivation, Inc.*,
   861 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................................8

*Bao* v. *Solarcity Corp.*,
   2016 WL 4192177 (N.D. Cal. Aug. 9, 2016) ........................................................................6

*In re Carnival Cruise Line Sec. Litig.*,
   2022 U.S. Dist. LEXIS 58526 (S.D. Fla. Mar. 30, 2022).....................................................3

*In re Cisco Sys. Inc. Sec. Litig.*,
   2013 WL 1402788 (N.D. Cal. Mar. 29, 2013).......................................................................9

*City of Fort Lauderdale Gen. Emps.' Ret. Sys.* v. *Edison Int'l*,
   786 F. App'x 685 (9th Cir. 2019) .........................................................................................9

*Evanston Police Pension Fund* v. *McKesson Corp.*,
   411 F. Supp. 3d 580 (N.D. Cal. 2019) ..................................................................................9

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ..................................................................................2

*Ferraro Family Found., Inc.* v. *Corcept Therapeutics, Inc.*,
   2021 WL 3748325 (N.D. Cal. Aug. 24, 2021) ......................................................................3

*In re FVC.COM Sec. Litig.*,
   32 F. App'x 338 (9th Cir. 2002) ...........................................................................................8

*Khoja* v. *Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................8

*Lloyd* v. *CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ..............................................................................................9

*Lomingkit* v. *Apollo Educ. Grp. Inc.*,
   2017 WL 633148 (D. Ariz. Feb. 16, 2017)...........................................................................4

*Loos* v. *Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ...........................................................................................9, 10

*Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..............................................................................................8

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

*In re Nektar Therapeutics*,
2020 WL 3962004 (N.D. Cal. July 13, 2020)............................................................................10

*Okla. Police Pension & Ret. Sys.* v. *LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) .................................................................................................6

*Okla. Police Pension Fund & Ret. Sys.* v. *Teligent, Inc.*,
2020 WL 3268531 (S.D.N.Y. June 17, 2020) ...............................................................................7

*In re PayPal Holdings, Inc. S'holder Derivative Litig.*,
2018 WL 466527 (N.D. Cal. Jan. 18, 2018)..................................................................................2

*In re Questcor Sec. Litig.*,
2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)..................................................................................6

*Reese* v. *Malone*,
747 F.3d 557 (9th Cir. 2014) ........................................................................................................3

*Reidinger* v. *Zendesk, Inc.*,
2021 WL 796261 (N.D. Cal. Mar. 2, 2021)...................................................................................4

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard
Co.*,
845 F.3d 1268 (9th Cir. 2017) .......................................................................................................4

*In re STEC Inc. Sec. Litig.*,
2011 WL 2669217 (C.D. Cal. June 17, 2011) ...............................................................................7

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) .......................................................................................................8

*Veal* v. *LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ..........................................................................................2

*In re Zillow Grp., Inc. Sec. Litig.*,
2019 WL 1755293 (W.D. Wash. Apr. 19, 2019)...........................................................................6

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE
NO.: 3:21-CV-06468-CRB

**PRELIMINARY STATEMENT**

Plaintiffs' opposition ignores binding precedent and doubles down on a repeatedly rejected theory of securities fraud. Plaintiffs argue that Defendants' statements about "working" and "focusing" on compliance were "lie[s] to investors" because PayPal was "violating numerous federal statutes, regulations, and a Consent Order entered in May 2015." (Opp. viii, 5.)[1] But they do not allege any facts to back up that charge. Plaintiffs concede that *no* regulator has charged PayPal with any purported violation alleged in the Complaint, much less has any court made such a finding. Despite rhetoric about "violations," Plaintiffs fail to allege that any CW ever observed a *single* legal violation, much less conveyed the existence of a violation to any Individual Defendant. Absent well-pleaded factual allegations, Plaintiffs resort to distorting the requirements of the Consent Order and federal regulations, and then ask this Court to adopt their conclusion that PayPal violated the law based not on PayPal's conduct, but the conduct of approximately 0.0004% of the 34 million active merchants that use PayPal. Moreover, Plaintiffs' scienter allegations fail because they do not connect any supposed misconduct with any Individual Defendant. Further, Plaintiffs' loss causation theory is directly foreclosed by a Ninth Circuit decision—ignored in Plaintiffs' opposition—holding that disclosure of a regulatory inquiry cannot satisfy loss causation. The Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO ALLEGE MISLEADING STATEMENTS**

**A.    Purported Misstatements Concerning PayPal Credit and the Consent Order**

Plaintiffs argue that, even though no regulator has charged PayPal with any violations, "Defendants' decision to make positive statements about compliance imposed a duty on them to disclose violations of the Consent Order." (Opp. 7.) This argument fails for at least six reasons.

*First*, even if Plaintiffs could actually identify wrongdoing in violation of the Consent Order, Plaintiffs misapply the law. "[F]ederal securities laws do not impose upon companies a duty to disclose uncharged, unadjudicated wrongdoing." *In re PayPal Holdings, Inc. S'holder*

---

[1] "Opp." refers to Plaintiffs' opposition brief. "Br." refers to Defendants' opening brief. Other abbreviations are the same as in Defendants' opening brief.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

*Derivative Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018).  Numerous decisions in this District confirm this exact point.  *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023–24 (N.D. Cal. 2020) ("[T]he law is clear that Defendants had no duty to disclose unproven violations."); *Veal* v. *LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) (holding that issuer not required to disclose "unproven allegations" where the regulator "had not charged [defendant] with any violations").  Plaintiffs argue that these cases stand only for the principle that there is no "duty to disclose that the company ***might*** not be compliant with the law."  (Opp. 6.)  Plaintiffs mischaracterize these cases, which contained no such limitation.  In fact, the complaints in both *Facebook* and *Veal*, unlike here, were based on post-class period charges from regulators who determined that the companies *had* committed violations.  *See* Third Am. Compl. ¶ 61, *Facebook*, 2020 WL 12968251 (Oct. 16, 2020); *Veal*, 423 F. Supp. 3d at 794–95.

***Second****,* Plaintiffs fail to allege any underlying violations of the Consent Order, undermining the very premise of their fraud claim.  The Consent Order—which Plaintiffs conspicuously do not quote—imposes two relevant obligations on PayPal: (1) it prohibits PayPal from "misrepresenting any material aspect of PayPal Credit" including "the terms and conditions of any promotional offer" (Ex. 10 ¶ 19), but Plaintiffs do not allege that *PayPal* (as opposed to merchants) ever made such a misrepresentation; and (2) "[w]ith respect to merchants that make promotional offers to consumer who use PayPal Credit," the Consent Order requires PayPal to "ensure that consumers receive the benefit of the promotional offer by honoring the offer made through the merchant" (*id.* ¶ 20), but Plaintiffs do not allege a single instance of PayPal failing to honor a promotional offer made by a merchant.  (Br. 8 n.7.)  The Consent Order does not state that PayPal has violated its terms any time that any of 34 million merchants display potentially false language on their own websites.[2]  Plaintiffs likewise argue that Regulation Z required Defendants "to ensure that deferred interest promotions" were accurate.  (¶ 79; Opp. 6.)  Again, however, Plaintiffs do not allege that *PayPal's* promotions were inaccurate.  Nor do they cite a

---

[2] Plaintiffs argue that CW11 recalls calls with customers "who were enrolled in PayPal Credit without their consent."  (Opp. 6.)  But, as pleaded, what CW11 actually said is that some customers receiving collection calls professed they "were not aware" they had a PayPal Credit account.  (¶ 74.)  Plaintiffs fail to allege any instances of improper enrollment.  Nor do they allege any regulatory inquiry.  (Br. 8 n.7.)

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

court or agency that has interpreted Regulation Z as requiring a digital payments provider such as PayPal to affirmatively prevent its customers and merchants using its services from making misstatements.

*Third*, even if Plaintiffs had identified "violations" of the Consent Order, that still would not render Defendants' general statements about PayPal's compliance efforts misleading because the Complaint does not "adequately allege a systemic organizational disregard for compliance." *In re Carnival Cruise Line Sec. Litig.*, 2022 U.S. Dist. LEXIS 58526, at *56 (S.D. Fla. Mar. 30, 2022) (quotation marks omitted).  Plaintiffs allege, *at most*, inaccurate descriptions of the terms of PayPal Credit by 151 for-profit schools out of 34 million active merchants who use PayPal—approximately 0.0004%—which does not suggest anything approaching "systemic" noncompliance.[3]  Plaintiffs also concede that once the SBPC brought specific for-profit schools to PayPal's attention, all but 8 took the language down.  (Opp. 2.)  And Plaintiffs do not deny their failure to allege whether PayPal Credit could be accessed from these 8 websites.  (Br. 3.)

*Fourth*, Plaintiffs also cannot identify an actionable misstatement because they ignore PayPal's risk disclosures during the Class Period.  Defendants explicitly warned investors that PayPal was "regularly subject" to regulatory investigations that could have a "material adverse impact on the business," and that PayPal's failure to comply with the Consent Order could result in "redress."  (Br. 8.)  Plaintiffs try to brush aside these disclosures, arguing that it is of "no moment that Defendants did not 'guarantee' perfect compliance."  (Opp. 7.)  To the contrary, the Ninth Circuit's ruling in *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard Co.*, forecloses this argument, holding that aspirational statements about compliance are

---

[3] Plaintiffs argue that statements about compliance can be actionable if "specific violations of law" are pleaded.  (Opp. 4.)  But their cases involved significant, systemic noncompliance and are wholly distinguishable.  In *Reese* v. *Malone*, BP's statement that it was "in compliance . . . with applicable environmental laws and regulations" was sufficiently alleged to be misleading where the complaint cited numerous violations "*confirmed by the company's guilty plea, consent decree, and millions of dollars in fines and penalties.*"  747 F.3d 557, 578 (9th Cir. 2014); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1068–69 (C.D. Cal. 2012) (statement that company complied with immigration laws misleading when raid by Immigration and Customs Enforcement resulted in termination of *one third* of employees in primary facility); *Ferraro Family Found., Inc.* v. *Corcept Therapeutics, Inc.*, 2021 WL 3748325, at *18–19 (N.D. Cal. Aug. 24, 2021) (statement that pharmaceutical company's marketing materials and programs were not "off-label promotion" was misleading based on accounts of numerous former employees who were "instructed and encouraged to market [the drug] off-label to physicians").

- 3 -

not rendered misleading by violations where defendants "did not reasonably suggest that there would be no violations."  845 F.3d 1268, 1278 (9th Cir. 2017); *accord Reidinger* v. *Zendesk, Inc.*, 2021 WL 796261, at *5 (N.D. Cal. Mar. 2, 2021) (Breyer, J.).[4]  Even Plaintiffs' own case, *Lomingkit* v. *Apollo Educ. Grp. Inc.*, granted dismissal because defendants warned "investors of the risks accompanying potential noncompliance," including "significant monetary liabilities, fines, and penalties" for violations.  2017 WL 633148, at *22 (D. Ariz. Feb. 16, 2017).

*Fifth*, Plaintiffs fail to distinguish Defendants' authorities holding that statements about "working to ensure compliance with the Consent Order" or "focus[] on compliance" are nonactionable puffery.  (Br. 9.)  Bizarrely, Plaintiffs attempt to distinguish Defendants' cases—*Facebook* and *LendingClub*—on the grounds that "in those cases, statements were dismissed as puffery."  (Opp. 6.)  But those cases concerned nearly identical statements about "work[ing] hard to make sure that we comply with [a consent order]" and a "relentless focus on compliance." (*See* Br. 9.)  By Plaintiffs' own logic, those same statements are nonactionable puffery here.

*Finally*, Plaintiffs cannot salvage their claim by relying on Defendant Gallo's statement—in response to the SBPC letters—that PayPal "adheres to all state and federal regulations to ensure clear, easy to understand information about our products."  (Opp. ix, 5.)  As set out above, Plaintiffs do not allege that *PayPal* itself ever violated a regulation.  And no reasonable investor would have understood the statement to mean that all 34 million *merchants* who use PayPal would never use misleading language, particularly since, in the very same statement, Gallo said that PayPal would "quickly move to terminate the use of our services" for merchants found to be using inaccurate messaging, and PayPal had "already begun taking action against some of the schools mentioned in the letter."  (Br. 3; Ex. 7 at 2–3.)  Plaintiffs concede that, following Gallo's statement, the allegedly misleading marketing language was removed from nearly all schools' websites identified in the SBPC letters.  (Opp. 2.)  Gallo's statement also could not have misled investors in light of the Company's repeated warnings about compliance risks.  *Supra* 3.

---

[4] Plaintiffs attempt to distinguish *Reidinger* on the basis that the challenged statements were "all forward-looking."  That is wrong.  *Reidinger* did not analyze (or even mention) whether any statements were forward-looking, or grant dismissal on that basis.  2021 WL 796261, at *4.

- 4 -

### B. Purported Misstatements Concerning PayPal Debit Cards

Plaintiffs also fail to identify any false statements about PayPal Debit Cards. Plaintiffs argue—without quoting Defendants' actual statements—that Defendants misled investors by telling them that the likelihood of "regulatory challenges to the [interchange] fees collected were remote." (Opp. 6.) But the Complaint points to no statement claiming that regulatory challenges were "remote." To the contrary, PayPal warned that "the fees that we collect in certain jurisdictions may become the subject of regulatory challenge." (¶ 117.) The other statements cited in the Complaint—which simply described federal regulations and warned that "future changes to those regulations could potentially adversely affect our business"—are not alleged to be false and are not addressed in Plaintiffs' brief. (Br. 9.)

Plaintiffs also fail to plead that PayPal's debit card program and relationship with Bancorp does violate Regulation II. (Opp. 1–3.) Indeed, Plaintiffs fail to identify a court or agency that has found such a program to violate Regulation II. (Br. 5.) Nor can Plaintiffs dispute that their central piece of evidence—an advocacy letter from CHA—specifically called for "revisions" to Regulation II and offered "observations for the Board's consideration in exercising its rulemaking authority." (Ex. 11 at 1, 2.) The CHA thus sought amendments to existing regulations—which undermines Plaintiffs' argument that PayPal's program violates existing law.

## II. PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

To meet the heightened pleading standards of Rule 9(b) and the PSLRA, Plaintiffs must plead particular facts raising a strong inference that Defendants knew about or recklessly disregarded information contradicting their public statements. (Br. 10–11.) But Plaintiffs utterly fail to connect any misconduct with any Individual Defendant. The Complaint does not allege that information about a single violation was conveyed to any Individual Defendant. (Opp. 10 n.6.) Indeed, Plaintiffs never identify *any* meeting or call where supposed violations were discussed, *any* internal reports flagging violations, or *any* CW with knowledge of a specific regulatory violation. This pleading failure is dispositive. Remarkably, Plaintiffs also do not attempt to distinguish *a single case* cited in the scienter section of Defendants' opening brief.

- 5 -

Plaintiffs instead speculate that the Individual Defendants had knowledge of regulatory violations based on vague allegations about the supposed importance of the products lines at issue or Defendants' stated commitment to compliance. (¶ 157.) These arguments all fail.

*First*, Plaintiffs allege the "importance of the products involved" supports scienter. (Opp. 8.) But they do not dispute that their PayPal Credit allegations concern only 0.0004% of active merchants. With respect to the interchange fees, Plaintiffs argue that the supposed violations "put at risk nearly 30% of the revenue generated by Venmo." (Opp. 8 n.4.) This conclusory allegation is not supported by any well-pleaded facts. (*See* ¶¶ 4, 153.) But even assuming the truth of the allegation, it implicates no more than **1.2%** of PayPal's annual revenue,[5] which is far too small to impute knowledge of alleged issues to senior management under well-settled legal precedent. *E.g.*, *Bao* v. *Solarcity Corp.*, 2016 WL 4192177, at *7–8 (N.D. Cal. Aug. 9, 2016).

*Second*, Plaintiffs argue that scienter can be inferred because the Consent Order required PayPal to submit a "Compliance Plan" to the CFPB. (Opp. 8–9; ¶ 155; Ex. 10 ¶ 43.) This is irrelevant. The question is not whether Individual Defendants were aware of the Compliance Plan; it is whether they were aware of supposed violations of the Consent Order that rendered PayPal's disclosures false or misleading.[6]

*Third*, Plaintiffs argue that Defendants likely knew of alleged violations because Schulman said he "heavily" invested in compliance and "without it, you can't do other things." (Opp. 10.) This high-level statement does not raise a strong inference that he was aware of any

---

[5] Plaintiffs allege that Venmo revenue reached "nearly $1 billion in 2021." (¶ 4.) Thirty percent of $1 billion ($300 million) is less than 1.2% of PayPal's $25.4 billion in 2021 revenue.

[6] Plaintiffs rely on *Okla. Police Pension & Ret. Sys.* v. *LifeLock, Inc.*, 780 F. App'x 480 (9th Cir. 2019), but that court found scienter adequately pleaded where (i) defendants received reports containing detailed statistics contradicting their public statements, (ii) former employees filed complaints flagging the alleged wrongdoing, (iii) the alleged wrongdoing directly violated a consent decree, and (iv) the alleged wrongdoing was "widespread" and affected an "important business line." *Id.* at 484–85. Here, Plaintiffs identify no contradictory reports, statistics, or employee complaints, and the alleged wrongdoing is not tied to the 2015 Consent Order nor would it affect more than a tiny portion of PayPal's business. Plaintiffs' other cases are also distinguishable because they involved individual defendants who said that they were closely monitoring specific, ongoing issues concerning their companies' most significant products. *See In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *19–20 (W.D. Wash. Apr. 19, 2019) (involving statements concerning a regulator's two-year investigation into a "critical core operation of the company"); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013) (involving statements concerning insurance reimbursement for drug accounting for "nearly all of [defendant's] revenue"; defendants also engaged in suspicious stock sales).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

purported violations.  (Br. 12–13.)  Plaintiffs also argue that some employees "affirmatively stated that the Company ensured that merchants also comply with the law," (Opp. 10), but grossly mischaracterize the employees' statements, which never "ensured" that all merchants would accurately describe all PayPal products.  For example, Plaintiffs argue that one manager said that "exceeding all expectations on compliance allows PayPal to help merchants comply with the law" (Opp. 10); but what he *actually* said was that PayPal fulfills its "responsibility . . . well above what regulators would ask us to do, giv[ing] us a unique position to be able to help others go do that and be an even greater partner for our merchants and consumers."  (¶ 161.)  None of these statements, in any event, connect any Individual Defendant to any false statement.

*Fourth*, Plaintiffs argue that Defendants must have known about alleged Consent Order violations after the SBPC sent a letter to Schulman, and Gallo said that PayPal would "move to terminate the use of our services" for merchants using inaccurate marketing language.  (Opp. 9– 10; ¶ 162.)  These events occurred on August 21, 2020, and cannot demonstrate scienter for any alleged misstatements made before that date.  And, neither allegation supports scienter for statements after that date because Plaintiffs concede that PayPal met with the SBPC to discuss the letter and that, at the time the Complaint was filed, the allegedly misleading marketing material had been removed from all but 8 of 151 merchant websites identified.  (Br. 12–13.)  Plaintiffs insist that PayPal's supposed failure to remove *100%* of the offending merchants' language before the Complaint was filed somehow raises a strong inference of fraudulent intent.  (Opp. 9.)  But the far more compelling inference is that Defendants took the SBPC letter "seriously" and "move[d] to terminate" offending merchants' access to PayPal Credit.[7]  (¶ 85.)

*Fifth*, Plaintiffs argue that Defendants must have been aware of PayPal's purported Regulation II violations because other companies such as Visa or Bancorp faced "regulatory

---

[7] Plaintiffs' cases are inapposite because they involved executives who concealed or failed to comply with letters from *regulators* discussing specific obligations and violations. *Okla. Police Pension Fund & Ret. Sys.* v. *Teligent, Inc.*, 2020 WL 3268531, at *3, 18–19 (S.D.N.Y. June 17, 2020) (scienter pleaded where defendant-CEO touted compliance with FDA regulations after concealing three letters from the FDA detailing numerous "conditions that may constitute violations of the applicable statutes and regulations"); *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *11 (C.D. Cal. June 17, 2011) (defendant's decision not to publicly file a certain agreement was made with scienter when the defendant had received and responded to letters from the SEC informing defendant of its obligation to file the agreement).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

scrutiny." (Opp. 11.) Plaintiffs do not allege that any Individual Defendant was aware of other inquiries at other companies, but even if they did, it would not raise a strong inference that an Individual Defendant knew about specific violations at *PayPal*, which have not been charged, much less intentionally lied about such violations to PayPal shareholders.

*Sixth*, Plaintiffs argue that Schulman and Rainey's stock sales raise a strong inference of scienter because they "did not sell stock before the Class Period." (Opp. 11.) Plaintiffs omit that PayPal shares only began trading publicly in July 2015, less than a year before the five-and-a-half year Class Period began. The Court cannot "draw any strong inferences from the almost total absence of earlier trading by the defendants" in these circumstances. *In re FVC.COM Sec. Litig.*, 32 F. App'x 338, 341–42 (9th Cir. 2002) (lack of stock sales before class period not suspicious when class period began shortly after IPO). The "unusually long" Class Period also undercuts Plaintiffs' stock sales theory because it "allowed the plaintiffs to sweep as many stock sales into their totals as possible." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (rejecting similar theory with *63 week* class period), *abrogated on other grounds*.

Plaintiffs also fail to show that the timing or amount of Schulman and Rainey's sales are in any way "suspicious." (Opp. 12.) Plaintiffs try to brush aside that Schulman and Rainey *increased* their overall holdings during the purported period. (Br. 13.) But courts in this Circuit hold that increases in stock holdings strongly support that defendants did *not* act with fraudulent intent, *Applestein* v. *Medivation, Inc.*, 861 F. Supp. 2d 1030, 1042–43 (N.D. Cal. 2012), (Br. 13), and, even where defendants do sell stock, the Ninth Circuit itself has held that even the sale of *37%* of an executive's total holdings is not sufficiently suspicious to support an inference of scienter, *Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*, 540 F.3d 1049, 1066-67 (9th Cir. 2008).[8] Applying Ninth Circuit law, because Shulman and Rainey increased their stock holdings, the far stronger inference is that they did not act with scienter. Plaintiffs also argue that a "deliberate

---

[8] Plaintiffs' argument that increases in holdings (through vested options) is "an affirmative defense" (Opp. 12 n.7) contradicts Ninth Circuit law. *Applestein*, 861 F. Supp. 2d at 1043 (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)) (holding that increased holdings through "vested options [must] be considered in determining whether there are suspicious insider trades" on a motion to dismiss). Plaintiffs also cite *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), but that case is factually inapposite.

decision" to sell stock after the SBPC report supports scienter, but do not dispute that the timing of Schulman and Rainey's sales before and after the report are nearly identical, (Ex. 18), or that they sold 25% *fewer shares* after the report than in a comparable period before it.  (Br. 13–14.)

**Finally**, Plaintiffs cite to an out-of-circuit district court decision for the proposition that companies buy back shares for many reasons.  (Opp. 12 n.7.)  But courts in this district routinely consider buybacks to be inconsistent with any intent to defraud.  *See In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013) (collecting cases); (Br. 14).

### III.    PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION

Plaintiffs erroneously contend that they sufficiently plead loss causation.  (Opp. 13–14.) Plaintiffs fail to distinguish—or even mention—*Loos* v. *Immersion Corp.*, 762 F.3d 880, 889–90 (9th Cir. 2014), which is directly on point and held that the disclosure of an "inquiry" by regulators cannot establish loss causation because "[t]he announcement of an investigation does not reveal fraudulent practices to the market."  (*See* Br. 14.)  Instead, Plaintiffs rely on *Lloyd* v. *CVB Financial Corp.*, which cited *Loos* favorably and held that "the announcement of an investigation can form the basis for a viable loss causation theory *if the complaint also alleges a subsequent corrective disclosure by the defendant*."  811 F.3d 1200, 1209–11 (9th Cir. 2016) (finding loss causation pleaded when stock declined after the company announced a government investigation and later "confirmed" the underlying fraudulent behavior in a public filing) (emphasis added).  Here, Plaintiffs do not allege any "subsequent corrective disclosure," nor any "disclosure by the defendant" that "confirmed" any alleged wrongdoing, and therefore fail to sufficiently plead loss causation.  *Id.*; *see City of Fort Lauderdale Gen. Emps.' Ret. Sys.* v. *Edison Int'l*, 786 F. App'x 685, 686 (9th Cir. 2019) (affirming dismissal where plaintiff failed to identify "a subsequent corrective disclosure" following announcement of an investigation).[9]

Plaintiffs do not meaningfully respond to Defendants' other arguments.  They argue that

---

[9] Plaintiffs also rely on this Court's decision in *Evanston Police Pension Fund* v. *McKesson Corp.*, 411 F. Supp. 3d 580 (N.D. Cal. 2019).  But the disclosure of a government investigation into generic drug price-fixing was adequate there only when "combined" with the issuer's three separate disclosures of "disappointing earnings," which were "explicitly tied [to] increased scrutiny of generic drug pricing."  *Id.* at 604.  Here, Plaintiffs do not allege any other "corrective disclosure by the defendant" that "confirm[ed]" the alleged wrongdoing.  *See Lloyd*, 811 F.3d at 1210.

the earlier disclosure of the SBPC letters does not "defeat loss causation." (Opp. 14.) But they do not dispute that all the alleged wrongdoing relating to PayPal Credit was disclosed in the SBPC letters and thus known to the market long before disclosure of the CFPB investigation. (Br. 14–15.)[10] Plaintiffs also argue that Defendants "mischaracteriz[e]" the CHA letter as a "mere advocacy piece." (Opp. 14.) They are wrong, *supra* 5, but either way the letter does not suffice to plead loss causation because it does not "reveal" any alleged fraud. *Loos*, 762 F.3d at 887. The CHA letter cites public information about PayPal in a single footnote (Ex. 11 at 1 n.5), and does not even suggest that PayPal violated Regulation II (*id.* at 2).[11] Moreover, the CHA letter could not have caused Plaintiffs' losses on October 26, 2020 because it was not public until after that date. (Br. 15.) Plaintiffs plead no facts to the contrary. (*See* RJN Reply 5.)

## IV.   <u>PLAINTIFFS FAIL TO ALLEGE SCHEME LIABILITY CLAIMS</u>

Plaintiffs' "scheme" liability allegations—that PayPal "enabl[ed] misleading promotions" or "engag[ed] in a shadow banking scheme" (Opp. 14–15)—are fatally undermined by PayPal's disclosures and the documents incorporated by reference in the Complaint, for the reasons addressed *supra* 2–3, 5. They are also duplicative of the misstatement claims, and thus not adequately pleaded for the same reasons. *Supra* 1–5. Moreover, Plaintiffs fail to allege scienter or loss causation, which is fatal to *all* claims under Section 10(b). *See In re Nektar Therapeutics*, 2020 WL 3962004, at *13 (N.D. Cal. July 13, 2020).

## V.   <u>PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 20(a)</u>

As Plaintiffs concede (Opp. 15), the Section 20(a) claim fails absent a primary violation.

## <u>CONCLUSION</u>

The Complaint should be dismissed with prejudice. This Court has already granted leave to amend, and further leave should be denied.

---

[10] Plaintiffs cite an unpublished opinion, *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010), for the proposition that a disclosure providing "additional or more authoritative fraud-related information" can satisfy loss causation. But that case involved an industry expert providing additional analysis of information previously disclosed in newspaper articles. *Id.* Here, the disclosure of the existence of the CFPB inquiry did not provide *any* additional analysis or information about the issues discussed in the already-public SBPC letters.

[11] Plaintiffs also argue they plead a "materialization of risks theory." (Opp. 13.) But the only "risk" that materialized was that PayPal could be subject to regulatory inquiries, which PayPal did not conceal and repeatedly disclosed was possible. (Br. 8; *supra* 3.)

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.: 3:21-CV-06468-CRB

Dated:  July 5, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP


By: */s/ Melinda Haag*
    Melinda Haag, Esq.
    mhaag@paulweiss.com
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    535 Mission Street, 24th Floor
    San Francisco, California 94105
    Telephone: (628) 432-5100
    Facsimile: (202) 204-7383

    Daniel J. Kramer (admitted *pro hac vice*)
    Audra J. Soloway (admitted *pro hac vice*)
    Geoffrey R. Chepiga (admitted *pro hac vice*)
    Daniel S. Sinnreich (admitted *pro hac vice*)
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    1285 Avenue of the Americas
    New York, NY 10019
    Telephone: (212) 373-3000
    Facsimile: (212) 757-3990
    dkramer@paulweiss.com
    asoloway@paulweiss.com
    gchepiga@paulweiss.com
    dsinnreich@paulweiss.com

*Attorneys for Defendants*
*PayPal Holdings, Inc., et al.*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS - CASE
NO.: 3:21-CV-06468-CRB