**LABATON SUCHAROW LLP**

Michael P. Canty
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7544
mcanty@labaton.com

*Lead Counsel for Lead Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HUEI-TING KANG and ARTHUR FLORES, <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL HOLDINGS, INC., et al., <br><br> Defendants. | CASE NO.:  3:21-cv-06468-CRB <br><br> **LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> The Hon. Charles R. Breyer <br><br> Date: January 27, 2023 <br> Time: 10:00 a.m. <br> Place: Courtroom 6 – 17th Floor |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

SUMMARY OF ARGUMENT .................................................................................................vi

I.    INTRODUCTION .........................................................................................................1

II.   BACKGROUND ...........................................................................................................1

      A.    Facts and Allegations ........................................................................................1

      B.    The Court's August 8, 2022 Order....................................................................3

III.  RELEVANT LEGAL STANDARDS ...........................................................................4

IV.   ARGUMENT .................................................................................................................4

      A.    Defendants' Misrepresentations Are Actionable. ............................................4

      B.    The Complaint Raises a Strong Inference of Scienter. .....................................9

      C.    The Complaint Adequately Alleges Loss Causation .......................................14

      D.    Scheme Liability and Control Person Claims...................................................15

V.    CONCLUSION ............................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
    532 F. Supp. 3d 189 (E.D. Pa. 2021) ...............................................................................13

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ..............................................................................................11

*In re Amgen Inc. Sec. Litig.*,
    No. CV072536PSGPLAX, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) ...........................x

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
    No. 18-CV-12084 (VSB), 545 F. Supp. 3d 120 (S.D.N.Y. 2021) .........................................x

*In re Apple Inc. Sec. Litig.*,
    No. 19-cv-02033-YGR, 2020 WL 6482014
    (N.D. Cal. Nov. 4, 2020) .................................................................................................14

*Avila v. LifeLock Inc.*,
    No. CV-15-01398-PHX-SRB, 2017 WL 3669615 (D. Ariz. Aug. 21, 2017) ......................10

*Azar v. Yelp, Inc.*,
    No. 18-CV-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...........................12

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ...........................................................................................13

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    No. 19-CV-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ..................................5

*Cal. Pub. Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ....................................................................................................15

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ....................................................................................................15

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) ...........................................................................................xi

*Evanston Police Pension Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) ...............................................................................7

*In re Facebook Inc. Secs. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) ...................................................................................9

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) .............................................................................................7

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
    No. 19-CV-01372-LHK, 2021 WL 3748325 (N.D. Cal. Aug. 24, 2021) ..............................5

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ..........................................................................................xi

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ....................................................................................... 11, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..........................................................................................5, 9

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ............................................................................................13

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) .............................................................................4

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014) ........................................................................................ix, 8

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ...........................................................................................15

*N.M. State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) .........................................................................................xi

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) .........................................................................................14

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    No. 19 CIV. 3354 (VM), 2020 WL 3268531 (S.D.N.Y. June 17, 2020) ............................11

*Oklahoma Police Pension & Retirement System v. LifeLock*,
    780 F. App'x 480 (9th Cir. 2019) ......................................................................... 10, 11, 13

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .............................................................................................9

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .........................................................................................10

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
CASE NO. 3:21-CV-06468-CRB

*In re Questcor Sec. Litig.*,
    No. SA CV 12-01623 DMG, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013*)*..........................13

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014), *overruled on other grounds by*
    *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*
    *Inc.*, 856 F.3d 605 (9th Cir. 2017) ...................................................... viii, ix, xi, 5, 9

*Reidinger v. Zendesk, Inc.,*
    No. 19-cv-06968-CRB, 2021 WL 796261 (N.D. Cal. Mar. 2, 2021)...................................8

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.*
    *Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017) ...........................................7

*S. Ferry LP v. Killinger*,
    542 F.3d 776 (9th Cir. 2008)..............................................................................x, 9

*In re Silicon Graphics Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999)................................................................................14

*Smilovits v. First Solar, Inc.*,
    No. CV-12-00555-PHX-DGC, 2012 WL 6574410
    (D. Ariz. Dec. 17, 2012)........................................................................................6

*In re STEC Inc. Sec. Litig.*,
    No. CV09-08536-JVS MLGX, 2011 WL 2669217 (C.D. Cal. June 17, 2011)................x, 11

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014)...............................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................................4

*In re Zillow Grp., Inc. Sec. Litig.*,
    No. C17-1387-JCC, 2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ...............................12

**Statutes**

15 U.S.C. § 78t(a)..................................................................................................15

15 U.S.C. § 78u-4(b)(1)(B)....................................................................................5

**Rules**

Fed. R. Civ. P. 8 ................................................................................................xii

Fed. R. Civ. P. 9(b)...........................................................................................4

iv

Rule 10b-5, 17 C.F.R. § 240.10b-5..................................................................................................15

## SUMMARY OF ARGUMENT

Lead Plaintiffs Huei-Ting Kang and Arthur Flores ("Plaintiffs") adequately plead in their Second Amended Class Action Complaint ("Complaint")[1] that Defendants[2] deceived investors regarding PayPal's compliance with numerous federal statutes, regulations and a Consent Order entered in May 2015, resulting in an investigation into PayPal Credit by the Consumer Financial Protection Bureau ("CFPB") (hereafter the "Consent Order," ECF No. 71-10). The Consent Order required PayPal to ensure that neither the Company nor any of the merchants that utilized its products made misrepresentations about *any* promotional offer associated with deferred interest, and prohibited the enrollment of customers in PayPal Credit without their consent. ¶¶46, 80. There is no dispute in this case that predatory for-profit schools using PayPal Credit misled customers about deferred promotions throughout the Class Period. ¶¶88-96. Federal regulations, the Consent Order and the Compliance Plan submitted to the CFPB required Defendants to ensure that *merchants*, such as these schools, did not mislead students about deferred interest promotions. ¶¶45-47, 91-93, 167. Numerous Confidential Witnesses ("CW[s]") state that PayPal's internal policies required it to vet merchants, police its promotions, and ensure that merchants provided products and services that complied with the Consent Order. ¶¶58-65, 168. Senior Company executives directly told investors that the Company assumed the responsibility to ensure that *merchants* complied with the law. ¶175. Given these avenues of exposure to the misleading promotions and the assumption of responsibility to monitor the merchants, Defendants either knew about the misleading promotions or recklessly disregarded them.

---

[1] References to "¶__" are to the Complaint. Internal quotation marks and citations are omitted throughout this Opposition and emphases are added unless otherwise noted.

[2] Defendants are PayPal Holdings, Inc. ("PayPal" or the "Company"), its Chief Executive Officer ("CEO") Daniel H. Schulman ("Schulman"), Chief Financial Officer ("CFO") John Rainey ("Rainey"), head of Global Credit Doug Bland ("Bland"), and Director of Communications Joseph Gallo ("Gallo"). Schulman, Rainey, Bland, and Gallo are the "Individual Defendants." Plaintiffs cite to Defendants' Supporting Memorandum of Points and Authorities in support of their Motion to Dismiss the Second Amended Complaint as "Defs.' Br. __" and refer to it as "the Motion."

vi

Throughout the Class Period, Defendants failed to disclose the misleading deferred interest promotions, some of which were disseminated for five years, ¶¶75-77, and PayPal's resulting noncompliance with the Consent Order and multiple federal statutes and regulations. Nor did Defendants disclose that the Company continued to enroll customers in PayPal Credit without their consent for several years after the Consent Order was entered, as multiple CWs with personal knowledge and documentary proof from the CFPB now confirms. ¶¶80-87. Instead, Defendants explicitly linked the Company's improved compliance with an increase in customer satisfaction, ¶117, claimed to "work to ensure compliance with the Consent Order," ¶¶121, 126, 129, 131, 134-36, 139-43, 147, and 152, and repeatedly touted that PayPal's "world class" compliance regime was superior to competitors and perfectly aligned with the interests of regulators. ¶¶127, 132, 137, 145, 154. On July 17, 2020, the Student Borrower Protection Center ("SBPC") released a report and on August 21, 2020 sent letters to Schulman and the CFPB that put Defendants on notice of more than one hundred misleading promotions related to deferred interest. ¶¶69-74 ("SBPC Report" and "SBPC Letters," respectively). In response, Defendants launched a targeted media campaign to misleadingly distance the Company from these misleading promotions. The Company's spokesman, Defendant Gallo, continued to misrepresent that PayPal "adheres to all state and federal regulations to ensure clear, easy to understand information about products." ¶148. Defendant Bland, the head of Global Credit, made a similar misrepresentation after the SBPC Report and Letters were released. ¶156.

Throughout the Class Period, PayPal also engaged in a shadow banking scheme to reap fees in excess of the Federal Reserve's regulations by using a small financial institution, The Bancorp Bank ("Bancorp"), as a conduit to claim an exemption. On its face, the regulation does not allow an entity that holds the customers' funds to claim the exemption, as PayPal's debit card user agreements admit, and to the extent that any small amount was held at Bancorp to maintain the façade, Defendants are still not entitled to the excessive fees. ¶¶108-13. Despite these obvious violations of federal law, PayPal told investors that any reduction in revenues from such fees in

the United States or regulatory challenges to the fees collected were merely remote possibilities as opposed to likely ones given the plain language of the regulation itself. ¶¶123, 126, 129, 136, 139, 143, 153.

**The Court's August 8, 2022 Order:** On August 8, 2022, the Court issued an order granting Defendants' Motion to Dismiss the First Amended Complaint. ECF No. 80 ("Order"). In doing so, the Court held that Plaintiffs failed to plead falsity, scienter, and loss causation. However, the Court's holding with respect to loss causation was limited and did not rule on the merits of the Parties' arguments. As explained in Sections II & IV *infra*, Plaintiffs respectfully submit that the Court misunderstood Plaintiffs' allegations and, as a result, misapplied applicable law.

For the reasons fully explained in Plaintiffs' brief and the reasons identified herewith, the Complaint meets the pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), and Defendants' Motion is without merit.

**Falsity:** The Ninth Circuit's decision in *Reese v. Malone* supports Plaintiffs' contention that the facts and allegations contained within the Complaint are sufficient for falsity. The Ninth Circuit there did not require that "systemic" violations be pled or that regulatory charges be brought before a plaintiff can seek recovery in a civil case. 747 F.3d 557, 570 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017). This Court found *Reese* distinguishable because the "systemic noncompliance was later confirmed by the company's guilty plea, consent decree, and millions of dollars in fines and penalties under three sets of laws." Order at 18 n.2 (internal citations omitted). Plaintiffs respectfully submit that there is no categorical rule that requires fines, penalties, or adjudicatory action for securities fraud claims. Moreover, the Ninth Circuit has never held that "systemic" violations are required for a statement to be materially misleading, and such a rule would only create a license to escape liability for infrequent yet serious violations of the law. Regardless, even assuming this is required, the Complaint pleads "widespread" violations

viii

(Order at 18 n.2) given that PayPal enrolled customers without their consent for years after the Consent Order was entered, and failed to remove all misleading deferred interest promotions throughout the Class Period.

Defendants still disregard that Defendant Schulman put the issue at play when he explicitly linked improved compliance with customer satisfaction, ¶117, and Defendant Gallo continued to affirmatively misrepresent that the Company followed all laws to ensure transparency even after the SBPC Letters put Defendants on notice of the violations (¶148). The Order did not rule on the actionability of these statements, and the Ninth Circuit has held that such statements are not puffery. *Compare* ¶154 (touting "world class" compliance) *with Reese*, 747 F.3d at 577 (holding that misrepresentations about a "world class" monitoring program were actionable). That Defendants did not guarantee compliance is irrelevant. *See Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (reversing dismissal where the district court accepted the same mischaracterization of the complaint, and holding that warning investors that there was no guarantee of compliance does not allow a defendant to conceal existing violations of the law). This strawman does not excuse concealing existing violations of the law or explain why Defendants misled investors about a "world class" compliance regime that failed to remove misleading promotions even after a third-party spoon-fed Defendants with specific information about where to find the misleading promotions.

With respect to the interchange fees, Defendants cannot explain why the plain language of Regulation II should be ignored, as the exemption does not apply where, as here, PayPal admits to holding its customer's funds and still operates decoupled debit card arrangements. ¶¶123, 126, 129, 136, 139, 143, 153. Defendants' self-serving opinions about Regulation II or even the opinions of a third party are not sufficient to disclaim responsibility for the violations when no meaningful attempt has been made to refute either that PayPal retains the customer's funds or operates non-exempt decoupled debit cards, both of which take its actions outside the exemption's scope.

The Motion's new evidentiary attacks dressed up as pleading defects are easily dispatched when the applicable pleading standards are fairly applied. Pointing to the absence of certain allegations and attempts to punch holes in the Complaint's theories are not sufficient to win dismissal. *See, e.g.*, *Ap-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 141 (S.D.N.Y. 2021) (rejecting similar tactics and emphasizing that the PSLRA and Rule 9(b) do not require plaintiffs to plead details such as dates, times and places, so long as the complaint gives fair notice of the claims and grounds upon which they are based); *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *10–11 (C.D. Cal. Aug. 4, 2014) (observing that the absence of certain allegations is not sufficient to win dismissal). While the Motion is filled with cries of "vagueness," the Ninth Circuit has held that alleged vagueness is not sufficient to dismiss a complaint if sufficient detail is provided to plead a securities fraud claim. *See S. Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (noting that the Supreme Court now requires courts to consider even vague and ambiguous allegations as part of a proper holistic review even though Circuit precedent previously did not).

**Scienter**: The Motion still fails to address straightforward facts that support a strong inference of scienter at this stage. The Consent Order required Defendants to prepare a Compliance Plan to prevent misleading promotions, arm themselves with specific knowledge to report on the status of compliance to the Board of Directors, and take immediate, corrective steps to prevent the Company from failing to comply with the law.  ¶¶166-71. Defendants again do not address why this is insufficient to plead scienter, and the Order did not address these allegations.

Defendants also ignore that Schulman was informed about the problem by the SBPC no later than August 2020, that the Company sent representatives to meet with the SBPC, and dispatched Gallo to engage in a misleading media campaign. *See In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *11-12 (C.D. Cal. June 17, 2011) (inferring scienter from letters exchanged with the SEC that put defendants on notice that their representations were false). This is sufficient to demonstrate Schulman's personal knowledge, yet he kept making misleading statements after

x

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
CASE NO. 3:21-CV-06468-CRB

these events.  Defendants also ignore that Gallo's false assurances and the representations of other executives that PayPal ensured merchants' compliance with the law enhances an inference of scienter.  *See Reese*, 747 F.3d at 572 (holding that defendant "addressed corrosion rate data specifically, rendering it unlikely that she was not aware of it or the concerning aspects of the company's findings").

This Court previously found that the First Amended Complaint failed to plead facts sufficient to support a strong inference of scienter because Plaintiffs were unable to point to any "statement or conduct by an Individual Defendant that indicate[d] knowledge about any regulatory violation."  Order at 20.  However, Plaintiffs are not required to plead this smoking gun, and the Complaint adequately alleges numerous facts to support that Defendants knew enough facts to be put on notice of the regulatory violations, which rendered their statements at least reckless.  The gravamen of the Complaint rests on awareness of facts that rendered Defendants' statements to investors misleading, not direct admissions of guilt or subjective knowledge of illegality.  The former is sufficient to plead claims, and the latter attacks a strawman. *See, e.g.*, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 478-79 (9th Cir. 2015) (reversing dismissal because defendants "turned a blind eye" and "failed to take significant action or heighten oversight."); *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1100 (9th Cir. 2011) (holding that "overlook[ing] significant events without further questioning or investigation" is sufficient to be liable for securities fraud); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063-64 (9th Cir. 2000) (holding that a failure to obtain and disclose facts that can be discovered without extraordinary effort is reckless).

Nevertheless, Plaintiffs have now also bolstered their scienter allegations by adding additional facts and allegations to the Complaint.  For example, the Complaint contains statements from CW17, an employee in the Risk Management Organization at PayPal, who explained that Defendants Rainey and Schulman received weekly or biweekly updates pertaining to regulatory matters impacting PayPal and the company's remediation and progress related to the 2015

Consent Order with the CFPB. In addition, CW17 stated, *inter alia*, that "Every response, every regulatory matter, John and Dan are required to know. That's just part of the process." ¶169. These statements are corroborated by CW18, who suggested that PayPal's CEO and CFO were most likely made aware about the complaints, especially any that potentially implicated the Consent Order. ¶170.

**Loss Causation:** Defendants incorporate and repeat the same arguments made in their motion to dismiss the First Amended Complaint concerning this element. Their arguments are wrong for the same reasons identified in Plaintiffs' earlier opposition.

Defendants' new argument that the Complaint fails to plead a corrective disclosure for the allegations that PayPal enrolled customers in PayPal Credit without their consent is without merit. This kind of specific disclosure cannot be required where even the revelation of fraud is not required to plead loss causation in this Circuit. In any event, the Complaint sufficiently alleges that news regarding the CFPB's and SEC's probes into the Company "alerted investors to the materialization of serious regulatory scrutiny, including the fact that the CFPB would discover violations of the 2015 Consent Order. . . ." ¶165. That is more than sufficient to plead claims under Rule 8.

Lead Plaintiffs hereby oppose Defendants' Motion to Dismiss the Complaint and state:

## I.   INTRODUCTION

During the Class Period, Defendants materially misled investors about compliance with the law, including the Consent Order, and the issuance of debit cards in violation of "Regulation II," which caps the amount of interchange fees that a financial entity can earn from debit card transactions. While Defendants repeatedly made misleading statements about compliance (¶¶117-59), Defendants were violating the Consent Order, enrolling customers in PayPal Credit without their knowledge or consent, misrepresenting the terms and conditions of deferred interest promotions, and enabling merchants who offered PayPal Credit to mislead customers. ¶¶8-9, 81-87. Defendants also violated Regulation II by using a smaller bank, Bancorp, as a conduit to evade the regulatory cap on interchange fees. ¶¶108-13. The Complaint sufficiently pleads that Defendants materially misled investors, raises a strong inference of scienter, and alleges loss causation. As such, Defendants' motion to dismiss should be denied in full.

## II.   BACKGROUND

### A.   Facts and Allegations

PayPal is a digital payments company that enables consumers and merchants to send and receive payments. ¶38. Two of its seven core products are PayPal Credit and Venmo. ¶39. PayPal Credit is a consumer credit program that gives the account holder the ability to pay for purchases over time. *Id.* Venmo is a payments service that enables consumers to make and share payments. ¶41. In 2018, Venmo released a physical debit card. *Id.* Venmo is the fastest growing of PayPal's core products, and generated nearly $1 billion in revenue in 2021, of which nearly 30% was derived from interchange fees from the Venmo debit card. *Id.*

On May 19, 2015, the CFPB filed a complaint and the Consent Order was entered against PayPal for a litany of violations of the Consumer Financial Protection Act. According to the CFPB, PayPal deceptively advertised promotional benefits, misled customers about deferred interest, enrolled customers in PayPal Credit without their consent, engaged in illegal billing practices, and mishandled customer disputes. ¶42. The Consent Order enjoined and restrained

1

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
CASE NO. 3:21-CV-06468-CRB

Defendants from misrepresenting the terms and conditions of *any* deferred interest promotion and required them to ensure that all merchants offering PayPal Credit honored the promotion exactly as advertised even if that is not what was intended. ¶¶7, 12, 77. The Consent Order also required PayPal's Board of Directors and the Individual Defendants to take specific steps to ensure that PayPal did not enroll customers in PayPal Credit without their consent or misrepresent the terms and conditions of any deferred interest offer and otherwise ensure that PayPal complied with the Consent Order and all federal consumer financial laws. ¶16. Specifically, it required Defendants Schulman and Rainey, as senior management, to provide real time updates to the Board on how the company was complying with the Consent Order or timely remedy any non-compliance as soon as they became aware of the violations. *Id.*

PayPal violated the Consent Order throughout the Class Period, enabling for-profit, largely-unaccredited schools to deceptively market PayPal Credit's terms to students. ¶58. On July 17, 2020, the SBPC released a report and on August 21, 2020 sent letters to Schulman and the CFPB, explaining how these schools, which are ineligible for federal student loans, would use PayPal Credit. ¶69. PayPal Credit charged these students interest at more than four times that of the most expensive student loans and used misleading promotions to advertise the loans. ¶¶70, 72. These promotions, which advertised PayPal Credit's core product and service—the free interest for six months loan—failed to disclose that not paying off the entire balance within six months would result in retroactive interest charges from the date of purchase, and that all unpaid interest would be added to the total principal. ¶¶69, 71. PayPal immediately launched a media campaign distancing itself from the underlying misconduct by claiming that PayPal had "no direct relationship" with predatory for-profit schools and publicly committed to remove the misleading promotions, but it failed to actually do so, and at least 8 of them remained online as of January 2022. ¶¶11-12, 97-100. Additionally, during the Class Period, PayPal issued debit cards, including the Venmo debit card, using Bancorp as a conduit. Splitting the interchange fees with Bancorp, a small issuer exempt from Regulation II, allowed PayPal to earn an average of $0.44 per debit transaction—twice the amount earned by banks that comply with Regulation II. PayPal

kept the overwhelming majority of the interchange fees for itself even though Bancorp does not hold the customers' funds. *See* ¶¶105-13.

Throughout the Class Period, Defendants repeatedly made false and misleading statements to investors concerning PayPal's compliance with the Consent Order, Regulation II, and other laws, but failed to disclose that the Company violated the Consent Order and Regulation II for over five years and continues to do so. ¶¶117-59.

On October 23, 2020, the CHA submitted a public comment to the Federal Reserve, describing PayPal's violations of Regulation II, triggering a nearly 3% drop in the Company's stock value. ¶¶111, 161-62. Then, on July 29, 2021, Bloomberg News reported that PayPal faced probes from both the CFPB and the SEC, causing the price of the Company's common stock to decline by over 10.2%. ¶¶163-65.

**B.    The Court's August 8, 2022 Order**

On August 8, 2022, the Court issued an order granting Defendants' Motion to Dismiss the First Amended Complaint. ECF No. 80. The Court found that the First Amended Complaint alleged that merchants misrepresented PayPal Credit, as opposed to PayPal, and that the Consent Order did not impose a legal obligation on the Company to monitor its merchants. However, the Consent Order requires that:

> 20. With respect to merchants that make promotional offers to consumers who use PayPal Credit, ***Defendants must ensure*** that consumers receive the benefit of the promotional offer by honoring the offer made through the merchant or providing other appropriate remediation such that the consumer receives at least the benefit of the promotional offer as represented by the merchant.

In order for Defendants to ensure that consumers received the benefit of the promotional offer, that implicitly required PayPal to monitor promotional offers.

Moreover, any interpretation that limits the Consent Order to PayPal's own advertisements (not merchant advertisements) for PayPal Credit is fundamentally at odds with the realities of the Company's business. Generally speaking, PayPal's consumers do not shop on

3

PayPal's website. Instead, PayPal's consumers are exposed to PayPal Credit advertisements on merchant websites during the checkout process for ecommerce and mobile transactions. If anything, ¶20 of the Consent Order confirms that PayPal and its officers are required to ensure that any merchant offering PayPal Credit honors the offer and provides the consumer with at least the benefit of the promotion as it was represented by the merchant. ¶7. Accordingly, the Consent Order was designed to hold PayPal and the Individual Defendants' accountable for the misleading promotions offered by merchants and imposed an obligation on them to ensure that merchants did not mislead customers about deferred interest.[3]

As explained in detail below, Plaintiffs respectfully submit that the Court also misapplied relevant law to the facts and allegations within the First Amended Complaint to elements Plaintiffs' claims, including falsity, scienter and loss causation. Plaintiffs continue to maintain that the facts and allegations contained within the First Amended Complaint were sufficient to meet the relevant pleadings standards under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Nevertheless, Plaintiffs have chosen to amend and strengthen their claims with additional facts and allegations.

## III.    RELEVANT LEGAL STANDARDS

On a motion to dismiss, the Court must "accept all factual allegations in the complaint as true . . . [and] consider the complaint *in its entirety*." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Even under the [PSLRA], plaintiffs are only required to plead facts, not to produce admissible evidence." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).

## IV.    ARGUMENT

### A.    Defendants' Misrepresentations Are Actionable.

The Complaint adequately pleads falsity because it "specif[ies] each statement alleged to

---

[3] Defendants cannot disclaim the actual terms of the Consent Order now, when it is most convenient for them. The CFPB agreed to settle claims against Defendants, but only after PayPal agreed to take responsibility for misleading advertisements of PayPal Credit.

4

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
CASE NO. 3:21-CV-06468-CRB

have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). A statement is misleading where it "affirmatively create[s] an impression of a state of affairs that differ[s] in a material way from the one that actually exist[s]." *Reese*, 747 F.3d at 570. Omitting material facts that render a statement misleading is actionable. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018).

The Ninth Circuit has held that statements of legal compliance are actionable if a plaintiff describes specific violations of law that existed at the time the statements were made. *Reese*, 747 F.3d at 578 (sustaining allegations premised on the violations of a pre-existing Corrective Action Order issued by a federal agency, before any charges were brought without requiring that violations be "systemic."). This Court's prior order appears to have taken issue with this argument because *Reese* involved violations of law that were "later confirmed." *See* Order at 18 n.2. However, *Reese* did not hold that further regulatory action was required, and several courts in this District have repeatedly sustained securities fraud claims predicated on illegal conduct regardless of whether the defendant was subject to any regulatory investigations, enforcement actions or criminal charges. *See, e.g., Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 2021 WL 3748325, at *18–19 (N.D. Cal. Aug. 24, 2021) (ruling that statements of compliance were materially misleading when made because defendants engaged in an illegal off-label marketing scheme despite lack of any regulatory action); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *7–9 (N.D. Cal. Aug. 7, 2020) (statements implying that company had turned the corner found to be misleading where defendants paid bribes to avoid fines despite the absence of formal charges).

It is undisputed that the 2015 Consent Order prohibited Defendants from enrolling the Company's customers in a PayPal Credit account without their consent. ¶¶6, 9, 67, 82, 84, 85. The Complaint contains allegations from former employees of PayPal confirming that the Company continued to enroll customers in a PayPal Credit account without their consent during the Class Period years after it was required to stop. ¶¶81, 83. Specifically, both CW11 and CW19 state that PayPal continued to receive complaints about the Company enrolling customers in

5

PayPal Credit without their consent. *See id.* Any doubt about the existence of this violation is now refuted by documentary proof from the CFPB, including a complaint from a PayPal customer, who was enrolled in PayPal Credit without their consent in 2018, and CW19's account that management was aware of the complaints in 2017 but chose to deflect blame on the customers instead. ¶¶83, 86. Accordingly, Plaintiffs have sufficiently alleged that PayPal violated this provision of the Consent Order during the Class Period, and the length of time the violation existed is sufficient to plead its "widespread" nature even assuming that is required.

As discussed in Section II, *supra*, the Consent Order also required PayPal and its officers to ensure that merchants did not misrepresent the terms and conditions of any promotional offer associated with PayPal Credit, such as deferred interest or money-back offers, or from making misrepresentations about *any* promotional offer associated with deferred interest or any benefit that a consumer receives from using PayPal Credit. ¶¶7, 12, 46, 72, 85. CW1, the Head of Compliance for U.S. Credit and U.S. Operations during the Class Period, confirms that the CFPB, and the 2015 Consent Order, was particularly concerned about the impact of misleading deferred interest promotions, and that the focus was to make sure that consumers understood what the payment rules were. ¶6.

These well-pled facts are inconsistent with the Court's and Defendants' interpretation of the Defendants' responsibilities in light of the Consent Order's actual language. Defs.' Br. at 7 (claiming the First Amended Complaint alleges that merchants misrepresented PayPal Credit, as opposed to PayPal, and that the Consent Order did not impose a legal obligation on the Company to monitor its merchants).[4]

---

[4] The Court should not continue to credit Defendants' claim that only 0.0004% of the 34 million active merchants who use PayPal violated PayPal's obligations under the Consent Order. *See* Defs.' Br. at 7; *see also* Order at 18 n.2. This figure comes from an unnamed PayPal source quoted a Yahoo article. ECF No. 71-8. Thus, it cannot be assumed to be true at the pleading stage. *See Smilovits v. First Solar, Inc.*, 2012 WL 6574410, at \*7 (D. Ariz. Dec. 17, 2012) ("While Defendants dispute the veracity of many of the allegations, factual disputes about specific, plausible allegations are not sufficient to dismiss a claim."). Even so, this only raises

The Order overlooked that Defendants' statements were tethered to the Company's bottom line. On April 27, 2016, Schulman touted compliance as a competitive advantage, and specifically pointed to an increase of over 70% in the Net Promoter Score (which tracks whether customers recommend using the product) in March 2016 as an example of how improved compliance positively impacted customer satisfaction. ¶117. Defendants still do not contest that this statement is actionable. Telling investors that the score increased because of strong compliance required Defendants to also disclose noncompliance with the Consent Order. *See, e.g., Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 599 (N.D. Cal. 2019) (agreeing that touting price increases as a positive development obligated defendants to disclose that the profits were generated because of illegal collusion in the market). Instead, Defendants repeatedly told investors that they were then "work[ing] to ensure compliance with the Consent Order" (¶¶121, 126, 129, 131, 134-36, 139-43, 147, and 152) while "focus[ing] on being compliant with any and all regulatory environments out there" (¶127), touted the Company's "world-class" compliance regime as a competitive advantage perfectly aligned with the interests of regulators (¶¶127, 132, 137, 145, 154), and affirmatively misrepresented that the Company was "transparen[t]" about PayPal Credit's offerings (¶156) and "***adhere[d] to all state and federal regulations to ensure clear, easy to understand information about our products***" (¶148) even after the SBPC Letters put Defendants on notice that these statements were materially misleading when made.[5]

___

materiality issues that are questions of fact inappropriate for this stage. *Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995) ("only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds [could] not differ are these issues appropriately resolved as a matter of law."). This figure is also irrelevant, given that the claims here do not relate to all 34 million merchants, but merchants who offered PayPal's deferred interest promotions. Specific concerns of the Consent Order relate to customer confusion about deferred interest schemes, not straw arguments about "34 million merchants." ¶43.

[5] *Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, is not on point because there the violations involved a code of ethics, and most courts have held that such codes are merely aspirational and cannot form the basis of a claim. 845 F.3d 1268, 1278 (9th Cir. 2017). MTD FAC at 8. Defendants' attempt to expand that decision to

Defendants still do not dispute that PayPal's own internal polices required it to remove merchants that did not comply with the Consent Order (¶60), that the Company used tracking and crawling tools to address whether there was a compliance-related issue with any merchant (¶¶64, 68), or that despite such close contact and vetting procedures, PayPal continued to allow predatory schools to offer deferred interest schemes in violation of its own policies (¶65). Defendants do not dispute that over 150 misleading deferred interest promotions offering PayPal Credit were identified by the SBPC or that some of them were promoted throughout the entire Class Period. ¶¶74-77. That federal courts have already found such lending schemes to be illegal is also not in dispute. ¶79. Pursuant to Regulation Z, Defendants – *not just creditors or merchants* – were required to ensure that deferred interest promotions prominently include the phrase "if paid in full" in immediate proximity to any advertisement. ¶91. They did not. Even after the SBPC Letters were released and Gallo stated that the Company would remove all misleading promotions, at least 8, **not 4**, of these highlighted misleading promotions remained online in violation of Regulation Z when the Complaint was filed. ¶100. Once the SBPC Report and Letters were released, Defendants carried on a misleading media campaign that falsely deflected responsibility from the Company. ¶148. These facts are sufficient to plead that Defendants violated the Consent Order, rendering their statements about compliance materially misleading when made.

With respect to the interchange fees, Defendants did not simply "dodge" the intent of Regulation II but violated its plain language. Order at 17. Issuers like PayPal that admittedly hold the customer's funds are not exempt under the regulation, (¶109), and decoupled debit card arrangements are not exempt either. ¶¶111-12. A third party's opinion of the issue does not allow the Defendants to dodge the plain language of the regulation. Order at 17. Still, Defendants told investors that any potential decrease in interchange fees in the United States or regulatory

___

affirmative misrepresentations about compliance should be rejected. The Court's decision, *Reidinger v. Zendesk, Inc.,* is similarly irrelevant. 2021 WL 796261, at *7 (N.D. Cal. Mar. 2, 2021). An absence of a guarantee of perfect compliance does not allow a defendant to conceal existing violations of the law. *See, e.g., Meyer*, 761 F.3d at 251.

challenges to the fees collected were remote. ¶¶123, 126, 129, 136, 139, 143, 153; *see also Khoja*, 899 F.3d at 1010 (telling investors that data "***might change***" is misleading where the defendant knows or recklessly disregards that the data was "***likely to change***") (emphasis added).

The Court's reliance on *In re Facebook Inc. Securities Litigation*, 477 F. Supp. 3d 980 (N.D. Cal. 2020), is misplaced. Order at 18. The Complaint pleads a basis to allege violations of the law at the time the statements were made and allowing a defendant to conceal illegality simply because a regulator has not yet accused it of misconduct is an invitation to abuse. Nor can affirmative misrepresentations that the Company adheres to all laws (¶148) or is then "work[ing]" to ensure compliance with the Consent Order when it is not (¶¶109, 114, 117, 119, 122-24, 127-31, 135, and 140), be characterized as puffery. While the Order found that Defendants' misstatements about a "world class" compliance program are puffery, the Ninth Circuit has held otherwise. *See Reese*, 747 F.3d at 577.

In addition, Defendants' decision to make positive statements about compliance imposed a duty on them to disclose violations of the Consent Order and the details about the shadow banking scheme. *See, e.g.*, *Khoja*, 899 F.3d at 1009 (reaffirming that choosing to tout positive information creates an affirmative duty to disclose negative information that cuts the other way).[6]

## B.   The Complaint Raises a Strong Inference of Scienter.

Plaintiffs can plead scienter through allegations and facts that suggest deliberate recklessness. *Killinger*, 542 F.3d at 782. One "is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010).

---

[6] Both Defendants and the Order ignore Gallo's specific misrepresentation that PayPal "adheres to all state and federal regulations" to ensure transparency, a representation that is contradicted by well-pleaded facts that similarly went unaddressed. Nothing is "vague" or "highly subjective" about this misrepresentation. Order at 18.

9

In this case, the critical importance of the products involved (¶¶3-4, 35-37, 153),[7] as well as the individual responsibilities imposed by the Consent Order (¶¶166-71), raise a strong inference of scienter. In *Oklahoma Police Pension & Retirement System v. LifeLock*, 780 F. App'x 480, 484-85 (9th Cir. 2019), the Ninth Circuit held that obligations imposed by a consent decree combined with the importance of the product at issue and a defendant's false assurances of fixing the problem were sufficient to plead scienter. All three factors are also present here. The Complaint describes in detail how the Consent Order required Defendants to prepare a Compliance Plan to prevent misleading promotions, arm themselves with specific knowledge to report on the status of compliance to the Board of Directors, and take immediate, corrective steps to prevent the Company from failing to comply with the law. ¶¶166-71. Neither the Order nor Defendants address most of these factors.

The Order found that *LifeLock* was distinguishable because the complaint there alleged that defendants were provided with specific reports, but the district court had dismissed those reports as hearsay and allegedly lacking in detail. *Compare* Order at 20 *with Avila v. LifeLock Inc.*, 2017 WL 3669615, at *2 (D. Ariz. Aug. 21, 2017).[8] Overturning that erroneous ruling, the

---

[7] Indeed, Defendants' violations of Regulation II put at risk nearly 30% of the revenue generated by Venmo, the fastest growing of PayPal's core products (*see, e.g.*, ¶¶4, 141). CW3, who directly reported to Defendant Bland, further stated that PayPal Credit is one of the Company's most important divisions that produces extremely high margins. ¶40. Further, CW3 stated that the importance of PayPal Credit to PayPal's bottom line has increased in the last few years because of intense competition in the industry over Buy Now, Pay Later purchase options. *Id*. The Senior Vice President of Global Credit at PayPal has confirmed that deferred interest "is a big chunk" of PayPal Credit and has admitted that more than half of the business volume for that product is related to deferred interest. *Id.* These allegations are not "misleading" merely because of how Defendants choose to quantify them. Order at 21. They are sufficient to show the importance of PayPal Credit and the long-term potential of Venmo revenue. The Ninth Circuit has never held that the core operations inference can be invoked only where the product concerns all or most of the Company's revenue.

[8] To the extent the Court is suggesting that Plaintiffs must plead facts showing that Defendants had knowledge of the relevant violations, the Ninth Circuit has held that "particularized allegations that defendants had actual access to the disputed information, . . . raise a strong inference of scienter.'" *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017).

Ninth Circuit conducted a proper holistic review to sustain the complaint by taking all the allegations collectively instead of scrutinizing the reports in isolation. Here, the Order ignored the fact that Schulman personally received a letter from the SBPC detailing the chronic failures in PayPal's compliance regime and the Company sent employees to meet with the SBPC as CW2 confirms, but Defendants continued to make misleading statements after these events. ¶172; *see also STEC,* 2011 WL 2669217, at *11-12 (inferring scienter from letters exchanged with the SEC that put defendants on notice that their representations were false); *Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *18 (S.D.N.Y. June 17, 2020) (finding scienter where CEO received a letter from the FDA regarding concerns about studies and his direct reports participated in the FDA inspections).[9] Therefore, Shulman was aware of specific violations no later than August 2020. ¶16.[10]

According to CW17, an employee in the Risk Management Organization at PayPal, Defendants Rainey and Schulman received weekly or biweekly updates pertaining to regulatory matters impacting PayPal and the company's remediation and progress related to the 2015 Consent Order with the CFPB. CW17 states, *inter alia*, that "Every response, every regulatory matter, John and Dan are required to know. That's just part of the process." ¶169. Further, CW18 suggested that PayPal's CEO and CFO were most likely made aware about the complaints, especially anything that potentially fell under a Consent Order. ¶170.

[9] The Complaint additionally specifies that senior leaders at PayPal were deeply involved in responding to and addressing the impact of the Consent Order, including analyzing models that flagged high-risk merchants. ¶168. CW12 states that these models should have flagged predatory for-profit educational institutions. *Id.* Defendants' claim that the Court should disregard accounts from CWs who did not talk to or hear from them is without merit. Not one CW is required, let alone one that provides an admission of guilt. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021) (reversing dismissal and holding that an absence of insider trading or CW accounts does not defeat scienter); *LifeLock*, 780 F. App'x at 484 n.5 (crediting hearsay account from CW who had no contact with the individual defendants to find scienter); *Quality Sys.*, 865 F.3d at 1138-39 (crediting numerous accounts from lower-level employees who had no interaction with defendants). Nor are Plaintiffs required to plead any "internal data or reports" or provide smoking gun evidence of meetings where violations were discussed. *See, e.g.*, *Institutional Inv'rs Grp. v. Avaya*, 564 F.3d 242, 268 (3d Cir. 2009) (emphasizing that *Tellabs* does not require a plaintiff to produce documents or rely on witnesses to plead scienter).

[10] In addition, CW 15, who worked in PayPal's Executive Escalations Department recalled that complaints directed at executives regarding PayPal Credit and the company's collection efforts occurred "relatively often." ¶66. Similarly, CW19, an Executive Escalations Specialist, who

11

As in *Lifelock*, Gallo also made false assurances to remove the misleading promotions, but many of them remain online, as the Complaint indisputably demonstrates. ¶¶148-50, 176-77; *see also Azar v. Yelp, Inc.*, 2018 WL 6182756, at *16 (N.D. Cal. Nov. 27, 2018) ("In the securities context, an actor is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.").[11]

In addition, Defendants' own statements bridge any perceived gaps between their knowledge or reckless disregard of the truth and the information pled. Schulman repeatedly told investors that he had "heavily" invested time and resources to compliance because "[w]ithout it, you can't do other things." ¶¶145, 174. Other senior executives at PayPal not only assured investors of the Company's own attempt at compliance, but affirmatively stated that the Company ensured that merchants also comply with the law – facts ignored by Defendants and absent from the Order's analysis. *See, e.g.*, ¶175 (PayPal's Chief Operating Officer stated that the Company "tak[es] care of" any regulatory changes that impact merchants); *id.* (General Manager of Braintree claimed that exceeding all expectations on compliance allows PayPal to help merchants comply with the law); *id.* (President of Small Business touts that PayPal helps marketplaces assess risks "with all of the careful compliance and underwriting requirements.").

These specific statements on compliance bolster a strong inference of scienter. *See In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *19–20 (W.D. Wash. Apr. 19, 2019) (statements displaying familiarity with how a marketing program was structured raised an

responded to regulatory complaints and customer complaints addressed to PayPal's CEO, explained that customers commonly complained through the CFPB about PayPal enrolling customers in PayPal Credit without their consent. CW19 attended meetings with management about customers being enrolled in PayPal Credit without their consent, and noted that management was aware of continuing complaints after the issue had reportedly been resolved. ¶83.

[11] Conclusory claims that meeting with the SBPC demonstrates that the Company took the letters "very seriously" and quickly began "taking action" should not be viewed in a light most favorable to Defendants at the pleading stage. Order at 18.

inference that the speakers knew the program violated the law); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013*)* (inferring scienter where defendants discussed insurance reimbursement in conference calls and told investors that they were "monitoring [insurance reimbursements] closely.").

Even assuming *arguendo* Defendants had no knowledge of the violations (and the Complaint more than adequately alleges they did), this does not defeat scienter if what they did know made obvious the risk that their statements were misleading. *Avaya*, 564 F.3d at 270; *see also Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.").

Defendants' decision to engage in a shadow banking scheme in violation of Regulation II is also a fact so prominent that it would be "absurd to suggest" that they were unaware of it. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008). Defendants do not contest that federal and state regulatory scrutiny over the issue has been intense for over a decade (as their own SEC filings acknowledge), that Visa is currently under investigation by the DOJ, or that Bancorp – their conduit – was subpoenaed by the SEC nearly a year before PayPal faced a probe itself. ¶179. These allegations suffice to plead scienter, particularly where, as here, the Company has already reaped hundreds of millions of dollars in illicit fees per year and could reap billions of dollars a year in the future if the scheme continues. ¶41. *See LifeLock, Inc.*, 780 F. App'x at 485 (holding that the "overall importance" of the product to the company's business strengthened an inference of scienter without fixating on quantities and current percentages).[12]

More, a holistic analysis should not disregard that Schulman and Rainey reaped a windfall while investors suffered losses. Other courts in the Circuit have also correctly observed that stock buy-backs cannot defeat scienter because an individual defendant does not spend any of his own

---

[12] *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 233 (E.D. Pa. 2021).

funds to buy back stock. *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at \*13 (N.D. Cal. Nov. 4, 2020).

Both Defendants earned total proceeds that were disproportionate in amount to their sales before the SBPC Report and Letters were released. ¶¶181-82. At that time, they were obligated to refrain from trading unless material information about the misleading information concealed was disclosed. *See Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014) (citing *Chiarella v. United States*, 445 U.S. 222, 227 (1980)). *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986-87 (9th Cir. 1999) is not on point. There, the Ninth Circuit held that vested options should be considered when examining whether the total percentage of shares sold is suspicious, but the proportion of stock sold is irrelevant where, as here, a defendant reaps tens of millions of dollars while investors suffer losses. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (deeming massive dollar amount reaped suspicious even if it was only 2.1% of the insider's total stock holdings).

For all of these reasons, the Complaint pleads a strong inference of scienter. Defendants have failed to present a ***more*** compelling inference of innocence to support dismissal at this stage.

### C.    The Complaint Adequately Alleges Loss Causation[13]

With respect to loss causation, Defendants expressly incorporate and repeat the same arguments they made in their first motion to dismiss. ECF No. 87 at 12-14. These arguments ignore Ninth Circuit precedent as well as the Court's application of that precedent that supports Plaintiffs' theory of the case. For the reasons fully explained in Plaintiffs' prior opposition, the Complaint easily pleads loss causation under Rule 8's notice pleading standard. *See* ECF No. 76 at 13-14.

Defendants' new argument that the Complaint fails to plead a corrective disclosure for the allegations that PayPal enrolled customers in PayPal Credit without their consent is without merit.

---

[13] Notably, the Court refrained from conducting a substantive loss causation analysis. Instead, the Court found that Plaintiffs failed to alleged loss causation because the First Amended Complaint did not plead an actionable misstatement.

14

The Ninth Circuit has repeatedly rejected similar attempts to graft such narrow and restrictive tests for loss causation and reaffirmed that a plaintiff is required to only show a "casual connection" between the misrepresentation and the loss. *See, e.g.*, *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018). The Complaint easily meets this test because it alleges that "[t]he market's far more negative reaction to these announcements . . . alerted investors to the materialization of serious regulatory scrutiny, including the fact that the CFPB would discover violations of the 2015 Consent Order . . . ." ¶165.

### D.    Scheme Liability and Control Person Claims

The Complaint states a claim for scheme liability. ¶¶202-10. Defendants engaged in deceptive practices by enabling misleading promotions of PayPal Credit that continued to persist after the Class Period, launching a media campaign to cover up the Company's violations, and engaging in a shadow banking scheme in violation of Regulation II to reap unreasonable and disproportionate interchange fees. ¶205. These acts are distinct from making misleading statements. Because the Complaint plausibly pleads reckless violations of the law, the scheme liability claims should be sustained. Since the Complaint adequately alleges a primary violation of § 10(b) and Rule 10b-5, Plaintiffs' control person claims should also be sustained. *See* 15 U.S.C. § 78t(a).[14]

### V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion.

---

[14] Defendants' arguments about the statute of repose continue to disregard Supreme Court precedent. The statute of repose begins to run on the date of Defendants' last culpable act. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 n.1 (2018); *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). Each of Defendants' misrepresentations is within the five-year time limit.

Dated: December 15, 2022  Respectfully submitted,


**LABATON SUCHAROW LLP**

By: */s/ Michael P. Canty*
Michael P. Canty (admitted *pro hac vice*)
Thomas G. Hoffman, Jr. (admitted *pro hac vice*)
David J. Schwartz (admitted *pro hac vice*)
Charles J. Stiene (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0744
Facsimile: (212) 883-7544
E-mail: mcanty@labaton.com
  thoffman@labaton.com
  dschwartz@labaton.com
  cstiene@labaton.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

**POMERANTZ LLP**

Joshua B. Silverman
Omar Jafri
Brian P. O'Connell (SBN 314318)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
  ojafri@pomlaw.com
  boconnell@pomlaw.com

  -and-

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

  -and-

Jeremy A. Lieberman

16

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

-and-

**THE ROSEN LAW FIRM, P.A.**

Jacob Goldberg
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
E-mail:  jgoldberg@rosenlegal.com
            lheifetz@rosenlegal.com

-and-

**FREEDMAN NORMAND FRIEDLAND LLP**

Ivy Ngo
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (786) 924-2900
Email: ingo@fnf.law

*Additional Counsel for Lead Plaintiffs*

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
CASE NO. 3:21-CV-06468-CRB