Melinda Haag (State Bar No. 132612)
mhaag@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California  94105
Telephone: (628) 432-5100
Facsimile: (202) 204-7383

Daniel J. Kramer (admitted *pro hac vice*)
dkramer@paulweiss.com
Audra J. Soloway (admitted *pro hac vice*)
asoloway@paulweiss.com
Geoffrey R. Chepiga (admitted *pro hac vice*)
gchepiga@paulweiss.com
Daniel S. Sinnreich (admitted *pro hac vice*)
dsinnreich@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
*PayPal Holdings, Inc., et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| HUEI-TING KANG and ARTHUR FLORES,<br><br>Plaintiffs,<br><br>- against -<br><br>PAYPAL HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 3:21-cv-06468-CRB<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>The Honorable Charles R. Breyer<br><br>Date: January 27, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 6 – 17th Floor |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT....................................................................................................................................1

I.   PLAINTIFFS STILL FAIL TO ALLEGE MATERIALLY MISLEADING
     STATEMENTS OR OMISSIONS .........................................................................................1

     A.   The Challenged Statements Are Still Not Actionable ..............................................1

     B.   Plaintiffs Still Fail to Identify Any Regulatory Violations.....................................4

II.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER ................7

III. PLAINTIFFS STILL FAIL TO ALLEGE LOSS CAUSATION....................................10

IV.  PLAINTIFFS' REMAINING ARGUMENTS ARE Still NOT MERITORIOUS............10

CONCLUSION................................................................................................................................10

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT - CASE NO.: 3:21-CV-06468-CRB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...........................................................................9

*Bao* v. *Solarcity Corp.*,
  2016 WL 4192177 (N.D. Cal. Aug. 9, 2016) ...........................................................................7

*In re Facebook, Inc. Sec. Litig.*,
  477 F. Supp. 3d 980 (N.D. Cal. 2020) ..................................................................................2, 3

*McCasland* v. *FormFactor Inc.*,
  2009 WL 2086168 (N.D. Cal. July 14, 2009)..........................................................................9

*Metzler* v. *Corinthian*,
  540 F.3d at 1068 .................................................................................................................9, 10

*Nursing Home Pension Fund, Local 144* v. *Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .................................................................................................9

*Oklahoma Police Pension & Retirement System* v. *LifeLock*,
  780 F. App'x 480 (9th Cir. 2019) ........................................................................................7, 8

*In re PayPal Holdings, Inc. Sec. Litig.*,
  2018 WL 466527, (N.D. Cal. Jan. 18, 2018)...........................................................................3

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) .................................................................................................9

*Reese* v. *Malone*,
  747 F.3d 557 (9th Cir. 2014) ...............................................................................................2, 3

*Reidinger* v. *Zendesk, Inc.*,
  2021 WL 796261 (N.D. Cal. Mar. 2, 2021)..............................................................................4

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) .......................................................................................3, 6, 7

*In re Tesla Motors, Inc. Sec. Litig.*,
  75 F. Supp. 3d 1034 (N.D. Cal. 2014) ...................................................................................10

*In re Twitter, Inc. Sec. Litig.*,
  506 F. Supp. 3d 867 (N.D. Cal. 2020) .....................................................................................3

*Veal* v. *LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) .....................................................................................2

- ii -

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................................................9

**Statutes and Other Authorities**

Private Securities Litigation Reform Act of 1995 ........................................................................9

Federal Rule of Civil Procedure 9(b)............................................................................................9

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-CV-06468-CRB

**PRELIMINARY STATEMENT**

Plaintiffs' opposition brief confirms the Second Amended Complaint's ("SAC's") failure to state a claim. As this Court held in dismissing the prior complaint, Plaintiffs failed to plead any actionable misstatements, identified no regulatory violations, and raised a "far more likely inference" that Defendants did *not* act with scienter. The SAC recycles from the prior complaint the same parties, claims, class period, alleged misstatements, corrective disclosures, and nearly all of the same factual allegations. The SAC also adds *no* new allegations about Plaintiffs' fraud theory hinging on purported Regulation II violations. Plaintiffs cannot dispute this, and their opposition brief instead repeats the same arguments (often verbatim) and nearly all of the same cases from Plaintiffs' prior opposition brief. Indeed, the opposition brief scarcely attempts to address the numerous deficiencies identified in the 24-page Dismissal Order. Further, although the principal changes to the SAC were the addition of eight new CWs, Plaintiffs do not dispute that their recollections largely predate the Class Period, shed no light on what any Individual Defendant knew or believed, and are substantially similar to those already rejected in the FAC. In fact, four of the eight new CWs are not even mentioned in Plaintiffs' opposition brief.

Rather than defend the sufficiency of the SAC, Plaintiffs repeatedly argue that this Court erred in dismissing the prior complaint. Plaintiffs "continue to maintain" that the prior complaint was "sufficient" to state a claim and insist that this Court "misunderstood Plaintiffs' allegations" and "misapplied applicable law." Opp. viii, 4.[1] This is wrong and improper. Plaintiffs cannot use their opposition brief as a backdoor motion to reconsider the Dismissal Order, and Plaintiffs' arguments should be rejected for the same reasons previously articulated by this Court.

**ARGUMENT**

**I.    PLAINTIFFS STILL FAIL TO ALLEGE MATERIALLY MISLEADING STATEMENTS OR OMISSIONS**

**A.    The Challenged Statements Are Still Not Actionable**

This Court previously held that Defendants' general statements about compliance efforts

---

[1] "Br." refers to Defendants' opening brief; and "Opp." refers to Plaintiffs' opposition brief. "FAC Br." refers to Defendants' prior opening brief; "FAC Opp." refers to Plaintiffs' prior opposition brief; and "FAC Reply" refers to Defendants' prior reply brief. Other abbreviations are the same as in Defendants' opening brief.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT - CASE NO.: 3:21-cv-06468-CRB

are "not made misleading just because a later regulatory inquiry occurs." Order 16. This holding is consistent with recent opinions from this district, which held that issuers are not required to disclose "unproven allegations" where a regulator has "not charged [the issuer] with any violations."[2] This Court also held that "the general statements about compliance at issue here"—including statements that Defendants were "working to ensure compliance with the Consent Order" and "focusing on being compliant"—are "the kind of corporate puffery that are rarely (if ever) actionably misleading." Order 17-18. This holding, too, is consistent with recent published decisions holding that nearly identical statements are non-actionable puffery.[3]

Plaintiffs fail to distinguish any of this precedent. They suggest that one case (*Facebook*) was wrongly decided, and ignore the other relevant case law. *See* Opp. 9. Instead, Plaintiffs repeat—*verbatim*—their prior argument that "statements of legal compliance are actionable if a plaintiff describes specific violations of law," and cite the same cases. Opp. 5; *compare* FAC Opp. 4. This Court previously rejected this argument and held that Plaintiffs' cases, such as *Reese* v. *Malone*, 747 F.3d 557, 578 (9th Cir. 2014), are "a far cry" from the situation here because they involved detailed accounts of "systemic noncompliance" that were later "confirmed" by significant regulatory action. Order 18 n.2. Again here, Plaintiffs continue to rely heavily on *Reese*, and argue that it "did not hold that further regulatory action was required" to make a statement about compliance misleading. Opp. 5. But the Ninth Circuit in *Reese* *specifically relied on* "the company's guilty plea, consent decree, and millions of dollars in fines and penalties," in holding that defendants' statements about compliance "in all material respects" with applicable laws and regulations were misleading. *Reese*, 747 F.3d at 578. *Reese* thus is distinguishable both due to the warrantee of regulatory compliance (PayPal made no such statement), and the subsequent regulatory action (no regulator has even *charged* PayPal with any violation). Plaintiffs' other cases are similarly distinguishable. *See* FAC Reply 3 n.3.

Plaintiffs also argue repeatedly that "Defendants' decision to make positive statements

---

[2] *See Veal* v. *LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023-24 (N.D. Cal. 2020).

[3] *See, e.g., Veal*, 423 F. Supp. 3d at 804 (statement about company's "relentless focus on compliance" was puffery); *Facebook*, 477 F. Supp. 3d at 1023 (statement that company "worked hard to make sure that we comply with" a consent order was puffery).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-cv-06468-CRB

about compliance imposed a duty on them to disclose violations of the Consent Order." Opp. 9. But "federal securities laws do not impose upon companies a duty to disclose uncharged, unadjudicated wrongdoing." *In re PayPal Holdings, Inc. Sec. Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018); *supra* 1-2. Plaintiffs argue, for example, that Defendant Schulman misled investors when he stated that a 70% increase in PayPal's "Net Promoter Score" was "a clear demonstration that what regulators want and what we want are truly aligned around delighting and protecting our customers." Opp. 7. Plaintiffs do not allege that this statement (or any other statement) was factually inaccurate—*i.e.*, the SAC does not challenge the 70% increase in Net Promoter Score—but instead argue that "[t]elling investors that the score increased because of strong compliance required Defendants to also disclose violations of law, including noncompliance with the Consent Order." Opp. 7. As discussed above, however, speaking generally about compliance does not impose an obligation to disclose purported (uncharged) violations. *See also In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 886 (N.D. Cal. 2020) ("[M]erely mentioning a topic does not require the company to disclose every tangentially related fact that might interest investors."). Plaintiffs also ignore this Court's holding that statements about being "aligned" with regulators, as well as the other similar statements quoted in Plaintiffs' brief, are non-actionable puffery. Order 18; *see* Opp. 7.[4]

Under Plaintiffs' theory, any public company that makes general statements about its compliance efforts adopts an affirmative duty to disclose supposed regulatory violations—even when no such violations have been *charged*, much less adjudicated. But the law is the opposite: companies are "*not required* to engage in 'self-flagellation' by disclosing unproven allegations." *Facebook*, 477 F. Supp. 3d at 1023. That is particularly true where, as here, Defendants "did not

---

[4] Plaintiffs argue that Defendants' statements about PayPal's "world class" compliance program cannot be puffery because a statement about "world class" systems was held to be actionable in *Reese*. Opp. 9. In *Reese*, however, the Ninth Circuit held that a statement from BP's CEO that a massive oil spill occurred "in spite of the fact that we have both world class corrosion monitoring and leak detection systems, both being applied within regulations," was false "based on the results of later investigations revealing that the pipelines were under-inspected, under-maintained, and subject to severe risk of corrosion-related failure." 747 F.3d at 577. Unlike *Reese*, the challenged statements here were not factually inaccurate, were not made in response to questions about specific, significant compliance failures, and are not supported by multiple regulatory investigations revealing systemic compliance shortcomings.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-CV-06468-CRB

reasonably suggest that there would be no violations." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017); *Reidinger* v. *Zendesk, Inc.*, 2021 WL 796261, at *7 (N.D. Cal. Mar. 2, 2021) (Breyer, J.); Order 18 n.2.[5]

Plaintiffs separately argue that this Court "ignore[d] Gallo's specific misrepresentation that PayPal 'adheres to all state and federal regulations' to ensure transparency."  Opp. 9 n.6; *see id.* 7.  But Plaintiffs flagged the same alleged misstatement in their brief on the prior motion, and this Court held that it was not misleading.  *See* FAC Opp. 5; Order 18 (rejecting FAC ¶ 136).  As discussed *infra*, Plaintiffs do not allege that *PayPal* itself ever violated a regulation.  *See* Order 16-17.  And no reasonable investor would have understood the statement to mean that all 34 million *merchants* who use PayPal would never use misleading language, particularly since, in the very same statement, Gallo said that PayPal would "quickly move to terminate the use of our services" for merchants found to be using inaccurate messaging, and PayPal had "already begun taking action against some of the schools mentioned in the letter."  Ex. 7 at 2-3.  Plaintiffs concede that, following Gallo's statement, the allegedly misleading marketing language was removed from nearly all schools' websites identified in the SBPC letters.  *See* Opp. 8.

Finally, with respect to interchange fees, Plaintiffs repeat (verbatim) their argument that Defendants misled investors by telling them that the likelihood of "regulatory challenges to the [interchange] fees collected were remote."  Opp. 8-9; *compare* FAC Opp. 6.  Just as in their prior brief, Plaintiffs do not quote Defendants' actual statements, and point to no statement claiming that regulatory challenges were "remote."  To the contrary, PayPal warned that "the fees we collect in certain jurisdictions may become the subject of regulatory challenge."  Order 17.

### B.    Plaintiffs Still Fail to Identify Any Regulatory Violations

The challenged statements are also not misleading because, as in the prior complaint, Plaintiffs still fail to adequately allege any regulatory violations.

---

[5] Plaintiffs argue that *Retail Wholesale* is "not on point" because the violations there involved a "code of ethics," not government regulations.  Opp. 7 n.5.  But the Ninth Circuit drew no such distinction.  Plaintiffs also argue that this Court's decision in *Reidinger* is "irrelevant."  *See* Opp. 7-8 n.5.  But that decision is directly relevant because it dismissed similar claims and emphasized that defendant "never stated that its employees had unfailingly complied with [] best practices."  Order 18 n.2.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-cv-06468-CRB

*First*, Plaintiffs argue that promotions on merchant websites violated Regulation Z, and that PayPal's issuance of debit cards through a partner bank violated Regulation II.  Opp. 8-9. But Plaintiffs do not dispute that these allegations are unchanged from the FAC, and this Court should reject them for the reasons articulated in the Dismissal Order.  Br. 6; Order 6 n.1 & 16-17.

*Second*, Plaintiffs repeat their argument that PayPal violated the Consent Order by "enabling" for-profit schools to use misleading language on their websites.  Opp. 2.  As this Court previously held, "it is unclear what Plaintiffs mean that PayPal 'enabled' these merchants to promote in a misleading way."  Order 17.  There are no allegations that any Defendant engaged in *any* conduct to assist or "enable" false advertising by any merchant.

Plaintiffs also repeat their baseless argument that the Consent Order "imposed an obligation on [Defendants] to ensure that merchants did not mislead customers about deferred interest."  Opp. 4.  The Consent Order says no such thing.  The Consent Order forbids *PayPal* from misrepresenting any material aspect of PayPal Credit; and Plaintiffs still "never allege that PayPal did so."  Order 16-17.  The Consent Order also requires that, "with respect to merchants that make promotional offers to consumers who use PayPal Credit," PayPal must "ensure that consumers receive the benefit of the promotional offer by honoring the offer made through the merchant."  Opp. 3.  Again, Plaintiffs still "do not allege that PayPal failed to honor a promotional offer made by [any] merchant."  Order 17.

Plaintiffs accuse Defendants of "disclaim[ing] the actual terms of the Consent Order." Opp. 4 n.3.  But it is Plaintiffs, not Defendants, who base their arguments on supposed "implicit" requirements and "interpretation[s]" of the Consent Order.  *See* Opp. 3.  Plaintiffs argue that the Consent Order "implicitly" required PayPal "to monitor promotional offers."  Opp. 3.  But Plaintiffs do not allege that PayPal failed to *monitor* merchants; to the contrary, they argue that PayPal "used tracking and crawling tools to address whether there was a compliance-related issue with any merchant."  Opp. 8; Br. 6-7.  And Plaintiffs do not allege that PayPal *ever* failed to "honor any promotional offer" made by any merchant, as required by the Consent Order. Plaintiffs allege only that the use of misleading promotional language by 151 merchants (out of approximately 34 million) violated PayPal's obligations under the Consent Order.  Br. v.  As this

- 5 -

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-cv-06468-CRB

Court previously held, it did not. Order 16-17. Plaintiffs' monitoring allegations do not alter the clear language of the Consent Order or cure the deficiencies in the prior complaint. *See* Br. 6-7.

*Third*, the purportedly new CW statements do nothing to change this Court's prior analysis. Plaintiffs address the new CWs in a single paragraph, claiming that their allegations "confirm[] that the Company continued to enroll customers in a PayPal Credit account without their consent during the Class Period[,]" because CW11 and CW19 "continued to receive complaints" after the Consent Order was entered. Opp. 5-6. This Court previously rejected CW11's "bare" recollection that she "spoke to some customers who 'did not recall' giving consent." Order 16. This allegation is completely unchanged and still deficient. With respect to CW19, Plaintiffs offer *no response* to Defendants' arguments that CW19's recollections are vague because she does not recall any specific customer complaint, much less one that was substantiated, nor who handled any complaint or how it was resolved. Br. 8-9. The fact that an unspecified number of customers *complained* about enrollment in PayPal Credit on unspecified dates does not indicate that PayPal violated the Consent Order. Nor does Plaintiffs' purported "documentary proof" retrieved through a FOIA request: a single email during the 5-year Class Period in which a single customer (out of 426 million) contested a $26.74 statement charge because she claimed without support that she "did not enroll" in PayPal Credit. Opp. 6; Br. 9-10. Plaintiffs allege no other facts about this complaint, including whether it was substantiated and how it was resolved. Br. 9. Plaintiffs do not mention their other new CWs. *See* Opp. 4-9.

*Fourth*, Plaintiffs do not allege violations that were "frequent or widespread enough to render the statements misleading." Order 18 n.2. Plaintiffs identify only one customer out of 426 million who was purportedly enrolled in PayPal Credit without consent. And Plaintiffs allege that 151 for-profit schools misrepresented the terms of PayPal Credit—approximately 0.0004% of the 34 million active merchants who use PayPal. Br. 7.[6] Plaintiffs argue that there is

---

[6] Plaintiffs argue that the Court "should not continue to credit" the 0.0004% figure because it comes from "an unnamed PayPal source." Opp. 6 n.4. But the 0.0004% figure is simple division: 151 merchants divided by 34 million merchants. These figures come from the SAC and PayPal's 10-K, not an "unnamed source." ¶¶ 11, 74; Ex. 3 at 5. Plaintiffs further argue that this figure raises "materiality issues" that are "inappropriate for this stage." Opp. 6-7 n.4. But the Ninth Circuit has explicitly rejected this argument and affirmed dismissal where "any affirmative misrepresentation could not have been material." *Retail Wholesale*, 845 F.3d at 1277.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-cv-06468-CRB

no requirement that violations be "systemic" for a statement about compliance to be misleading. Opp. viii.  But the case Plaintiffs rely on, *Reese*, involved "systemic noncompliance" confirmed by guilty pleas. *See* Order 18 n.2.  Plaintiffs' theory would transform *any* regulatory violation, no matter how small or isolated, into securities fraud.  That is not the law.  *See Retail Wholesale*, 845 F.3d at 1278 (rejecting substantially similar theory that would "transform" a discrete violation "into an actionable material omission under the securities laws").

## II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs recycle the same scienter arguments as in their prior opposition brief, and repeatedly insist that this Court's Dismissal Order "ignored" allegations or misinterpreted cases. Opp. 10-12.  Plaintiffs' retreaded arguments should be rejected.

*First*, Plaintiffs argue that the "critical importance of the products involved" raises a strong inference of scienter.  Opp. 10.  This argument was raised (verbatim) in Plaintiffs' prior brief, FAC Opp. 8, and rejected because the alleged misconduct involving PayPal Credit implicated only 0.0004% of merchants that use PayPal, and the supposed Regulation II violations involving Venmo implicated, *at most*, "a mere 1.2% of PayPal's total revenue" in 2021.  Order 20-21.  Plaintiffs argue that the Ninth Circuit has never restricted the "core operations inference" to situations where a product concerns "all or most of the Company's revenue." Opp. 10 n.7.  But they cite no case invoking the core operations doctrine for a product constituting "a mere 1.2%" of revenue.  And courts in this district reject the core operations doctrine even where significantly greater revenue is implicated.  *See, e.g.*, *Bao* v. *Solarcity Corp.*, 2016 WL 4192177, at *7-8 (N.D. Cal. Aug. 9, 2016).

*Second*, Plaintiffs repeat (verbatim) their argument that "the individual responsibilities imposed by the Consent Order"—which required Defendants to "prepare a Compliance Plan"— support scienter.  Opp. 10; *compare* FAC Opp. 8.  As Defendants previously explained, this argument is irrelevant because the proper question is whether Defendants were aware of supposed violations, not a Compliance Plan.  *See* FAC Reply 6.  Plaintiffs also rely, again, on *Oklahoma Police Pension & Retirement System* v. *LifeLock, Inc.*, 780 F. App'x 480 (9th Cir. 2019).  Opp. 10-11.  But this Court previously held that the Ninth Circuit's decision in *LifeLock*

- 7 -

"underscores how lacking [Plaintiffs'] allegations are," because there, "unlike here[,] . . . corporate officers had seen 'reports that contained detailed statistics about' the alleged problem and one of the officers 'admitted that she was working to fix' it." Order 20. Plaintiffs argue that the *LifeLock* court conducted a "proper holistic review" of the scienter allegations. Opp. 10-11. But a "holistic review" reveals numerous facts that set *LifeLock* apart from this case, including allegations that (i) defendants received reports containing detailed statistics contradicting their public statements, (ii) former employees filed complaints flagging the alleged wrongdoing, (iii) the alleged wrongdoing directly violated a consent decree, and (iv) the alleged wrongdoing was "widespread" and affected an "important business line." *LifeLock*, 780 F. App'x at 484-85.

*Third*, Plaintiffs argue again that Defendants must have known about alleged Consent Order violations after the SBPC sent a letter to Schulman, and after Gallo said that PayPal would "move to terminate the use of [PayPal's] services" for merchants using inaccurate language. SAC ¶ 97; *compare* Opp. 11-12, *with* FAC Opp. 9-10. Defendants previously distinguished Plaintiffs' cases and explained that Plaintiffs' theory is undercut by their own allegations that the allegedly misleading marketing materials were subsequently removed from all but 8 of the 151 merchant websites identified. FAC Reply 7 & n.7. Plaintiffs offer no response to this argument.

*Fourth*, Plaintiffs rehash their argument that "Defendants' own statements" demonstrate scienter, including Schulman's statement that he "heavily" invested in compliance because "[w]ithout it, you can't do other things." Opp. 12-13; *compare* FAC Opp. 10-11. This Court rejected this argument and held that "these statements are far from sufficiently specific" to raise an inference of scienter. Order 20. Plaintiffs offer no reason to revisit this holding.

*Fifth*, Plaintiffs also reiterate their argument that Defendants must have been aware of PayPal's purported Regulation II violations because other companies faced "regulatory scrutiny." Opp. 13; *compare* FAC Opp. 11. This Court already held that these "allegations do not suggest that any officer knew that [the alleged misconduct] was an actual violation" of Regulation II. Order 22. Plaintiffs offer no new arguments or allegations to support this theory.

*Sixth*, Plaintiffs argue again that Schulman and Rainey's stock sales raise an inference of scienter. Plaintiffs ignore the voluminous case law holding that stock sales are not suspicious

- 8 -

where, as here, Individual Defendants "increased their overall holdings over the Class Period." Order 21. Instead, Plaintiffs argue for the first time that "the proportion of stock sold is irrelevant where, as here, a defendant reaps tens of millions of dollars." Opp. 14. But the case Plaintiffs cite, *Nursing Home Pension Fund, Local 144* v. *Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004), involved a CEO who made $900 million from stock sales that occurred over a nine-day period, one month before a corrective disclosure, after not selling any stock in the prior five years. There are no remotely similar facts alleged here. Plaintiffs also focus on Schulman and Rainey's sales *after* the SBPC Report and letters were issued. Opp. 14. But Plaintiffs ignore this Court's holding that this does "not obviously help their case" because "[a] person who committed fraud would logically cash out after the fraud occurred but *before it was revealed*." Order 21 & n.3 (emphasis added).[7]

     *Finally*, in a series of footnotes, Plaintiffs discuss their new CW allegations. *See* Opp. 10-12 ns. 8-10. This Court rejected Plaintiffs' prior CW allegations because the CWs did not "attest to any Individual Defendant ever attending a meeting or receiving a report about any alleged violation." Order 20. Plaintiffs do not address this problem, or Defendants' arguments or case law explaining why the new CW allegations are similarly insufficient. *See* Br. 10-12. Instead, Plaintiffs simply parrot the allegations in the SAC. *See* Opp. 10-12 ns. 8-10. But the new CW allegations are inadequate because, as before, no CW recalls any regulatory violation, much less one that was reported to or otherwise known by any Individual Defendant.[8]

---

[7] Plaintiffs argue that "stock buy-backs cannot defeat scienter." Opp. 13-14. But their own case notes that "several courts in this District have found stock buy-backs to undermine scienter." *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020); *see* FAC Reply 9.

[8] Plaintiffs argue that they are not required to identify CWs who spoke with Individual Defendants, or to identify internal reports or meetings where violations were discussed. Opp. 11 n.9. To meet the heightened pleading standards of Rule 9(b) and the PSLRA, however, Plaintiffs must plead specific facts about the Individual Defendants' mental states and knowledge of adverse facts. *See Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009). For that reason, courts routinely reject complaints that do not allege that any CW "provided any specific information to defendants that contradicts any public statement made by defendants, or that any defendant received such information by an email, or internal memorandum or report." *McCasland* v. *FormFactor Inc.*, 2009 WL 2086168, at *5 (N.D. Cal. July 14, 2009); *see Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008). The key case relied on by Plaintiffs, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), confirms this point. *See* Opp. 10 n.8, 11 n.9. There, unlike here, scienter was satisfied based on allegations from one CW who was on a conference call with the CEO where contrary facts were discussed, and another CW who personally compiled sales reports with contrary facts and

- 9 -

## III.   PLAINTIFFS STILL FAIL TO ALLEGE LOSS CAUSATION

Plaintiffs' opposition confirms their failure to plead loss causation.  Plaintiffs offer no new responses to the loss causation arguments raised in Defendants' prior briefs, and incorporated into Defendants' opening brief.  *See* FAC Br. 14-15, FAC Reply 9-10.  With respect to the SAC's failure to link customer enrollment issues to the purported corrective disclosures, Plaintiffs argue that they are "required to only show a casual [*sic*] connection between the misrepresentation and the loss."  Opp. 15.  But Plaintiffs do not respond to Defendants' argument (or case law) that there *is no causal connection* between the allegedly concealed customer enrollment violations, and the alleged corrective disclosures concerning regulatory inquiries into wholly unrelated conduct.  *See* Br. 13-14.  Indeed, the SAC paragraph cited by Plaintiffs (¶ 165) alleges that the corrective disclosures "alerted investors" to issues with "misleading promotions," "for-profit schools," "Regulation II," and "interchange fees"—*not* customer enrollment.  Under Plaintiffs' theory, *any* disclosure that a public company was subject to *any* regulatory inquiry could satisfy loss causation for *any* prior regulatory violation, no matter how attenuated or stale.  The Ninth Circuit has held otherwise.  *See Metzler*, 540 F.3d at 1063 (loss causation not pleaded where the complaint did not "allege that the June 24 and August 2 announcements disclosed—or even suggested—[the concealed fraud] to the market").

## IV.   PLAINTIFFS' REMAINING ARGUMENTS ARE STILL NOT MERITORIOUS

Plaintiffs repeat—verbatim—the same scheme liability argument from their prior opposition brief.  Opp. 15; *compare* FAC Opp. 14-15.  This Court should reject the scheme liability claims for the reasons stated in the Dismissal Order.  Order 22-23.  Because Plaintiffs fail to plead any primary violation, the control person claims must also be dismissed.  Order 23.

### CONCLUSION

The SAC should be dismissed with prejudice.  Plaintiffs have already amended the complaint twice, and do not request leave to amend further.  *See In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1047-48 (N.D. Cal. 2014) (Breyer, J.) (dismissing securities fraud complaint with prejudice after amendments did not cure defects in prior complaint).

delivered them to the CFO.  *Quality Sys.*, 865 F.3d at 1145.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-CV-06468-CRB

Dated:  January 12, 2023

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By: */s/ Melinda Haag*
   Melinda Haag, Esq.
   mhaag@paulweiss.com
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
   535 Mission Street, 24th Floor
   San Francisco, California  94105
   Telephone: (628) 432-5100
   Facsimile: (202) 204-7383

   Daniel J. Kramer (admitted *pro hac vice*)
   Audra J. Soloway (admitted *pro hac vice*)
   Geoffrey R. Chepiga (admitted *pro hac vice*)
   Daniel S. Sinnreich (admitted *pro hac vice*)
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
   1285 Avenue of the Americas
   New York, NY  10019-6064
   Telephone: (212) 373-3000
   Facsimile: (212) 757-3990
   dkramer@paulweiss.com
   asoloway@paulweiss.com
   gchepiga@paulweiss.com
   dsinnreich@paulweiss.com

*Attorneys for Defendants*
*PayPal Holdings, Inc., et al.*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - CASE NO.: 3:21-CV-06468-CRB