IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUEI-TING KANG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL HOLDINGS, INC, et al., <br><br> Defendants. | Case No. 21-cv-06468-CRB <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Plaintiffs Huei-Ting Kang and Arthur Flores ("Plaintiffs") bring claims under the Securities Exchange Act of 1934 against PayPal Holdings, Inc. and four of its officers and employees (collectively, "PayPal"), alleging that PayPal made false or misleading statements regarding its compliance with regulatory obligations. Second Amended Complaint ("SAC") (dkt. 83). In August, the Court granted PayPal's first motion to dismiss, and allowed Plaintiffs leave to amend their complaint. Kang v. PayPal Holdings, Inc., No. 21-CV-06468-CRB, 2022 WL 3155241, at *13 (N.D. Cal. Aug. 8, 2022) ("Kang I"). PayPal now moves to dismiss the SAC. Mot. (dkt. 87); see also Opp'n (dkt. 88); Reply (dkt. 89). The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and GRANTS PayPal's motion without leave to amend.

## I. BACKGROUND

### A. First Amended Complaint

In the First Amended Complaint ("FAC"), Plaintiffs brought claims for securities fraud under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 against PayPal and four of its officers: Daniel Schulman, President and CEO; John Rainey, Chief

Financial Officer; Doug Bland, General Manager of Global Credit; and Joseph Gallo, Director of Communications. FAC (dkt. 49) ¶¶ 29–32, 178–202. Plaintiffs alleged that PayPal did not comply with regulatory obligations as to PayPal Credit and Regulation II. Id. ¶¶ 5, 8. Plaintiffs' allegations relied on a 2015 Consent Order that a District of Maryland court entered after the Consumer Finance Protection Bureau ("CFPB") filed a complaint against PayPal. FAC ¶ 38; see Request for Judicial Notice[1] ("RJN") (dkt. 71) Ex. 9; CFPB v. PayPal, Inc., No 1:15-cv-01426 (D. Md. May 19, 2015), dkt. 1. The Consent Order prohibited PayPal from enrolling customers in PayPal Credit without affirmative consent, misrepresenting the terms and conditions of any promotion, and denying customers the benefit of promotions as advertised. RJN Ex. 10 ¶¶ 17, 19–20.

Plaintiffs alleged in the FAC that PayPal made three sets of false or misleading statements regarding its compliance with the Consent Order and Regulation II. First, PayPal positively characterized its compliance with the Consent Order, such as stating in its Form 10-Q for the second quarter of 2016 that it "continue[s] to cooperate and engage with the CFPB and work to ensure compliance with the Consent Order." FAC ¶ 109. Second, PayPal positively characterized its compliance with Regulation II, such as stating that "[a]ny material reduction in credit or debit card interchange rates in the United States or other markets could adversely affect our competitive position . . . . Future changes to those regulations could potentially adversely affect our business." FAC ¶ 111. Third, PayPal made statements after receiving a letter from the Student Borrower Protection Center ("SBPC"), which found that 151 for-profit schools were merchants on PayPal Credit and misrepresented PayPal Credit promotions. See RJN Ex. 6. After PayPal received the SBPC letter, Gallo stated that PayPal took it "very seriously," that PayPal "adheres to all state and federal regulations," and that PayPal "will quickly move to terminate" for-profit school merchants that used misleading language. FAC ¶ 136; RJN

---

[1] The Court previously held that "all exhibits are subject to judicial notice and/or incorporation by reference." See Kang I, 2022 WL 3155241, at *7. The exhibits referred to herein were incorporated by the Court's prior order. Plaintiffs do not contest the Court's prior ruling or otherwise argue against taking judicial notice of the exhibits in deciding the present motion.

2

Ex. 7.

### B. The Court's Prior Order Dismissing the First Amended Complaint

After PayPal moved to dismiss the FAC for failure to state a claim, the Court granted PayPal's motion. First, the Court concluded that Plaintiffs' Rule 10b-5(b) claim failed because Plaintiffs did not plausibly plead material misrepresentation or scienter as to PayPal's allegedly false or misleading statements. See Kang I, 2022 WL 3155241, at *8–12. The Court next held that Plaintiffs' Rule 10b-5(a), (c) claim failed because the alleged scheme liability "consist[ed] entirely of (and fail[ed] for the same reasons as) the misstatements" in Plaintiffs' Rule 10b-5(b) claim. See id. at *12–13. Finally, the Court concluded that Plaintiffs' Section 20(a) claim could not "stand absent a primary violation" (i.e., Plaintiffs plausibly pleading either claim under Rule 10b-5). See id. at *13.

### C. Second Amended Complaint

Plaintiffs then filed the SAC, in which they bring the same claims, and allege substantially similar factual allegations as those addressed in the Court's prior order. See SAC ¶¶ 192–216; Kang I, 2022 WL 3155241, at *1–6. In the SAC, Plaintiffs allege the following six additional facts based on new confidential witness ("CW") statements:

First, the 2015 Consent Order "concerned customer confusion regarding the sign-up process for PayPal Credit," which dated back to when the service was known as Bill Me Later. SAC ¶¶ 6, 67, 82, 85.

Second, PayPal continued to enroll customers in PayPal Credit without their consent, including that "one or two of every five or seven calls involved a customer who was unaware of having a PayPal Credit account, and did not recall giving consent to enroll in such an account." Id. ¶¶ 9, 81, 85–86. Moreover, "customers needed to uncheck a box that automatically enrolled them in PayPal Credit, meaning enrolling in PayPal Credit was done automatically unless customers opted out," and that after PayPal addressed the problem, "management was aware of the continuing complaints," and its response was "that the issue was in fact fixed and that any ongoing issues must have been due to customer error." Id. ¶ 83.

3

Third, PayPal monitored and pre-approved transactions for merchants using PayPal Credit, including that "merchants cannot advertise without PayPal's consent," the company "had a tracking tool that allowed PayPal to see whether a merchant had compliance related issues," and "merchant category codes for [for-profit schools] triggered alerts that required PayPal to disable the accounts, but PayPal failed to do so." Id. ¶ 13.

Fourth, PayPal "used sophisticated website crawling tools to monitor merchant and customer activity that tracked keywords." Id. ¶¶ 14, 66–68.

Fifth, "the handling of the CFPB was moved from the legal side to the complaint department of the escalations department around the time the Company agreed to the Consent Order." Id. ¶ 82.

Finally, Schulman and Rainey were aware of complaints that customers were enrolled without consent, including that they "received weekly or biweekly updates about the Company's remediations and progress in responding to the" Consent Order, and that they "participated in specific meetings to discuss the Company's response" to the Consent Order. Id. ¶17. Moreover, Schulman and Rainey would "at least be made aware of the types of complaints that the Company was receiving," and reports regarding customers being enrolled in PayPal Credit without their consent were "100% sent to" Schulman. Id. ¶ 84, 169–70.

PayPal now moves to dismiss the SAC for failure to state a claim. Mot.

## II.   LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion.  Id. (citing Twombly, 550 U.S. at 555).  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But leave to amend "is not to be granted automatically."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

### III. DISCUSSION

The Court discusses Plaintiffs' claims in the following order: (1) the Rule 10b-5(b) claim; (2) the Rule 10b-5(a), (c) claim; and (3) the Section 20(a) claim.

#### A. Rule 10b-5(b) Claim

In its prior order, the Court granted PayPal's motion to dismiss Plaintiffs' Rule 10b-5(b) claim because Plaintiffs did not plausibly plead misrepresentation or scienter.  See Kang I, 2022 WL 3155241, at *12.  Here, Plaintiffs still fail to plausibly plead these requisite elements.

##### 1. Misrepresentation

The Court previously held that Plaintiffs did not plausibly plead misrepresentation

because PayPal had no obligation to disclose alleged non-compliance, Plaintiffs "fail[ed] to plausibly allege that PayPal in fact violated any regulatory obligation," and PayPal's statements about compliance were "the kind of corporate puffery that are rarely (if ever) actionably misleading." See id. at *9–10.  Plaintiffs' claim fails again for the same reasons.

### a.  No Obligation

Just as the Court held previously, "PayPal 'had no obligation or requirement to elaborate on any alleged non-compliance because it had not yet been found to be non-compliant.'"  Id. at *9 (quoting In re Facebook, Inc. Sec. Litig., 477 F. Supp. 3d 980, 1024 (N.D. Cal. 2020)).  Plaintiffs do not plead any new factual allegations regarding a potential obligation.

### b.  No Regulatory Violation

Plaintiffs also "fail to plausibly allege that PayPal in fact violated any regulatory obligation." See id.  As an initial matter, Plaintiffs "cite no support for their opinion that PayPal violated Regulation II," and the SAC does not contain new allegations related to Regulation II. See id.; see generally SAC.  Moreover, in its prior order, the Court held that Plaintiffs did not plausibly plead that PayPal violated the three relevant obligations in the Consent Order, which are that: (1) "PayPal may not enroll customers without their consent"; (2) PayPal and "all other persons in active concert or participation with them who have actual notice of this Order" may not "misrepresent any material aspect of PayPal Credit"; and (3) PayPal "must 'ensure that consumers receive the benefit of the promotional offer by honoring the offer made through the merchant.'" Kang I, 2022 WL 3155241, at *9 (quoting Consent Order, RJN Ex. 10 ¶¶ 17, 19, 20).  Plaintiffs' new allegations do not alter these prior conclusions.

First, regarding PayPal enrolling customers without their consent, Plaintiffs still "include only a bare allegation that a confidential witness spoke to some customers who 'did not recall' giving consent." Id. (quoting FAC ¶ 74).  The new CW statements are similar as they recall unsubstantiated and vague customer complaints, not actual violations.

6

See, e.g., SAC ¶ 20 ("CW11 estimates that from June 2016 to September 2016, or over a year after the 2015 Consent Order was entered, one or two of every five or seven calls involved a customer who was unaware of having a PayPal Credit account, and did not recall giving consent to enroll in such an account.").[2] Indeed, Plaintiffs provide only one specific example of a customer who allegedly enrolled in PayPal Credit without consent—far from suggesting widespread violations.[3] Id. ¶ 86; see also Opp'n at 6. While Plaintiffs allege that customers "needed to uncheck a box that automatically enrolled them in PayPal Credit," their CW stated that PayPal addressed the issue, and that management believed the ongoing problem was customer error. See SAC ¶ 83. This allegation, therefore, does not plausibly show that PayPal enrolled customers without their consent, nor does the allegation that Schulman and Rainer were "made aware of the types of complaints" received by PayPal. See id. ¶ 170.

Second, Plaintiffs still "allege that <u>merchants</u> misrepresented PayPal Credit, but they never allege that PayPal did so." Kang I, 2022 WL 3155241, at *9; see SAC ¶ 118, 122; Opp'n at 6. In the SAC, Plaintiffs do not allege that merchants had actual notice of the Consent Order, or otherwise plausibly allege that PayPal violated the Consent Order because of a merchant's misrepresentation. See RJN Ex. 10 ¶ 19. To the contrary, after the SBPC sent PayPal a letter stating that 151 for-profit schools—out of 34 million merchants that use PayPal—were misrepresenting PayPal Credit, Plaintiffs concede that all but 8 of the merchants removed the language. RJN Ex. 6 at 3; id. Ex. 3 at 5; SAC ¶ 100. PayPal's regulatory actions demonstrate its efforts to comply with the Consent Order, and thus this case remains "a far cry from the cases Plaintiffs cite for its view that general statements of compliance are actionable if there are 'specific violations of law.'" See

---

[2] In addition, as PayPal explains, Plaintiffs do not respond to its argument that a CW statement was "vague because she does not recall any specific customer complaint, much less one that was substantiated, nor who handled any complaint or how it was resolved." Reply at 6; see Mot. at 8–9.

[3] As the Court held in its prior order, "[e]ven if Plaintiffs had identified specific legal violations, those violations would need to be frequent or widespread enough to render the statements misleading." Kang I, 2022 WL 3155241, at *10 n.2.

Kang I, 2022 WL 3155241, at *10 n.2.

Third, Plaintiffs still "do not allege that PayPal failed to honor a promotional offer made by the merchant." See Kang I, 2022 WL 3155241, at *9. Plaintiffs did not allege so in the FAC, nor do they in the SAC.

Accordingly, Plaintiffs do not plausibly plead that PayPal violated a regulatory obligation.

### c. Corporate Puffery

Even if there were widespread regulatory violations, PayPal's statements are still corporate puffery. See id. at *10. In its prior order, the Court held that PayPal's statements announced a "'heightened' 'focus' on regulatory issues and that the company 'monitor[s] these areas closely to ensure compliant solutions.'" Id. (quoting FAC ¶¶ 119, 125–26, 129, 135–36, 139–44, 147, 152–53, 158). The Court concluded that "these statements are corporate puffery because they are 'vague, highly subjective claims as opposed to specific, detailed factual assertions.'" Id. (quoting Veal v. LendingClub Corp., 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019)). The Court further held that the "Individual Defendants' statements are also puffery." Id.

Plaintiffs do not cite a new allegedly misleading statement in the SAC. See generally SAC. Instead, Plaintiffs argue in their brief—against the Court's prior order—that the Ninth Circuit held that similar statements are actionably misleading. Opp'n at 9 (discussing Reese v. Malone, 747 F.3d 557, 577 (9th Cir. 2014), overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605 (9th Cir. 2017)). In Reese, the Ninth Circuit held that statements about "world class corrosion monitoring and leak detection systems . . . appear to be false based on the results of later investigations revealing that the pipelines were under-inspected, under-maintained, and subject to severe risk of corrosion-related failure." Id. But Plaintiffs here do not allege that later investigations revealed such systemic problems. To the contrary, the CFBP's regulatory inquiry into PayPal Credit was "formally closed

without action."[4]  See Notice of Supplemental Authority (dkt. 97); Id. Ex. A at 2.

Finally, Plaintiffs submit a Statement of Recent Decision out of the Northern District of Illinois, which held that statements about compliance were misleading.  See Statement of Recent Decision (dkt. 94); Allison v. Oak St. Health, Inc., No. 22 C 149, 2023 WL 1928119, at *7 (N.D. Ill. Feb. 10, 2023).  The court in Allison found that the statements at issue were not "simple and generic" but rather "detailed, including specific references to forms of compensation."  Allison, 2023 WL 1928119, at *7.  However, the Court here previously found that PayPal's statements are "vague, highly subjective claims as opposed to specific, detailed factual assertions."  See Kang, 2022 WL 3155241, at *10 (quoting Veal, 423 F. Supp. 3d at 804).  Allison is therefore inapposite, as Plaintiffs do not plead any new factual allegations that disrupt the Court's prior finding.

Thus, Plaintiffs again do not plausibly plead misrepresentation because PayPal had no obligation to disclose alleged noncompliance, Plaintiffs do not plausibly allege that PayPal violated a regulation, and PayPal's statements are corporate puffery.  Accordingly, their Rule 10b-5(b) claim fails.

### 2.    Scienter

Even if Plaintiffs plausibly pleaded misrepresentation, their Rule 10b-5(b) claim would nonetheless fail because they do not plausibly allege scienter.  In its prior order, the Court held that Plaintiffs did not plausibly plead a strong inference of scienter because, in

---

[4]  Plaintiffs argue that the Court erred in its prior order because "Reese did not hold that further regulatory action was required."  Opp'n at 5.  However, as PayPal points out, the Reese court relied on the fact that allegations of regulatory violations were "confirmed by the company's guilty plea, consent decree, and millions of dollars in fines and penalties."  Reese, 747 F.3d at 578; see Reply at 2.  In the present case, there is no evidence confirming Plaintiffs' allegations of regulatory violations.  In addition, Plaintiffs cite two cases that did not involve regulatory investigations.  See Opp'n at 5.  But the plaintiffs in those cases—unlike here—had plausibly alleged that defendants engaged in illegal conduct.  See Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc., No. 19-CV-01372-LHK, 2021 WL 3748325, at *18 (N.D. Cal. Aug. 24, 2021) (the court held that the statements at issue were misleading, in part, because it "ha[d] already found that Plaintiffs have adequately alleged an off-label marketing scheme"); Bos. Ret. Sys. v. Uber Techs., Inc., No. 19-CV-06361-RS, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020) (the court held that the statements at issue were misleading, in part, because lead plaintiff "ha[d] alleged plausibly that Uber was continuing, well into 2019, to use a 'playbook' to launch in new markets in ways it knew were undoubtedly illegal").

part, "Plaintiffs point[ed] to no statement or conduct by any Individual Defendant that indicate[d] knowledge about any regulatory violation."[5]  Kang I, 2022 WL 3155241, at *11.

    Here, Plaintiffs offer new CW statements alleging that Individual Defendants had knowledge of regulatory violations, including that "Schulman and Rainey received weekly or biweekly updates about the Company's remediations and progress in responding to the" Consent Order, that Schulman and Rainey "participated in specific meetings to discuss the Company's response" to the Consent Order, and that overviews and resolutions of complaints were "100% sent to" Schulman.  SAC ¶¶ 17, 84.  But no new witnesses "attest to any Individual Defendant ever attending a meeting or receiving a report about any alleged violation."  See Kang I, 2022 WL 3155241, at *11.  That Schulman was sent resolutions of customer complaints, or that Schulman and Rainey participated in meetings regarding the Consent Order, does not suggest that they knew about alleged regulatory violations.  See SAC ¶¶ 17, 170.  To be clear, no CW attests to having first-hand knowledge of Schulman or Rainey knowing about a specific regulatory violation; instead, Plaintiffs' allegations only show that Individual Defendants were aware of unsubstantiated and unspecified customer complaints.  See generally SAC.  Finally, Plaintiffs allege that Schulman "was aware of specific violations" because of the SBPC letter.  SAC ¶¶ 16; Opp'n at 11.  But Schulman's later statement—"our risk management and our compliance teams are now world class"—was not reckless, as PayPal had been addressing the concerns outlined in the SBPC letter by removing misrepresentations from all but 8 of the 151 for-profit school merchants.  See SAC ¶¶ 100, 154.

    Instead of plausibly alleging scienter in the SAC, Plaintiffs—just as they did when opposing the prior motion to dismiss—rely heavily on a Ninth Circuit case.  Opp'n at 10–

---

[5] The Court also held that PayPal's statements were "far from sufficiently specific," scienter could not be "inferred from Plaintiffs' insistence that the misconduct involved products of 'critical importance,'" and the stock sales by Individual Defendants did "not support scienter either." Kang I, 2022 WL 3155241, at *11–12.  The Court does not address these legal theories here because the parties did not mention them in their briefing, and none of the new allegations in the SAC are related to these theories.

10

12 (discussing Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc., 780 F. App'x 480 (9th Cir. 2019)); see Kang I, 2022 WL 3155241, at *11. In LifeLock, a strong inference of scienter was appropriate because—unlike here—corporate officers had seen "reports that contained detailed statistics about" the alleged problem and one of the officers "admitted that she was working to fix" it. Id. at 484–85. These allegations, among others, "undercut the only plausible nonculpable explanation" for the officers' conduct—that they did not know about the problem. Id. at 485. Here, even assuming significant noncompliance occurred, there is no plausible allegation that anyone but Schulman was ever aware of it, and as noted, Schulman's later statement does not support an inference of scienter.

Thus, just as the Court held previously, "[t]he far more likely inference from the complaint, including the statements of the confidential witnesses, is that PayPal and its officers instituted a program to comply with the Consent Order. Its officers did not know that a small number of its merchants were misrepresenting PayPal Credit until the SBPC released its letter in August 2020, after which (as Gallo told the press) they took action." See Kang I, 2022 WL 3155241, at *12. The new factual allegations further support this inference by demonstrating that PayPal monitored merchant activity, including by using "sophisticated website crawling tools." SAC ¶¶ 13–14.

Accordingly, the Court GRANTS PayPal's motion to dismiss the Rule 10b-5(b) claim because Plaintiffs do not plausibly plead misrepresentation or scienter.

### B. Rule 10b-5(a) & (c) Claim

In its prior order, the Court granted PayPal's motion to dismiss Plaintiffs' Rule 10b-5(a), (c) claim because the "alleged scheme consist[ed] entirely of (and fail[ed] for the same reasons as) the misstatements" analyzed in Plaintiffs' Rule 10b-5(b) claim. See Kang I, 2022 WL 3155241, at *13. Plaintiffs do not amend this claim in the SAC, nor do they plead additional factual allegations indicating that the alleged scheme is distinguishable from the misstatements in their Rule 10b-5(b) claim.[6] See SAC ¶¶ 202–10.

---

[6] The SAC alleges—as the FAC did—that PayPal's fraudulent scheme "included enabling misleading promotions," "launching a deliberate media campaign to cover up the violations," and

11

Accordingly, the Court GRANTS PayPal's motion to dismiss the Rule 10b-5(a), (c) claim.

### C. Section 20(a) Claim

In its prior order, the Court held that Plaintiffs' "Section 20(a) claim fail[ed] because it [could not] stand absent a primary violation." See Kang I, 2022 WL 3155241, at *13 (citing Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1035 n.15 (9th Cir. 2002)). Because Plaintiffs' Rule 10b-5 claims fail, the Court GRANTS PayPal's motion to dismiss the Section 20(a) claim, as this claim still "cannot stand absent a primary violation." See id.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS PayPal's motion to dismiss as to all claims. Because Plaintiffs failed to cure the FAC's deficiencies outlined in the Court's prior order, further amendment would be futile. See Kang I, 2022 WL 3155241. Accordingly, the Court GRANTS PayPal's motion without leave to amend. See Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

Dated: April 27, 2023



CHARLES R. BREYER
United States District Judge

---

"engag[ing] in a shadow banking scheme in violation of Regulation II." SAC ¶ 205; see FAC ¶ 191. Plaintiffs argue that these acts are "distinct from making misleading statements." Opp'n at 15. But these acts are at the center of Plaintiffs' Rule 10b-5(b) claim, and as explained above, Plaintiffs do not plausibly plead that PayPal engaged in any of these acts. See supra Section III.A. Thus, Plaintiffs' "alleged scheme consists entirely of (and fails for the same reasons as) the misstatements." Kang I, 2022 WL 3155241, at *13.